UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JENNIFER NOSALEK, RANDY
HIRSCHORN, and TRACY HIRSCHORN
individually and on behalf of all others
similarly situated,
    Plaintiffs,

v.                              CIVIL ACTION NO. 20-12244-PBS

MLS PROPERTY INFORMATION
NETWORK, INC., REALOGY HOLDINGS
CORP., HOMESERVICES OF AMERICA,
INC., BHH AFFILIATES, LLC, HSF
AFFILIATES, LLC, RE/MAX, LLC, and
KELLER WILLIAMS REALTY, INC.,
    Defendants.

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO COMPEL
AS TO DEFENDANT REALOGY HOLDINGS CORP. (#129)

KELLEY, U.S.M.J.

I.    Introduction.

This is a putative class action alleging that MLS Property Information Network, Inc. ("MLS PIN") and several large real estate brokerages, including defendant Realogy Holdings Corp. ("Realogy"), conspired to artificially inflate the commissions paid to buyer-brokers in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs allege that the MLS PIN rules—a set of rules governing Pinergy, a centralized database of property listings in Massachusetts, Rhode Island and parts of New Hampshire (the "Covered Area") that is owned and operated by MLS PIN—prevent buyer-broker commission rates from falling to competitive levels

1

by facilitating steering away from brokers who attempt to offer their clients lower rates. In particular, plaintiffs claim that Section 5 of the MLS PIN rules ("Section 5") requires listing brokers to specify the compensation rates offered to buyer-brokers as part of a home's Pinergy listing, effectively ensuring that only those listings that offer standard buyer-broker commission rates will be shown to prospective buyers. Plaintiffs allege that Realogy and the other above-captioned broker defendants joined the conspiracy by requiring their franchisees and agents to participate in MLS PIN and follow Section 5.

Plaintiffs now seek discovery regarding the nationwide implementation of a nearly identical rule promulgated by the National Association of Realtors (the "NAR Rule"), as well as substantively identical rules governing geographic regions outside the Covered Area. Realogy argues that discovery should be defined by the bounds of plaintiffs' Amended Class Action Complaint (#110), which is limited to the MLS PIN rules and the Covered Area. For the following reasons, plaintiffs' motion to compel (#129) is GRANTED in part and DENIED in part.

## II. <u>Background</u>.

The facts of this case are complex and are set out here only to the extent necessary to put the present discovery dispute in context. This court assumes familiarity with Judge Saris's Order and Memorandum on defendants' motions to dismiss (#94), which summarizes the facts of the case and analyzes plaintiffs' claims in detail.

### a. The Alleged Conspiracy.

MLS PIN owns and operates Pinergy, an electronic database of properties referred to as a "Multiple Listing Service" or "MLS" that operates in the Covered Area. (#110 ¶ 9.) Because the platform lists the "vast majority" of homes for sale in the Covered Area, plaintiffs claim that

"[l]isting a property for sale on Pinergy is essential to marketing a property effectively to prospective buyers." *Id.* ¶¶ 36-38.

MLS PIN promulgates the rules and regulations for Pinergy. *Id.* ¶¶ 35, 43. Section 5 of the rules requires seller-brokers to offer compensation to the buyer-brokers on the other end of a transaction. *Id.* ¶ 44. Under the rule, seller-brokers must publish on each listing a blanket, unilateral commission offer to the buyer-broker, to be paid by the seller after the home is sold. *Id.* ¶¶ 44-46. Since buyer-brokers represent buyers and are adversarial to sellers, plaintiffs allege that there is no rational basis for sellers to pay buyer-brokers' fees, other than to artificially inflate commission rates and impede lower-priced competition. *Id.* ¶¶ 64-66, 71. Moreover, plaintiffs allege that if a commission offer is lower than "standard" on a property listing, many buyer-brokers will "steer" home buyers away from that property and toward homes offering higher commission rates. *Id.* ¶ 74. By "facilitating steering," Section 5 "prevents rates from falling to competitive levels and enables brokers to avoid doing business with or otherwise retaliate against brokers who attempt to offer materially lower rates." *Id.* ¶ 80.

Realogy is the nation's largest real estate brokerage company. *Id.* ¶ 10. It owns, operates, and franchises many real estate brokerage firms, including Century 21, Coldwell Banker, Sotheby's International Realty, The Corcoran Group, Better Homes and Garden RealEstate, ZipRealty, ERA Real Estate Citi Habitats, and Climb Real Estate. *Id.* Its representatives sit on the MLS PIN board, (*id.* ¶ 9) and are members of the National Association of Realtors. The other broker defendants are similarly prominent in the residential real estate market across the Covered Area and nationally. *See id.* ¶¶ 11-13; #130 at 4.

Plaintiffs allege that Realogy, along with the other broker defendants, joined MLS PIN's conspiracy by requiring its franchisees and agents in the Covered Area to participate in MLS PIN

3

and follow its rules.  *Id.* ¶ 105.  As a result, nearly all residential real estate brokers and their affiliated agents in the Covered Area are Pinergy members and are obliged to follow Section 5.  *Id.* ¶¶ 36, 40.

### b. The National Association of Realtors ("NAR") Rule.

The National Association of Realtors ("NAR") does not make a substantive appearance in plaintiffs' Amended Class Action Complaint—plaintiffs' allegations challenge Section 5 and their scope encompasses the Covered Area.  *See generally* #110.  Nonetheless, NAR is front and center in this discovery dispute, so the court will briefly summarize the organization and its role here.

According to its website, NAR is "America's largest trade association, representing 1.5 million members, including NAR's institutes, societies, and councils, involved in all aspects of the residential and commercial real estate industries" across the United States.[1]  According to plaintiffs, since at least 1993 NAR has included a "cooperative compensation" rule (the "NAR Rule") in its nationwide Handbook on Multiple Listing Policy.  (#130 at 3.)  The NAR Rule is currently the subject of two federal antitrust lawsuits, both of which name Realogy as a defendant and both of which have survived motions to dismiss under Fed. R. Civ. P. 12(b)(6).  *See generally Moehrl v. Nat'l Assoc. of Realtors*, 492 F. Supp. 3d (N.D. Ill. 2020) ("*Moehrl*"); *Sitzer v. Nat'l Assoc. of Realtors*, 420 F. Supp. 3d 903 (W.D. Mo. 2019) ("*Burnett*").

NAR is a separate organization from the more localized MLS PIN, and membership in one is not predicated on association with the other (though members may be, and allegedly are, associated with both).  For instance, plaintiffs allege that Realogy representatives are on the MLS PIN board (#110 at ¶ 9) and are also members of NAR (#130 at 8).  Based on this, and its alleged

---

[1] About NAR, https://www.nar.realtor/about-nar (last visited Sept. 30, 2022).

market dominance, plaintiffs surmise that Realogy is likely active in the governance of both groups. (#130 at 4.)

Plaintiffs concede that "MLS PIN is not operated by . . . NAR and brokers in the MLS PIN Service Area are not directly required to follow the NAR Rule as such." (#130 at 3.) Nonetheless, plaintiffs allege that when MLS PIN was formed in 1996, it enacted a substantively identical rule—Section 5. (#130 at 8.) Plaintiffs infer that Section 5 may have been modeled on the nationwide NAR rule and may be perpetuated by the same anticompetitive goals that allegedly undergird the national rule. (#130 at 8-9.)

### III.   The Motion to Compel.

On March 4, 2022, plaintiffs served their first set of requests for production on all defendants. (#136-1.) Although plaintiffs' allegations in the Amended Complaint concerned Section 5 and the Covered Area, their requests were broader. Plaintiffs had defined the term "Buyer-Broker Commission Rule" in the Amended Complaint as, essentially, Section 5, (#110 ¶ 1) while in their requests, they defined "Buyer-Broker Commission Rule" as "a rule requiring brokers or agents to make a specific unilateral blanket offer of compensation to other MLS participates and includes, ***but is not limited to***, the requirements on listing brokers set forth in Section 5 of the MLS PIN Rules." (#136-1 at 2 (emphasis added).) The expanded definition was meant to capture documents discussing (i) the substantively identical NAR Rule, and (ii) substantively identical rules enforced in other MLS service areas in which defendants operate ("cousin rules"). (#130 at 2.) Plaintiffs requested:

> 2.    All documents produced by you in any investigation, regulatory proceeding or lawsuit involving the Buyer-Broker Commission Rule or concerning any other alleged or actual violations of federal, state, or international antitrust of similar laws or regulations.

> 3. All communications with any governmental body or elected official (or agent or employee thereof) concerning the Buyer-Broker Commission Rule, including lobbying efforts or other attempts to influence governmental policy, legislation, or rule-making concerning the Buyer-Broker Commission Rule.
>
> 23. All documents relating to the enforcement of the Buyer-Broker Commission Rule with regard to any Defendant Affiliates.
>
> 24. All documents concerning any discussion, review, analysis or consideration of whether the Buyer-Broker Commission Rule has any effect on the amount of commissions offered by sellers, the determination or negotiation of the amount, any revenues and profits generated therefrom, and the offering of discounted commissions.
>
> 25. All documents concerning any discussion, review, analysis or consideration of whether the Buyer-Broker Commission Rule should be modified or changed in any way and any communications relating thereto.
>
> 26. All documents concerning any discussion, review, analysis or consideration of whether the Buyer-Broker Commission Rule affects whether buyer-brokers will "steer" home buyers to the properties that provide the higher commission.
>
> 32. All documents relating to the development or use of standardized listing agreements relating to the Buyer-Broker Commission Rule, or to the inclusion of particular provisions in such agreements.
>
> 34. All documents that provide interpretations, guidelines or guidance concerning the Buyer-Broker Commission Rule.
>
> 35. All documents relating to any complaints received from any Defendant Affiliate, private individual, or governmental agency regarding the Buyer-Broker Commission Rule or the setting of commissions on residential home sales, and all documents reflecting the handling of and responses to such complaints.

(#136-1 at 10, 13-14.)

Defendants objected to the requests' definition of the "Buyer-Broker Commission Rule," arguing that, because plaintiffs' claims challenged Section 5 and alleged injury only within the Covered Area, discovery outside the Covered Area was irrelevant. (#130 at 5.) Instead, defendants proposed limiting discovery to within the Covered Area and/or directly related to the MLS PIN

rules. *Id.* Plaintiffs countered that they were entitled to investigate Section 5 in "the broader context in which Section 5 was developed," including documents "concerning the parent NAR Rule and any 'cousin' rules in other non-NAR markets [that] reasonably could lead to relevant evidence in this action." *Id.* In the alternative, plaintiffs requested all discovery produced in the *Moehrl* and *Burnett* cases. (#130-1 at 3.)

After the parties conferred, all of the broker defendants except Realogy agreed to produce documents concerning "(i) the specific MLS PIN Rule on offers of compensation, and (ii) any discission as a general matter of rules requiring listing agents to offer cooperative compensation to buyer agents (a) in MLS PIN's service area; (b) nationally; or (c) in unspecified geographies (and thus generally applicable)." (#130 at 5-6.) This compromise covered plaintiffs' request for nationwide discovery into the NAR Rule but did *not* include documents discussing only cousin rules, unless those documents also discussed MLS PIN. (#130-1 at 1-2.) Further, plaintiffs agreed that defendants need not replicate the *Moehrl* and *Burnett* productions. *Id.*

Unlike the other broker defendants, Realogy refused to produce any documents outside the scope of MLS PIN's jurisdiction. Plaintiffs filed this motion seeking to compel Realogy to produce all discovery initially requested (all responsive documents concerning (i) Section 5, (ii) the NAR Rule, and (iii) any cousin rules) or, in the alternative, to produce all discovery which the other defendants had agreed to provide. (#129.) Realogy responded, claiming such discovery was irrelevant and/or disproportionate to plaintiffs' claims. (#136.) The court heard argument on September 26, 2022. (#140.)

IV.   Discussion.

Fed. R. Civ. P. 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"

7

*Montrond v. Spencer*, No. 17-cv-10505-ADB, 2022 WL 375297, at *2 (D. Mass. Feb. 8, 2022) (internal quotes omitted). "On a motion to compel, the party seeking information in discovery over an adversary's objection has the burden of showing its relevance." *Controlled Kinematics, Inc. v. Novanta Corp.*, No. 17-cv-11029-ADB, 2019 WL 2082354, at *2 (D. Mass. July 15, 2019) (internal quotes omitted). At the discovery stage, relevance should be "broadly construed," and information should be deemed "discoverable if there is any possibility it might be relevant to the subject matter of the action." *Cherkaoui v. City of Quincy*, No. 14-cv-10571-LTS, 2015 WL 4504937, at *1 (D. Mass. July 23, 2015) (internal quotes omitted). Then, "[o]nce a showing of relevance is made, the party opposing disclosure bears the burden of showing that the requested discovery is improper." *Controlled Kinematics*, 2019 WL 2082354, at *2.

    **a. Discovery Pursuant to the Agreement with All Defendants Except Realogy.**

As set out above, the other broker defendants agreed to produce nationwide discovery related to the NAR Rule. (#130 at 5-6.) Such discovery is relevant to plaintiffs' claim, first, because Section 5 and the NAR Rule are substantively identical and Section 5 almost certainly was modeled on the NAR Rule. *Id.* Second, plaintiffs allege that Realogy was involved in, if not the implementation, then at least the perpetuation of both rules[2]: (i) Realogy is the nation's largest real estate brokerage company, and it owns, operates, and franchises many real estate brokerage firms in the Covered Area and nationwide (#110 at ¶ 10), (ii) its representatives sit on the MLS

---

[2] Realogy argues that it did not come into existence until 2006, ten years after Section 5 was promulgated. (#136 at 2.) Therefore, it claims, it cannot have any knowledge pertaining to Section 5's establishment, and plaintiffs' requests are otherwise irrelevant. *Id.* The court disagrees. Plaintiffs' requests are not limited to Section 5's origin; they encompass information relevant to defendants' "motive and actions to conspire to **maintain** the unlawful buyer-broker commission regime." (#130 at 9) (emphasis added). Even if Realogy does not have discovery in its possession or control relevant to Section 5's creation in 1996, it may have relevant documents relevant concerning its continued perpetuation after 2006.

PIN board (*id.* ¶ 9) and are members of NAR (#130 at 8), and (iii) it is a named defendant in two ongoing litigations directly challenging the NAR Rule. *See generally Moehrl* and *Burnett*. Considering plaintiffs have the burden at trial to show that defendants made "a conscious commitment to a common scheme designed to achieve an unlawful objective," (#94 at 15 (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 753 (1984)), evidence that Realogy was discussing such "a commitment to a common scheme" at the national level regarding the NAR Rule could very well bear on plaintiffs' claims regarding the nearly identical rule in the Covered Area. *Controlled Kinematics*, 2019 WL 2082354, at *2.

Realogy asserts that "nationwide discovery is not relevant for a three state claim." (#136 at 7.) It argues that the Amended Class Action Complaint challenges Section 5 (not the NAR rule) and that it defines the relevant market as the Covered Area (not the United States nationally), so discovery must be limited to those substantive and geographic areas. *Id.* In support of its argument, Realogy cites to a number of cases from outside this circuit for the proposition that courts presiding over antitrust cases "routinely limit discovery only to those markets defined by the plaintiffs to be the relevant market for purposes of their claims." *Id.* None of the cases cited by Realogy require this court to limit discovery where, as here, plaintiffs have shown that the discovery sought is relevant to their case.[3]

---

[3] Each of the cases Realogy cites is distinguishable from the dispute here. *See Motor Carriers v. Trucking Mgmt., Inc.*, 711 F. Supp. 216, 222 (E.D. Pa. 1989) (noting court allowed defendant's motion to limit discovery to relevant market after plaintiffs twice attempted to amend scope of claims); *Bal Seal Eng'g, Inc. v. Nelson Products, Inc.*, 8:13-cv-01880-JLS-KESx, 2017 WL 10311212, at *1-2 (C.D. Cal. 2017) (directing parties to confer further before ruling on discovery motions and guiding parties to discuss, *inter alia*, the relevance of discovery about geographic locations outside the relevant market); *Vident v. Dentsply Int'l, Inc.*, No. SA CV 06-1141 PSG (ANx), 2008 WL 4384124, at *3 (C.D. Cal. Aug. 29, 2008) (upholding denial of motion to compel Canadian discovery where "magistrate judge's rulings implicitly found that documents pertaining to [defendant's] Canadian business were not relevant to help determine the state of [defendant's] United States business"); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-

9

Realogy claims that plaintiffs' justification for nationwide discovery necessarily assumes as true facts not yet established in the *Moehrl* and *Burnett* cases, namely that Realogy and the other broker defendants exercise control over NAR and play a role in the implementation, enforcement, and perpetuation of the NAR Rule.  (#136 at 9-10.)  Again, the cases Realogy cites for its argument are inapposite. Both cases involve pleading standards at the motion to dismiss phase, not relevancy standards in discovery.[4]  Plaintiffs need not prove their case at this stage; they need only show that the requested discovery is relevant and proportional to the needs of their case.  *See Cherkaoui*, 2015 WL 4504937, at *1.   For the reasons stated above, plaintiffs have done so, and their reasoning—namely, that Realogy and/or its representatives may have had substantive discussions regarding the NAR Rule that illuminate anticompetitive sentiments—does not rise and fall with the allegations in the *Moehrl* or *Burnett* cases.

Plaintiffs' motion is therefore **GRANTED** to the extent it seeks discovery from Realogy on the same terms to which the other broker defendants have agreed.

---

2164-MLB-DWB, 2007 WL 2668742, at *10-11 (D. Kan. Sept. 6, 2007) (limiting discovery to Kansas City where party seeking discovery "never contended that the appropriate geographic scope of this litigation spans the state is Missouri" and opposing party showed that discovery would breach confidentiality contract with a third party); *Schmidt v. Columbia Pictures Indus., Inc.*, No. CV LV 85-819 LDG, 1986 WL 13357, at *3 (D. Nev. Apr. 14, 1986) (balancing parties' interests and allowing limited discovery outside the relevant geographic area).

[4] *See Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 921 (N.D. Cal. 2019) (analyzing Sherman Act allegations under Fed. R. Civ. P. 12(b)(6) and noting that "[a]llegations concerning past or ongoing investigations are . . . not particularly helpful to suggest a contemporary conspiracy"); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (dismissing conspiracy claim under Fed. R. Civ. P. 12(b)(6) where plaintiffs did "not plead[] that defendants ever met and agreed to fix prices").

**b. Discovery Outside the Scope of the Compromise.**

At oral argument, plaintiffs essentially agreed to limit discovery sought from Realogy to the discovery that the other broker defendants had agreed to provide. Thus, plaintiffs' motion is **DENIED** to the extent it seeks discovery outside the scope of the agreement with the other broker defendants.

V. <u>Conclusion</u>.

For the above reasons, plaintiffs' motion to compel (#129) is **GRANTED** in part and **DENIED** in part. In responding to plaintiffs' discovery requests, Realogy shall interpret the term "Buyer-Broker Commission Rule" to reach documents concerning (i) the specific MLS PIN Rule on offers of compensation, and (ii) any discussion as a general matter of rules requiring listing agents to offer cooperative compensation to buyer agents (a) in MLS PIN's service area; (b) nationally; or (c) in unspecified geographies (and thus generally applicable).

October 3, 2022

/s/ M. Page Kelley
M. Page Kelley
Chief United States Magistrate Judge