# Exhibit A

EXECUTION COPY

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER NOSALEK, RANDY HIRSCHORN, and TRACEY HIRSCHORN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>MLS PROPERTY INFORMATION NETWORK, INC., ANYWHERE REAL ESTATE INC. (F/K/A REALOGY HOLDINGS CORP.), CENTURY 21 REAL ESTATE LLC, COLDWELL BANKER REAL ESTATE LLC, SOTHEBY'S INTERNATIONAL REALTY AFFILIATES LLC, BETTER HOMES AND GARDENS REAL ESTATE LLC, ERA FRANCHISE SYSTEMS LLC, HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, POLZLER & SCHNEIDER HOLDINGS CORPORATION, INTEGRA ENTERPRISES CORPORATION, RE/MAX OF NEW ENGLAND, INC., RE/MAX INTEGRATED REGIONS, LLC, AND KELLER WILLIAMS REALTY, INC.,<br><br>        Defendants. | Case No. 1:20-cv-12244-PBS<br>Judge Patti B. Saris |

## STIPULATION AND SETTLEMENT AGREEMENT

### TABLE OF CONTENTS

1.  RECITALS ........................................................................................................................ 1

2.  DEFINITIONS ................................................................................................................. 3

3.  SETTLEMENT CLASS CERTIFICATION ................................................................. 9

4.  GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT AGREEMENT .. 10

5.  PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING ........... 10

6.  EFFECTIVE DATE OF THE SETTLEMENT ........................................................... 14

7.  NOTICE ADMINISTRATOR AND COST OF NOTICE ......................................... 15

8.  SCOPE AND EFFECT OF SETTLEMENT ............................................................... 15

9.  CONSIDERATION TO SETTLEMENT CLASS ....................................................... 17

10. COOPERATION ............................................................................................................ 18

11. FEE, EXPENSE AND LITIGATION FUND APPLICATION ................................. 22

12. TERMINATION OF THE SETTLEMENT ............................................................... 23

13. MISCELLANEOUS ...................................................................................................... 24

14. SIGNATURES ............................................................................................................... 28

This Stipulation and Settlement Agreement ("Agreement") is made and entered into on June 30, 2023 (the "Execution Date"), by and between Plaintiffs Jennifer Nosalek, Randy Hirschorn, and Tracey Hirschorn ("Plaintiffs"), on behalf of themselves and all Settlement Class Members and Releasing Parties as defined herein, and MLS Property Information Network, Inc. ("MLS PIN"). The Parties intend this Agreement to fully, finally, and forever resolve, discharge, and settle the Released Claims as defined herein, upon and subject to the terms and conditions hereof.

## 1.     RECITALS

WHEREAS, Plaintiffs have filed the above-captioned putative class action (the "Action") against MLS PIN; Anywhere Real Estate Inc. (f/k/a Realogy Holdings Corp.), and its wholly owned subsidiaries, Century 21 Real Estate LLC, Coldwell Banker Real Estate LLC, Sotheby's International Realty Affiliates LLC, Better Homes and Gardens Real Estate LLC, and ERA Franchise Systems LLC; HomeServices of America, Inc., and its wholly owned subsidiaries, BHH Affiliates, LLC and HSF Affiliates, LLC; RE/MAX LLC, and its wholly owned subsidiaries, Polzler & Schneider Holdings Corporation, Integra Enterprises Corporation, RE/MAX of New England, Inc., and RE/MAX Integrated Regions, LLC (and any other successor entities); and Keller Williams Realty, Inc. asserting claims for violation of Section 1 of the Sherman Act, 15 U.S.C § 1;

WHEREAS, Plaintiffs contend that they and the Settlement Class have suffered damages, and may in the future suffer additional damages, as a result of MLS PIN's (and the other Defendants') alleged conduct;

WHEREAS, MLS PIN denies Plaintiffs' allegations and maintains that it has meritorious defenses to the claims of liability and damages made by Plaintiffs in the Action and all charges of

liability and damages against it arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action;

WHEREAS, Plaintiffs' Counsel has significant experience litigating class action cases, having represented plaintiffs in numerous putative class actions brought in this District and elsewhere;

WHEREAS, Plaintiffs' Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Action, the legal and factual defenses thereto, and the applicable law, that: (1) it is in the best interests of the Settlement Class to enter into this Agreement in order to avoid the uncertain outcome and attendant risks of litigation and to assure that the substantial benefits reflected herein, including the value of the settlement relief MLS PIN will provide under this Agreement and the cooperation MLS PIN will provide to the Plaintiffs under this Agreement, are obtained for the Settlement Class; and (2) the settlement set forth in this Agreement is fair, reasonable, and adequate and in the best interests of the Settlement Class;

WHEREAS, MLS PIN, while continuing to deny that it is liable for the claims asserted against it in the Action, has nevertheless agreed to enter into this Agreement to avoid the further risk, expense, inconvenience, and distraction of burdensome and protracted litigation, and thereby to resolve this controversy, to avoid the risks inherent in complex litigation, and to obtain complete dismissal of the Action as to MLS PIN and a release of the claims as set forth herein;

WHEREAS, Plaintiffs, for themselves individually and on behalf of the Settlement Class, and MLS PIN agree that neither this Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute, law,

or regulation or of any liability or wrongdoing by MLS PIN or of the truth of any of the claims or allegations alleged in the Action;

WHEREAS, this Agreement is the product of arm's-length negotiations between Plaintiffs' Counsel and MLS PIN's Counsel, and this Agreement embodies all of the terms and conditions of the settlement agreed upon between the Parties, both for themselves individually and on behalf of the Settlement Class;

NOW, THEREFORE, in consideration of the covenants, terms, and releases in this Agreement, it is agreed, by and among Plaintiffs (individually and on behalf of the Settlement Class) and MLS PIN that, subject to the approval of the Court, the Action shall be settled, compromised, and dismissed with prejudice as to MLS PIN and the other Released Parties only, without costs, except as stated herein, and releases be extended, as set forth in this Agreement.

## 2.   DEFINITIONS

As used in this Agreement, the following capitalized terms have the meanings specified below:

(a)   <u>Action</u>: *Nosalek, et al. v. MLS Property Information Network, Inc., et al.*, Case No. 1:20-cv-12244-PBS, pending in the United States District Court for the District of Massachusetts.

(b)   <u>Agreement or Settlement Agreement</u>: This Settlement Agreement and all of the attached exhibits.

(c)   <u>Alternative Judgment</u>: A Final Judgment and Order of Dismissal entered by the Court but in a form that materially differs from the one proposed by the Parties.

(d)   <u>Buyer-Broker Commission</u>:  A commission paid by a Seller or Seller-Broker to a Buyer-Broker pursuant to the Buyer-Broker Commission Rule.

3

(e)     Buyer-Broker:  A real estate broker who or which procures a buyer of Residential Real Estate and is offered and/or paid a Buyer-Broker Commission with regard to a Listing pursuant to the Buyer-Broker Commission Rule.

(f)     Buyer-Broker Commission Rule: The practice of the Seller-Broker offering Buyer-Brokers a Buyer-Broker Commission in connection with a Listing and any action required or taken pursuant to Section 5.0 of the Rules and Regulations.

(g)     Class Notice: The notice of proposed settlement to be provided to the Settlement Class as provided in this Agreement and the Preliminary Approval Order.

(h)     Court: The United States District Court for the District of Massachusetts.

(i)     Defendants:  MLS Property Information Network, Inc.; Anywhere Real Estate Inc. (f/k/a Realogy Holdings Corp.), and its wholly owned subsidiaries, Century 21 Real Estate LLC, Coldwell Banker Real Estate LLC, Sotheby's International Realty Affiliates LLC, Better Homes and Gardens Real Estate LLC, and ERA Franchise Systems LLC; HomeServices of America, Inc., and its wholly owned subsidiaries, BHH Affiliates, LLC and HSF Affiliates, LLC; RE/MAX LLC, and its wholly owned subsidiaries, Polzler & Schneider Holdings Corporation, Integra Enterprises Corporation, RE/MAX of New England, Inc., and RE/MAX Integrated Regions, LLC; and Keller Williams Realty, Inc.

(j)     Effective Date: *See* Paragraph 6.

(k)     Execution Date: June 30, 2023.

(l)     Fairness Hearing: The hearing(s) to be held by the Court to determine whether the settlement set forth in this Agreement shall receive final approval pursuant to Federal Rule of Civil Procedure 23.

(m)     Fee, Expense and Litigation Fund Application: *See* Paragraph 11.

(n)     Final Judgment and Order of Dismissal: The order of the Court, substantially in the form attached hereto as **Exhibit 2**, finally approving the settlement set forth in this Agreement and dismissing the Action against MLS PIN with prejudice.

(o)     Listing:  Residential Real Estate for which all necessary data, information and images have been inputted into Pinergy.

(p)     MLS PIN: MLS Property Information Network, Inc., and its predecessors and successors.

(q)     MLS PIN's Counsel: Brennan, Recupero, Cascione, Scungio & McAllister, LLP, and Locke Lord LLP.

(r)     Notice Administrator: A third party that may be retained to manage and administer the process by which the Class will be notified of this Agreement.

(s)     Parties: Plaintiffs and MLS PIN.

(t)     Person(s): An individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, municipality, state, state agency, any entity that is a creature of any state, any government or any political subdivision, authority, office, bureau or agency of any government, and any business or legal entity, and any spouses, heirs, predecessors, successors, representatives, agents, or assignees of the foregoing.

(u)     Pinergy: The electronic multiple-listing service application or its predecessors owned and operated by MLS PIN.

(v)     Plaintiffs (and each a Plaintiff): Jennifer Nosalek, Randy Hirschorn, and Tracey Hirschorn.

(w)     Plaintiffs' Counsel: Izard, Kindall & Raabe LLP and Hausfeld LLP.

5

(x)     <u>Preliminary Approval Order</u>: An order of the Court, substantially in the form attached hereto as **Exhibit 1**, that preliminarily approves the settlement set forth in this Agreement and directs Class Notice thereof.

(y)     <u>Released Claims</u>: Any and all manner of claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, damages, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, arising from or relating in any way to any conduct alleged or that could have been alleged in and that arise from the factual predicate of the Action.

(z)     <u>Released Party or Released Parties</u>: MLS PIN and each of its past or present direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, successors, shareholders (except those who are Defendants in the Action), and each of their respective officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, and assigns. Released Parties do not include the other Defendants in the Action.

(aa)    <u>Releasing Party or Releasing Parties</u>: Individually and collectively, Plaintiffs and each Settlement Class Member, on behalf of themselves and, to the extent permitted by law, any of their respective past or present officers, directors, shareholders, agents, employees, legal representatives, partners, associates, trustees, beneficiaries, beneficial owners, parents,

subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns, whether or not they object to the settlement set forth in this Agreement.

(bb)     <u>Residential Real Estate</u>: Any residential property sold by a Seller.

(cc)     <u>Rules and Regulations</u>:  The Rules and Regulations adopted by MLS PIN from time to time.

(dd)     <u>Seller</u>: Any Person who has listed on Pinergy through a Seller-Broker and sold Residential Real Estate.

(ee)     <u>Seller-Broker</u>:  A real estate broker who lists a property on Pinergy on behalf of a Seller and offers a Buyer-Broker Commission.

(ff)     <u>Settlement Class or Class</u>: *See* Paragraph 3(a).

(gg)     <u>Settlement Class Member</u>: A Person who is a member of the Settlement Class

(hh)     <u>Settlement Class Period</u>: January 15, 1997, through and including the date of the Final Judgment and Order of Dismissal.

(ii)     <u>Settling Defendant</u>: MLS PIN.

(jj)     <u>Settling Defendant's Claims</u>: Claims, including "Unknown Claims" as defined below, that any Released Party may have against a Releasing Party or Plaintiffs' Counsel solely relating to the institution, prosecution, or settlement of the Action, except for claims to enforce any of the terms of this Agreement.

(kk)     <u>Unknown Claims</u>: Any and all Released Claims against the Released Parties which Releasing Parties do not know or suspect to exist in his, her, or its favor as of the Effective Date, and the Settling Defendant's Claims against Releasing Parties which Released Parties do not know or suspect to exist in his, her, or its favor as of the Effective Date, which if known by the Releasing Parties or Released Parties might have affected his, her, or its decision(s) with respect to the

settlement. With respect to any and all Released Claims and Settling Defendant's Claims, the Parties stipulate and agree that by operation of the Final Judgment and Order of Dismissal, upon the Effective Date, Releasing Parties and Released Parties shall have expressly waived, and each Settlement Class Member shall be deemed to have waived, and by operation of the Final Judgment and Order of Dismissal shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

and any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542.

The Releasing Parties and Released Parties may hereafter discover facts other than or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims and Settling Defendant's Claims. Nevertheless, Plaintiffs and the Released Parties shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever settled and released, any and all Released Claims and Settling Defendant's Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiffs and the Released Parties acknowledge, and Settlement Class Members shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Settling Defendant's Claims was separately bargained for and was a key element of the Agreement.

8

3.    **SETTLEMENT CLASS CERTIFICATION**

(a)    The Parties hereby stipulate for purposes of settlement only that the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(2) are satisfied, and, subject to Court approval, the following settlement class shall be certified as to claims against MLS PIN only (the "Settlement Class" or "Class"):

> Sellers who paid, and/or on whose behalf sellers' brokers paid, Buyer-Broker Commissions during the Settlement Class Period in connection with the sale of Residential Real Estate listed on Pinergy.

(b)    Specifically excluded from the Settlement Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any Person acting on their behalf.  Also excluded from the Settlement Class are any judicial officers presiding over this action and the members of his/her immediate families and judicial staff, and any juror assigned to the Action.

(c)    The Parties' agreement as to certification of the Settlement Class is only for purposes of effectuating a settlement and for no other purpose. MLS PIN retains all of its objections, arguments, and defenses with respect to class certification, and reserves all rights to contest class certification, if Court does not enter the Final Judgment and Order of Dismissal, if the Court's approval is reversed or vacated on appeal, if this Agreement is terminated as provided herein, or if the settlement set forth in this Agreement otherwise fails to become effective. The Parties acknowledge that there has been no stipulation to any Class or certification of any Class for any purpose other than effectuating the settlement, and that if the settlement set forth in this Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Agreement is terminated as provided herein, or if the settlement set forth

9

in this Agreement otherwise fails to become effective, this agreement as to certification of the Class becomes null and void *ab initio*. This Agreement or any other settlement-related statement may not be cited regarding certification of the Class, or in support of an argument for certifying a class for any purpose related to this Action.

**4.    GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT AGREEMENT**

The Parties agree to cooperate with one another in good faith to effectuate and implement the terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the terms of this Agreement. This includes MLS PIN serving notice on those persons and entities required to receive notice pursuant to 28 U.S.C. § 1715.

**5.    PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING**

(a)    Plaintiffs' Counsel shall share drafts of the motion for preliminary approval and any related submissions with MLS PIN's Counsel at least five (5) days before the anticipated filing date in order to give MLS PIN a reasonable opportunity to comment. This motion shall:

(i)    Seek certification of the Settlement Class for purposes of settlement only, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2);

(ii)    Request preliminary approval of the settlement set forth in this Agreement as fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23;

(iii)    Seek the appointment of the Plaintiffs as representatives of the Settlement Class under Federal Rule of Civil Procedure 23;

(iv)    Seek appointment of Plaintiffs' Counsel as interim counsel for the Settlement Class under Federal Rule of Civil Procedure 23(g);

(v)     If practicable at the time the motion is filed or otherwise at a later time, seek approval of the form and method of dissemination of the Class Notice, which may be published based upon the recommendations of the Notice Administrator. The Notice Administrator will establish and maintain a website, from which each member of the Class can view and download relevant documents;

(vi)     Stay all proceedings in the Action against MLS PIN until the Court renders a final decision on approval of the settlement set forth in this Agreement; and

(vii)     Attach a proposed order in the form of **Exhibit 1** hereto, which shall include such provisions as are typical in such orders, including (1) a finding that the proposed plan of notice complies with Federal Rule of Civil Procedure 23 and the requirements of due process, and (2) a provision that, if final approval of the settlement is not obtained, the settlement is null and void, and the Parties will revert to their positions *ex ante* without prejudice to their rights, claims, or defenses.

(b)     The Class Notice shall apprise each member of the Settlement Class of his, her or its right to object to the settlement.

(c)     Any Person who objects to the settlement set forth in this Agreement may appear in person or through counsel, at that Person's own expense, at the Fairness Hearing to present any evidence or argument that the Court deems proper and relevant. However, no such Person shall be heard, and no papers, briefs, pleadings, or other documents submitted by any such Person shall be

received and considered by the Court, unless such Person properly submits a written objection that includes all of the following:

(i)     The Person's full name, address, telephone number, and e-mail address (if any);

(ii)    A notice of intention to personally appear and/or testify at the Final Hearing;

(iii)   Proof of membership in the Settlement Class; and

(iv)    The specific grounds for the objection and any reasons why such Person desires to appear and be heard, as well as all documents or writings that such Person desires the Court to consider.

(d)     Such a written objection must be both filed with the Clerk of the Court no later than twenty-eight (28) days prior to the date set for the Fairness Hearing and mailed to Plaintiffs' Counsel and MLS PIN's Counsel at the addresses provided in the Class Notice and postmarked no later than twenty-eight (28) days prior to the date set for the Fairness Hearing. Any Person that fails to object in the manner prescribed herein shall be deemed to have waived his or her objections and will forever be barred from making any such objections in the Action, unless otherwise excused for good cause shown, as determined by the Court.

(e)     If the Preliminary Approval Order is entered by the Court, Class Plaintiffs shall seek, and MLS PIN shall not oppose, entry of a Final Judgment and Order of Dismissal of MLS PIN from the Action. Plaintiffs' Counsel shall share drafts of the proposed motion for final approval and Final Judgment and Order of Dismissal of MLS PIN from the Action with MLS PIN's Counsel at least seven (7) days before the anticipated filing date in order to give MLS PIN a reasonable opportunity to comment.  Subject to the approval of the Court, the proposed Final Judgment and Order of Dismissal of MLS PIN from the Action shall be in the form of **Exhibit 2**

12

hereto and shall meet all of the following criteria (in addition to any additional criteria specified elsewhere in this Agreement):

(i)     Certifies the Class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2) solely for the purpose of the settlement;

(ii)    Approves finally the settlement set forth in this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Class within the meaning of Federal Rule of Civil Procedure 23 and directs its consummation according to its terms;

(iii)   Finds that the Class Notice constituted due, adequate, and sufficient notice of the settlement set forth in this Agreement and the Fairness Hearing and meets the requirements of due process and the Federal Rules of Civil Procedure;

(iv)    Directs that, as to the Released Parties, MLS PIN shall be dismissed from the Action with prejudice and, except as provided for in this Agreement, without costs; provided, however, that such dismissal shall not affect, in any way, the right of Class Plaintiffs or Settlement Class Members to pursue claims, if any, outside the scope of the Released Claims;

(v)     Orders that the Releasing Parties are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims against any Released Party;

(vi)    Retains with the Court exclusive jurisdiction over the settlement and this Agreement, including the administration, consummation and enforcement of the settlement and any future claim by Plaintiffs that MLS PIN has

13

reinstituted the Buyer-Broker Commission Rule in violation of Paragraph 9 below;

(vii)    Orders that, to the extent not prohibited by law, all claims by any Person against the Released Parties for contribution or indemnification (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise, shall be barred; and

(viii)    Determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the Final Judgment and Order of Dismissal as to MLS PIN shall be final and entered forthwith.

## 6.    EFFECTIVE DATE OF THE SETTLEMENT

(a)    The Effective Date shall be the date when all of the following events shall have occurred and shall be contingent on the occurrence of all of the following events:

(i)    Entry by the Court of the Preliminary Approval Order;

(ii)    Final approval by the Court of the settlement set forth in this Agreement, following Class Notice and the Fairness Hearing;

(iii)    No Party having exercised his, her, or its rights to terminate this Agreement; and

(iv)    Entry by the Court of a Final Judgment and Order of Dismissal, and the Final Judgment and Order of Dismissal becoming final, or, in the event that the Court enters an Alternative Judgment and neither Class Plaintiffs nor MLS PIN elects to terminate this Agreement, such Alternative Judgment becoming final. Neither the provisions of Federal Rule 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

14

(b)      Notwithstanding any other provision herein, any proceeding or order, or motion for reconsideration, appeal, petition for a writ of certiorari or its equivalent, pertaining solely to any Fee, Expense and Litigation Fund Application, shall not in any way delay or preclude the Effective Date, except that no Fee and Expense Award shall be payable by MLS PIN until such proceeding or order, or motion for reconsideration, appeal, petition for a writ of certiorari or its equivalent, is adjudicated and becomes final.

## 7.     NOTICE ADMINISTRATOR AND COST OF NOTICE

Pursuant to the Preliminary Approval Order and subject to Court approval, Plaintiffs will engage Kroll Settlement Administration LLC ("Kroll") to effectuate the notice plan approved by the Court in the Preliminary Approval Order.  MLS PIN shall provide Kroll with the sold-property address(es) associated with each Class Member as available to MLS PIN within ten (10) days of the Preliminary Approval Order. Kroll shall bill MLS PIN for, and MLS PIN shall pay, Kroll's notice and administration fees, costs and expenses. All amounts paid by MLS PIN to Kroll in satisfaction of Kroll's notice and administration fees, costs and expenses in this Action shall reduce by an equal amount the total funds payable to Plaintiffs' Counsel pursuant to any order of the Court concerning any Fee, Expense and Litigation Fund Application made by Plaintiffs' Counsel as set forth in paragraph 11 below, such that in no event shall MLS PIN's total combined obligation to Kroll and Plaintiffs' Counsel be in excess of three million dollars ($3,000,000).

## 8.     SCOPE AND EFFECT OF SETTLEMENT

(a)      The obligations incurred pursuant to this Agreement shall be in full and final disposition of the following:

(i)      The Action against MLS PIN; and

(ii)      Any and all Released Claims as against all Released Parties; and

(iii)      Any and all Settling Defendant's Claims as against all Releasing Parties.

15

(b)     Upon the Effective Date, each of the Releasing Parties:

(i)     Shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal, shall have, fully, finally, and forever waived, released, relinquished, and discharged all Released Claims against each of the Released Parties, regardless of whether such Releasing Party executes and delivers a proof of claim;

(ii)    Shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and

(iii)   Agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Party related in any way to any Released Claims.

However, notwithstanding the provisions in Paragraph 8(b)(i), (ii) and (iii) above, Plaintiffs shall retain the right to petition the Court for specific performance of this Agreement should MLS PIN at any time materially reinstate the Buyer-Broker Commission Rule in violation of Paragraph 9 below.

(c)     Upon the Effective Date, each of the Released Parties:

(i)     Shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever released and discharged Plaintiffs, Plaintiffs' Counsel, and each and all Settlement Class Members from each and every one of the Settling Defendant's Claims;

(ii)    Shall forever be enjoined from prosecuting the Settling Defendant's Claims; and

(iii)    Agrees and covenants not to sue on the basis of the Settling Defendant's Claims, or to assist any third party in commencing or maintaining any such suit related to the Settling Defendant's Claims.

(d)    The releases provided in this Agreement shall become effective immediately upon occurrence of the Effective Date without the need for any further action, notice, condition, or event.

(e)    As an express and material condition of this Agreement, the Court shall enter an order, in the Final Judgment and Order of Dismissal, barring, to the extent permitted by law, claims by or against the Released Parties for contribution or indemnification (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise by or against any of the following:

(i)    Any of the other Defendants currently named in the Action;

(ii)    Any other Person formerly named as a party in the Action; or

(iii)    Any other Person subsequently added or joined as a party in the Action.

(f)    In the event that this Agreement is terminated pursuant to Paragraph 12, or any condition for the final approval of this Agreement is not satisfied, the release and covenant not to sue provisions of the foregoing paragraphs shall be null and void and unenforceable.

**9.**    **CONSIDERATION TO SETTLEMENT CLASS**

(a)    Subject to the conditions set forth herein, including without limitation Paragraph 9(b) below, MLS PIN agrees that, commencing no later than one hundred eighty (180) days after the Effective Date of Settlement, and continuing for a period of three (3) years thereafter, MLS PIN will adopt and implement as part of its Rules and Regulations the amendments to the Rules and Regulations attached hereto as **Exhibit 3a** in redline form and **Exhibit 3b** in clean form. After the expiration of said three (3) year period, MLS PIN may, at its sole discretion, alter or amend the specific language adopted and implemented pursuant to this Agreement; provided, however,

17

that MLS PIN will not at any time before or following the expiration of the three (3) year period adopt any language, or otherwise promulgate any policy, that materially (re)instates the Buyer-Broker Commission Rule that is the subject of this Agreement.

(b)     Should any provision of Paragraph 9(a) above conflict or be inconsistent with: (i) any existing or subsequently adopted, promulgated or issued state or federal statute, regulation, rule, or order (collectively a "Legal Requirement"); or (ii) any existing or future formal or informal regulatory directive, requirement, instruction, guidance, order, decree, settlement, or compromise agreement, whether of general application or directed at or applicable to any one or more of the Defendants (collectively a "Regulatory Requirement"), such Legal Requirement or Regulatory Requirement shall control. In that event, the Agreement and the Final Judgment and Order of Dismissal of MLS PIN from the Action shall be deemed amended to conform to such Legal Requirement or Regulatory Requirement. MLS PIN shall not be liable for engaging in any practice or failing to engage in any practice during the three (3) year period for prospective relief where such conduct was authorized, permitted, or required by a Legal Requirement or Regulatory Requirement.

## 10.     COOPERATION

(a)     In further consideration for the dismissal of Plaintiffs' and the Settlement Class Members' claims against MLS PIN in the Action and the release of the Released Claims, subject to any order from the Court, MLS PIN shall provide cooperation as set forth below.

(b)     All cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided. MLS PIN's cooperation obligations shall apply only to Releasing Parties who act with, by or through Plaintiffs' Counsel pursuant to this Agreement, including but not limited to Plaintiffs' good faith efforts to utilize documents and data already produced by MLS PIN to reduce the burdens of cooperation when practicable. MLS PIN's

cooperation obligations shall in all events be limited to facts and events involving the conduct alleged in the Action.

(c)      Nothing in this Agreement shall impose on MLS PIN an obligation to produce or provide any materials or information protected from disclosure by the work-product doctrine, the attorney-client privilege, the common interest privilege, the joint defense privilege, obligations under applicable data privacy or bank secrecy laws or regulations, and/or any other applicable privilege or protection with respect to any documents, deposition testimony, and/or other information requested under this Agreement.

(d)      Any documents, deposition testimony, and/or other information provided to Class Plaintiffs pursuant to this provision shall be covered by the protective order in effect in the Action, or, if no protective order is in effect, shall be maintained as confidential and available only to Plaintiffs' Counsel and MLS PIN's Counsel or corporate counsel.

(e)      None of the cooperation provisions are intended to, nor do they, waive any applicable privilege or protection.

(f)      The information provided pursuant to this Agreement may be utilized by Plaintiffs or Plaintiffs' Counsel solely to assist in the prosecution of the Action and for no other purpose.

(g)      Subject to the foregoing, MLS PIN will provide Plaintiffs and the Settlement Class the following cooperation. Nothing herein is intended to prevent the use in pre-trial, trial, or appellate proceedings in this Action of information and/or documents produced in discovery or through the cooperation provisions set forth below:

(i)      **Preliminary Approval:** MLS PIN shall cooperate to the extent reasonably necessary in connection with Plaintiffs' Counsel's preparation of the motion

for preliminary approval and any related documents necessary to effectuate and implement the terms and conditions of this Agreement.

(ii)     **Written Discovery Seeking Documents:**

a.     Plaintiffs may obtain document discovery from MLS PIN, as provided for under the Federal Rules of Civil Procedure. Such discovery shall be served on MLS PIN's Counsel via email. Except as further provided herein, such discovery shall be limited to reasonable requests for production of documents pursuant to Federal Rule of Civil Procedure 34. Such discovery shall not include any requests for admissions.  MLS PIN reserves all rights to object to any document discovery Plaintiffs may serve hereunder, which rights MLS PIN reserves to the fullest extent allowable under applicable law. Plaintiffs further agree that MLS PIN's good-faith assertion of any objections to such discovery, or good-faith refusal to produce any requested documents, will not constitute a breach of this Agreement, but will be addressed pursuant to the Federal Rules of Civil Procedure.

b.     As applicable and upon written request, MLS PIN shall provide a business record or authenticity declaration as to any documents produced by MLS PIN pursuant to this Agreement or any other process.

(iii)   **Written Interrogatories:**

    a.    Plaintiffs may obtain discovery by interrogatory from MLS PIN, as provided for under the Federal Rules of Civil Procedure. Such discovery shall be served on MLS PIN's Counsel via email. Plaintiffs shall be limited to fifteen (15) interrogatories. MLS PIN reserves all rights to object to any written interrogatory discovery Plaintiffs may serve hereunder, which rights MLS PIN reserves to the fullest extent allowable under applicable law. Plaintiffs further agree that MLS PIN's good-faith assertion of any objections to such discovery, or good-faith refusal to produce any requested documents, will not constitute a breach of this Agreement, but will be addressed pursuant to the Federal Rules of Civil Procedure

(iv)   **Depositions:**

    a.    MLS PIN shall use its reasonable best efforts to make available for deposition during fact discovery in the Action up to two (2) specific current or former MLS PIN employees reasonably requested by Plaintiffs' Counsel and one (1) deposition pursuant to Fed. R. Civ. P. 30(b)(6), as soon as reasonably appropriate after the request.

    b.    MLS PIN shall use good faith efforts to assist Plaintiffs' Counsel in arranging reasonably requested depositions with former MLS PIN employees. For the avoidance of doubt (i) it shall not be a breach of this Agreement by MLS PIN if any current employee reasonably refuses to sit for a deposition of his or her own volition; and (ii) if

21

so requested by Plaintiffs' Counsel, MLS PIN shall waive and provide written waivers of any non-disclosure or confidentiality obligations owed to MLS PIN that may otherwise be argued to preclude current or former employees from cooperating with Plaintiffs' Counsel in their litigation of the Action provided that the testimony and information provided by such current or former employees is subject to the Court's confidentiality order in the Action.

(iv)   **Continuation, Scope, and Termination of Obligations:** MLS PIN's obligations to cooperate under the Agreement are continuing until and shall terminate upon the earlier of: (1) the date when final judgment has been rendered, with no remaining rights of appeal, in the Action against all Defendants; or (2) the close of fact discovery in the Action.

## 11.   FEE, EXPENSE AND LITIGATION FUND APPLICATION

(a)   In accordance with Federal Rule of Civil Procedure 23(h), Plaintiffs' Counsel may submit an application or applications ("Fee, Expense and Litigation Fund Application") to the Court for an award of reasonable attorneys' fees and expenses and to fund a litigation fund to facilitate Plaintiffs pursuing this Action against the remaining Defendants (the "Litigation Fund"). The Fee, Expense and Litigation Fund Application shall seek a total amount of three million dollars ($3,000,000), which amount MLS PIN agrees to pay.  Plaintiffs agree not to seek any amount in excess of the three million dollars ($3,000,000) set forth in this paragraph from MLS PIN.

(b)   Subject to paragraph 7, MLS PIN will take no position with regard to a Fee, Expense and Litigation Fund Application seeking an amount up to three million dollars ($3,000,000), Plaintiffs' Counsel agree not to seek a total amount of attorneys' fees, expenses and

litigation fund contribution in excess of three million dollars ($3,000,000), and in no event shall MLS PIN be obligated to pay or reimburse Plaintiffs' Counsel any amounts in excess of three million dollars ($3,000,000).

(c)     Within seven (7) days after entry of the Final Judgment and Order of Dismissal, MLS PIN shall deposit the Fee, Expense and Litigation Fund Award (not to exceed three million dollars ($3,000,000)) in the firm Trust Account of Izard Kindall & Raabe LLP. If for any reason the Effective Date does not (and cannot) occur, all money paid into the Trust Account of Izard Kindall & Raabe LLP, including the interest accumulated, shall be returned to MLS PIN within five (5) days after the occurrence of the condition or event that irrevocably prevents occurrence of the Effective Date.

## 12.   TERMINATION OF THE SETTLEMENT

(a)     Class Plaintiffs, through Plaintiffs' Counsel, and MLS PIN, through MLS PIN's Counsel, shall, in each of their separate discretions, have the right to terminate the settlement set forth in this Agreement by providing written notice of their election to do so ("Termination Notice") to all other Parties hereto within thirty (30) days of the date on which any of the following occur:

(i)     The Court enters an order declining to enter the Preliminary Approval Order in any material respect adverse to the terminating party;

(ii)    The Court enters an order refusing to approve this Agreement or any material part of it adverse to the terminating party;

(iii)   The Court enters an order declining to enter the Final Judgment and Order of Dismissal in any material respect adverse to the terminating party;

(iv)    The Court enters an Alternative Judgment that is in any material respect adverse to the terminating party;

23

(v)    The Final Judgment and Order of Dismissal of MLS PIN from the Action is modified or reversed by a court of appeal or any higher court in any material respect adverse to the terminating party; or

(vi)    An Alternative Judgment is modified or reversed by a court of appeal or any higher court in any material respect adverse to the terminating party.

(b)    Notwithstanding Paragraph 12(a) above, the Court's determination as to the Fee, Expense and Litigation Fund Application or the amount or other terms of any Fee, Expense, and Litigation Fund Award shall not provide grounds for termination of this Agreement or settlement.

(c)    Except as otherwise expressly provided herein, in the event the settlement is terminated in accordance herewith, is vacated, is not approved, or the Effective Date fails to occur for any reason, then the Parties to this Agreement shall be restored to their respective statuses in the Action as of the Execution Date without prejudice to any of MLS PIN's defenses, and, except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered.

## 13.  MISCELLANEOUS

(a)    The Parties to this Agreement intend the settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Plaintiffs and/or any Settlement Class Member against the Released Parties with respect to MLS PIN and the Released Claims. Accordingly, Plaintiffs and MLS PIN agree not to assert in any judicial proceeding that the Action was brought by Plaintiffs or defended by MLS PIN in bad faith or without a reasonable basis. The Parties further agree not to assert in any judicial proceeding that any Party violated Federal Rule of Civil Procedure 11. The Parties agree that the amounts paid and the other terms of the settlement were negotiated at arm's length in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

(b)     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

(c)     The administration and consummation of the settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders relating to the Fee, Expense and Litigation Fund Application and enforcing the terms of this Agreement. Notwithstanding the foregoing, nothing in this Paragraph shall be deemed an admission or waiver by MLS PIN of any defense or objection other than for matters pertaining to this Agreement.

(d)     For the purpose of construing or interpreting this Agreement, Plaintiffs and MLS PIN agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

(e)     This Agreement shall constitute the entire agreement between Plaintiffs and MLS PIN pertaining to the settlement of the Action and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and MLS PIN in connection therewith. All terms of this Agreement are contractual and not mere recitals. The terms of this Agreement are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties hereto including any Settlement Class Members.

(f)     This Agreement may be modified or amended, except as otherwise expressly provided herein, only by a writing executed by Plaintiffs and MLS PIN subject (if after entry of the Preliminary Approval Order or the Final Judgment and Order of Dismissal) to approval by the

Court. Amendments and modifications may be made without notice to the Class unless notice is required by law or by the Court.

(g)     Nothing in this Agreement constitutes an admission by MLS PIN as to the merits of the allegations made in the Action, the validity of any defenses that could be asserted by MLS PIN, or the appropriateness of certification of any class other than the Settlement Class under Federal Rule of Civil Procedure 23 for purposes of settlement only. This Agreement is without prejudice to the rights of MLS PIN to do any of the following:

(i)      Challenge the Court's certification of any class, including the Class, in the Action should the Agreement not be approved or implemented for any reason; and/or

(ii)     Oppose any certification or request for certification in any other proposed or certified class action.

(h)     All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the Commonwealth of Massachusetts without regard to its choice-of-law principles.

(i)      Except as provided in Paragraph 10, MLS PIN, Plaintiffs, their respective counsel, and the Settlement Class Members hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Massachusetts solely for the purpose of any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of this Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.

(j)      This Agreement may be executed in counterparts by Plaintiffs and MLS PIN, and a facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Agreement.

(k)      Plaintiffs and MLS PIN acknowledge that they have been represented by counsel and have made their own investigations of the matters covered by this Agreement to the extent they have deemed it necessary to do so. Therefore, Plaintiffs and MLS PIN and their respective counsel agree that they will not seek to set aside any part of this Agreement on the grounds of mistake. Moreover, Plaintiffs and MLS PIN and their respective counsel understand, agree, and expressly assume the risk that any fact may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that this Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

(l)      The terms of the Agreement shall remain confidential until the filing of the Agreement with the Court.

(m)      Each of the undersigned attorneys represents that he is fully authorized to enter into the terms and conditions of, and to execute, this Agreement.  Each of the undersigned attorneys shall use their best efforts to effectuate this Agreement.

//

//

//

//

//

//

27

14.   **SIGNATURES**

WITNESS WHEREOF, the Parties hereto have agreed to this Agreement as of the date first herein written above.

*Plaintiffs and on behalf of the Settlement*

*Class*

On behalf of Defendant MLS PIN

_____

Jennifer Nosalek

_____

Randy Hirschorn

By:

Title:

_____

Tracey Hirschorn

_____

Robert A. Izard (pro hac vice)
Douglas P. Needham, BBO No. 67101
Craig A. Raabe (pro hac vice)
Seth R. Klein (pro hac vice)
Christopher M. Barrett (pro hac vice)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
(860) 493-6290 fax
dneedham@ikrlaw.com
rizard@ikrlaw.com
craabe@ikrlaw.com
sklein@ikrlaw.com
cbarrett@ikrlaw.com

Christopher L. Lebsock (pro hac vice)
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
(415) 633-1908

_____

Jon M. Anderson
BRENNAN RECUPERO CASCIONE
SCUNGIO & McALLISTER, LLP
362 Broadway
Providence, RI  02909
(401) 453-2300
(401) 453-2345 fax
janderson@brcsm.com

J. Matthew Goodin (pro hac pending)
LOCKE LORD LLP
111 South Wacker Drive
Suite 4100
Chicago, IL  60606
(312) 443-0472
jmgoodin@lockelord.com

*Attorneys for Defendant*

28

## 14. SIGNATURES

WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Agreement as of the date first herein written above.

*Plaintiffs and on behalf of the Settlement Class*

_____
Jennifer Nosalek

_____
Randy Hirschorn

_____
Tracey Hirschorn

_____
Robert A. Izard (pro hac vice)
Douglas P. Needham, BBO No. 67101
Craig A. Raabe (pro hac vice)
Seth R. Klein (pro hac vice)
Christopher M. Barrett (pro hac vice)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
(860) 493-6290 fax
dneedham@ikrlaw.com
rizard@ikrlaw.com
craabe@ikrlaw.com
sklein@ikrlaw.com
cbarrett@ikrlaw.com

Christopher L. Lebsock (pro hac vice)
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
(415) 633-1908

*On behalf of Defendant MLS PIN*

_____
By:

Title:

_____
Jon M. Anderson
BRENNAN RECUPERO CASCIONE
SCUNGIO & McALLISTER, LLP
362 Broadway
Providence, RI 02909
(401) 453-2300
(401) 453-2345 fax
janderson@brcsm.com

J. Matthew Goodin (pro hac pending)
LOCKE LORD LLP
111 South Wacker Drive
Suite 4100
Chicago, IL 60606
(312) 443-0472
jmgoodin@lockelord.com

*Attorneys for Defendant*

## 14. SIGNATURES

WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives,

have agreed to this Agreement as of the date first herein written above.

*Plaintiffs and on behalf of the*

*Settlement Class*

600 Montgomery Street
Suite 3200
San Francisco, CA 94111
(415) 633-1908
   *On behalf of Defendant MLS PIN*

_____
Jennifer Nosalek

_____ 6/26/23
Randy Hirschorn

By: _____

Title: _____

_____
Tracey Hirschorn

_____
Robert A. Izard (pro hac vice)
Douglas P. Needham, BBO No. 67101
Craig A. Raabe (pro hac vice)
Seth R. Klein (pro hac vice)
Christopher M. Barrett (pro hac
vice) IZARD, KINDALL &
RAABE, LLP 29 South Main Street,
Suite 305 West Hartford, CT 06107
(860) 493-6292
(860) 493-6290 fax
dneedham@ikrlaw.com
rizard@ikrlaw.com
craabe@ikrlaw.com
sklein@ikrlaw.com
cbarrett@ikrlaw.com

Christopher L. Lebsock (pro hac vice)
HAUSFELD LLP

_____
Jon M. Anderson
BRENNAN RECUPERO CASCIONE
SCUNGIO & McALLISTER, LLP
362 Broadway
Providence, RI 02909
(401) 453-2300
(401) 453-2345 fax
janderson@brcsm.com

J. Matthew Goodin (pro hac pending)
LOCKE LORD LLP
111 South Wacker Drive
Suite 4100
Chicago, IL 60606
(312) 443-0472
jmgoodin@lockelord.com

*Attorneys for Defendant*

## 14. SIGNATURES

WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Agreement as of the date first herein written above.

*Plaintiffs and on behalf of the Settlement Class*

_____
Jennifer Nosalek

_____
Randy Hirschorn

*Tracey Hirschorn* (signature)
Tracey Hirschorn

_____
Robert A. Izard (pro hac vice)
Douglas P. Needham, BBO No. 67101
Craig A. Raabe (pro hac vice)
Seth R. Klein (pro hac vice)
Christopher M. Barrett (pro hac vice)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
(860) 493-6290 fax
dneedham@ikrlaw.com
rizard@ikrlaw.com
craabe@ikrlaw.com
sklein@ikrlaw.com
cbarrett@ikrlaw.com

Christopher L. Lebsock (pro hac vice)
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
(415) 633-1908

*On behalf of Defendant MLS PIN*

_____
By:

Title:

_____
Jon M. Anderson
BRENNAN RECUPERO CASCIONE
SCUNGIO & McALLISTER, LLP
362 Broadway
Providence, RI 02909
(401) 453-2300
(401) 453-2345 fax
janderson@brcsm.com

J. Matthew Goodin (pro hac pending)
LOCKE LORD LLP
111 South Wacker Drive
Suite 4100
Chicago, IL 60606
(312) 443-0472
jmgoodin@lockelord.com

*Attorneys for Defendant*

14.    **SIGNATURES**

WITNESS WHEREOF, the Parties hereto have agreed to this Agreement as of the date

first herein written above.

*Plaintiffs and on behalf of the Settlement*

*Class*

_____

Jennifer Nosalek

_____

Randy Hirschorn

_____

Tracey Hirschorn

_____
Robert A. Izard (pro hac vice)
Douglas P. Needham, BBO No. 67101
Craig A. Raabe (pro hac vice)
Seth R. Klein (pro hac vice)
Christopher M. Barrett (pro hac vice)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
(860) 493-6290 fax
dneedham@ikrlaw.com
rizard@ikrlaw.com
craabe@ikrlaw.com
sklein@ikrlaw.com
cbarrett@ikrlaw.com

Christopher L. Lebsock (pro hac vice)
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
(415) 633-1908

*On behalf of Defendant MLS PIN*

By: Erminio Grasso

Title: President and Chief Executive Officer

Jon M. Anderson   (BBO No. 557962)
BRENNAN RECUPERO CASCIONE
SCUNGIO & McALLISTER, LLP
362 Broadway
Providence, RI 02909
(401) 453-2300
(401) 453-2345 fax
janderson@brcsm.com

J. Matthew Goodin (pro hac pending)
LOCKE LORD LLP
111 South Wacker Drive
Suite 4100
Chicago, IL 60606
(312) 443-0472
jmgoodin@lockelord.com

*Attorneys for Defendant*

28

clebsock@hausfeld.com

Jose Roman Lavergne (pro hac vice)
HAUSFELD LLP
888 16th Street, N.W.
Suite 300
Washington, D.C., 20006
(202) 540-7200
jlavergne@hausfeld.com

***Attorneys for Plaintiffs***

# Exhibit 1

<u>EXECUTION COPY</u>

**EXHIBIT 1**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JENNIFER NOSALEK, RANDY HIRSCHORN, and TRACEY HIRSCHORN, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | |
| MLS PROPERTY INFORMATION NETWORK, INC., ANYWHERE REAL ESTATE INC. (F/K/A REALOGY HOLDINGS CORP.), CENTURY 21 REAL ESTATE LLC, COLDWELL BANKER REAL ESTATE LLC, SOTHEBY'S INTERNATIONAL REALTY AFFILIATES LLC, BETTER HOMES AND GARDENS REAL ESTATE LLC, ERA FRANCHISE SYSTEMS LLC, HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, POLZLER & SCHNEIDER HOLDINGS CORPORATION, INTEGRA ENTERPRISES CORPORATION, RE/MAX OF NEW ENGLAND, INC., RE/MAX INTEGRATED REGIONS, LLC, AND KELLER WILLIAMS REALTY, INC., | Case No. 1:20-cv-12244-PBS<br>Judge Patti B. Saris |
| Defendants. | |

**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT BETWEEN
PLAINTIFFS AND MLS PROPERTY INFORMATION NETWORK, INC.**

THIS CAUSE came before the Court on Jennifer Nosalek, Randy Hirschorn, and Tracey

Hirschorn's ("Plaintiffs") Motion for Preliminary Approval of Settlement with MLS Property

Information Network, Inc. ("MLS PIN"), filed June 30, 2023. Plaintiffs have entered into a

settlement agreement (the "Settlement Agreement"), with MLS PIN, attached as Exhibit 1 to the

Declaration of Seth R. Klein also filed June 30, 2023. The Court, having reviewed the Motion, its

accompanying memorandum and declarations, the Settlement Agreement, and the file, hereby:

## ORDERS AND ADJUDGES:

1.      Terms used in this Order that are defined in the Settlement Agreement are, unless

otherwise defined herein, used in this Order as defined in the Settlement Agreement.

### Preliminary Approval of the Settlement Agreement

2.      The terms of the Settlement are hereby preliminarily approved, including the

releases contained therein, as being fair, reasonable, and adequate to the Settlement Class, subject

to the Fairness Hearing described below. The Court finds that the Settlement Agreement was

entered into at arm's-length by highly experienced counsel and is sufficiently within the range of

reasonableness that notice of the Settlement Agreement should be given as provided in this Order.

### Certification of the Settlement Class

3.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court certifies,

solely for purposes of effectuating the Settlement set forth in the Settlement Agreement, the

following Settlement Class:

> Sellers who paid, and/or on whose behalf sellers' brokers paid, Buyer-Broker
> Commissions during the Settlement Class Period in connection with the sale of
> Residential Real Estate listed on Pinergy.[1]

4.      The Court's certification of the Settlement Class as provided herein is without

prejudice to, or waiver of the rights of, any other defendant to contest certification of the proposed

class in this Action. The Court's findings herein shall have no effect on the Court's ruling on any

---

[1] Specifically excluded from the Settlement Class are Defendants; Released Parties; co-conspirators; the
officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which
any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal
representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting
on their behalf. Also excluded from the Settlement Class are any judicial officers presiding over this action
and the members of his/her immediate families and judicial staff, and any juror assigned to the Action.

motion to certify any class in this Action, and no party may cite or refer to the Court's certification of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class. The findings that follow in paragraphs 5-6 are limited to this particular Order and are made only in the context of this particular settlement.

5.     The Court finds that, solely for the purpose of effectuating the Settlement, the requirements of Rule 23 are satisfied and Plaintiffs should be appointed as Class Representatives. More specifically, the Court finds as follows:

        a.     Pursuant to Rule 23(a)(1), that the members of the Class are so numerous that their joinder before the Court would be impracticable;

        b.     Pursuant to Rule 23(a)(2), that Plaintiffs have alleged one or more questions of fact or law common to the Class;

        c.     Pursuant to Rule 23(a)(3), that Plaintiffs' claims are typical of the claims of the Class;

        d.     Pursuant to Rule 23(a)(4), that Plaintiffs will fairly and adequately protect the interests of the Class; and

        e.     Pursuant to Rule 23(b)(2), that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

6.     The Court directs that the Parties implement the Settlement Agreement on the following timetable:

| | |
|---|---|
| Deadline for commencement of Notice Plan (mailing of Postcard Notice, start of social media campaign, publication of first publication notice, issuance of press release, and launch of Settlement website) | _____, 2023<br><br>[40 days after entry of Preliminary Approval Order] |
| Motion(s) for, and memoranda in support of, (i) Final Approval of Settlement and (ii) Fee, Expense and Litigation Fund Application | _____, 2023<br><br>[45 days after entry of Preliminary Approval Order] |
| Last day for objections to the Settlement to be filed with the Court and sent to counsel | _____, 2023<br><br>[28 days before date set by Court for Final Approval Hearing] |
| Parties file responses to any filed objections and any other reply briefs in support of Final Approval and Fee, Expense and Litigation Fund Application | _____, 2023<br><br>[14 days before date set by Court for Final Approval Hearing] |
| Final Approval Hearing | _____, 2023<br><br>[At the convenience of the Court, but not less than 110 days after entry of Preliminary Approval Order |

7.     If the Effective Date[2] does not occur with respect to the Settlement because of the failure of any condition that affects the Settlement, this certification of the Class shall be deemed null and void as to the Parties to the Settlement without the need for any further action by the Court

---

[2] Pursuant to paragraph 6(a) of the Settlement Agreement: "The Effective Date shall be the date when all of the following events shall have occurred and shall be contingent on the occurrence of all of the following events: (i) Entry by the Court of the Preliminary Approval Order; (ii) Final approval by the Court of the Settlement set forth in this Agreement, following Class Notice and the Fairness Hearing; (iii) No Party having exercised his, her, or its rights to terminate this Agreement; and (iv) Entry by the Court of a Final Judgment and Order of Dismissal, and the Final Judgment and Order of Dismissal becoming final, or, in the event that the Court enters an Alternative Judgment and neither Class Plaintiffs nor MLS PIN elects to terminate this Agreement, such Alternative Judgment becomes final.  Neither the provisions of Federal Rule 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times."

or MLS PIN. In such circumstances, MLS PIN shall retain its rights to oppose certification of this litigation as a class action under Rule 23 of the Federal Rules of Civil Procedure, or under any other state or federal rule, statute, law, or provision thereof, and to contest and appeal any grant or denial of certification in this litigation or in any other litigation on any grounds.

8.      Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, and solely for settlement purposes, the following counsel are appointed as interim counsel for the Settlement Class: (1) Robert A. Izard and Seth R. Klein of Izard, Kindall & Raabe, LLP and (2) Christopher A. Lebsock and Jose Roman Lavergne of Hausfeld LLP.

### Notice to Class Members

9.      The Court approves Kroll Settlement Associates LLP ("Notice Administrator") to effectuate the notice plan set forth in the Settlement Agreement, in Plaintiffs' Memorandum of Law in Support of their Motion for Preliminary Approval, and in the affidavits submitted therewith.  Any fees, costs or expenses charged by Kroll associated with the Class Notice shall be paid by MLS PIN in accord with the terms of the Settlement Agreement.

### Other Provisions

10.     All proceedings in the Action against MLS PIN are stayed (except to the extent necessary to effectuate the Settlement Agreement or to carry out any of its items) until the Court renders a final decision on approval of the Settlement set forth in the Settlement Agreement.

11.     In the event that the Settlement Agreement is terminated in accordance with its provisions, then the Parties to the Settlement Agreement shall be deemed to have reverted to their respective status in the Action as of the Execution Date without prejudice to any of MLS PIN's defenses, and, except as otherwise expressly provided in the Settlement Agreement, the Parties

shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered.

12.     Plaintiffs' claims against the non-settling Defendants shall proceed and are not affected by this Order.

**IT IS SO ORDERED** on this _____ day of_____, 2023.

_____
Hon. Patti B. Saris
**UNITED STATES DISTRICT JUDGE**

# Exhibit 2

<u>**EXECUTION COPY**</u>

**EXHIBIT 2**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JENNIFER NOSALEK, RANDY HIRSCHORN, and TRACEY HIRSCHORN, individually and on behalf of all others similarly situated, <br><br>        Plaintiffs, <br><br> v. <br><br> MLS PROPERTY INFORMATION NETWORK, INC., ANYWHERE REAL ESTATE INC. (F/K/A REALOGY HOLDINGS CORP.), CENTURY 21 REAL ESTATE LLC, COLDWELL BANKER REAL ESTATE LLC, SOTHEBY'S INTERNATIONAL REALTY AFFILIATES LLC, BETTER HOMES AND GARDENS REAL ESTATE LLC, ERA FRANCHISE SYSTEMS LLC, HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, POLZLER & SCHNEIDER HOLDINGS CORPORATION, INTEGRA ENTERPRISES CORPORATION, RE/MAX OF NEW ENGLAND, INC., RE/MAX INTEGRATED REGIONS, LLC, AND KELLER WILLIAMS REALTY, INC., <br><br>       Defendants. | Case No. 1:20-cv-12244-PBS <br> Judge Patti B. Saris |

**[PROPOSED] FINAL JUDGMENT AND ORDER GRANTING
FINAL APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS
<u>AND MLS PROPERTY INFORMATION NETWORK, INC.</u>**

**WHEREAS**, an action is pending before this Court styled *Nosalek v. MLS Property*

*Information Network, Inc., et al*., No. 1:20-cv-12244-PBS (the "Action");

**WHEREAS**, Plaintiffs Jennifer Nosalek, Randy Hirschorn, and Tracey Hirschorn

("Plaintiffs") have moved, pursuant to Federal Rule of Civil Procedure 23(e), for an order (a)

granting final approval to the Settlement Agreement[1] with MLS Property Information Network, Inc. ("MLS PIN"); (b) certifying the Settlement Class (defined in ¶ 5, *infra*); (c) seeking the appointment of the Plaintiffs as representatives of the Settlement Class under Federal Rule of Civil Procedure 23(g); (d) seeking appointment of Plaintiffs' Counsel as interim counsel for the Settlement Class under Federal Rule of Civil Procedure 23(g); and (e) granting final approval to the joint Class Notice (defined in  ¶ 10, *infra*);

**WHEREAS**, the Court has considered the Settlement Agreement and other documents submitted in connection with Plaintiffs' Motion for Final Approval of Settlement with MLS PIN, and good cause appearing therefor;

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.      This Court has subject matter jurisdiction over this Action and, solely for purposes of effectuating the Settlement and subject to the express limitations contained in the Settlement Agreement, personal jurisdiction over Plaintiffs, MLS PIN, and all members of the Settlement Class (defined in ¶ 5, *infra*).

2.      All terms in initial capitalization used in this Final Judgment and Order shall have the same meanings as set forth in the Settlement Agreement, unless otherwise defined herein.

**I.      FINAL APPROVAL OF SETTLEMENT**

3.      Upon review of the record, including the order preliminarily approving the Settlement and the submissions in support of the Settlement and preliminary certification, the

---

[1]  The Settlement Agreement memorializing the terms of the settlement with MLS PIN was entered into on June 30, 2023 and submitted to the Court as Exhibit A to the Declaration of Seth R. Klein in support of Plaintiffs' Motion for Preliminary Approval of Settlement with MLS PIN [ECF No. ___].

Court finds that the Settlement resulted from arm's-length negotiations between highly experienced counsel and fall within the range of possible approval.

4.      Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court hereby grants final approval of the Settlement Agreement on the basis that it is fair, reasonable, and adequate as to, and in the best interest of, all members of the Settlement Class within the meaning of, and in compliance with all applicable requirements of, Federal Rule of Procedure 23; the Court directs the Settlement's consummation according to its terms. Moreover, the Court concludes as follows:

        a.      The Settlement was negotiated by counsel with significant experience litigating antitrust class actions and are the result of vigorous arm's-length negotiations undertaken in good faith;

        b.      This Action is likely to involve contested and serious questions of law and fact, such that the value of the prospective relief set forth in the Settlement outweighs the uncertain possibility of future relief after protracted and expensive litigation; and

        c.      Plaintiffs' Counsels' judgment that the Settlement is fair and reasonable, and the Settlement Class members' reaction to the Settlement, are entitled to great weight.

## II.      CERTIFICATION OF THE SETTLEMENT CLASS

5.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court certifies, solely for purposes of effectuating the Settlement set forth in the Settlement Agreement, the following Settlement Class:

Sellers who paid, and/or on whose behalf sellers' brokers paid, Buyer-Broker Commissions during the Settlement Class Period in connection with the sale of Residential Real Estate listed on Pinergy.[2]

6.      The Court's certification of the Settlement Class as provided herein is without prejudice to, or waiver of the rights of, any other defendant to contest certification of the proposed class in this Action. The Court's findings herein shall have no effect on the Court's ruling on any motion to certify any class in this Action, and no party may cite or refer to the Court's certification of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class. The findings that follow in paragraphs 7-8 are limited to this particular Order and are made only in the context of this particular Settlement.

7.      The Court appoints Plaintiffs as Class Representatives and finds that the requirements of Rule 23 are satisfied solely for the purpose of effectuating the Settlement as follows:

   a.      Pursuant to Rule 23(a)(1), the Court determines that the members of the Class are so numerous that their joinder before the Court would be impracticable;

   b.      Pursuant to Rule 23(a)(2), the Court determines that Plaintiffs have alleged one or more questions of fact or law common to the Class;

   c.      Pursuant to Rule 23(a)(3), the Court determines that Plaintiffs' claims are typical of the claims of the Class;

---

[2] Specifically excluded from the Settlement Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf. Also excluded from the Settlement Class are any judicial officers presiding over this action and the members of his/her immediate families and judicial staff, and any juror assigned to the Action.

    d.       Pursuant to Rule 23(a)(4), the Court determines that Plaintiffs will fairly and adequately protect the interests of the Class; and

    e.       Pursuant to Rule 23(b)(2), the Court determines that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

8.       If the Effective Date[3] does not occur with respect to the Settlement because of the failure of a condition that affects the Settlement, this certification of the Class shall be deemed null and void as to the parties subject to the Settlement without the need for any further action by the Court or MLS PIN. In such circumstances, MLS PIN shall retain its rights to seek or to object to certification of this litigation as a class action under Rule 23 of the Federal Rules of Civil Procedure, or under any other state or federal rule, statute, law, or provision thereof, and to contest and appeal any grant or denial of certification in this litigation or in any other litigation on any grounds.

## III.   CLASS COUNSEL

9.       Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, and solely for settlement purposes, the following firms are appointed as counsel for the Settlement Class: (1) Robert A. Izard and Seth R. Klein of Izard, Kindall & Raabe, LLP and (2) Christopher A. Lebsock and Jose Roman Lavergne of Hausfeld LLP.

---

[3] Pursuant to paragraph 6(a) of the Settlement Agreement: "The Effective Date shall be the date when all of the following events shall have occurred and shall be contingent on the occurrence of all of the following events: (i) Entry by the Court of the Preliminary Approval Order; (ii) Final approval by the Court of the settlement set forth in this Agreement, following Class Notice and the Fairness Hearing; (iii) No Party having exercised his, her, or its rights to terminate this Agreement; and (iv) Entry by the Court of a Final Judgment and Order of Dismissal, and the Final Judgment and Order of Dismissal becoming final, or, in the event that the Court enters an Alternative Judgment and neither Class Plaintiffs nor MLS PIN elects to terminate this Agreement, such Alternative Judgment becomes final.  Neither the provisions of Federal Rule 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times."

## IV.     FINAL APPROVAL OF CLASS NOTICE

10.     Upon review of the record, the Court finds that the Class Notice[4] constituted due, adequate, and sufficient notice of the Settlement and was appropriate under the circumstances and satisfied the requirements of Federal Rules of Procedure 23(c)(3)(A) and 23(e)(1), due process, and any other applicable law. Therefore, the Class Notice is finally approved.

## V.     OTHER PROVISIONS

11.     The Court approves and directs the implementation of all the terms of the Settlement Agreement.

12.     If this Final Judgment and Order is set aside, materially modified, or overturned by this Court or on appeal, and if it is not fully reinstated on further appeal, this Final Judgment and Order certifying the Class shall be vacated *nunc pro tunc*.

13.     All Released Parties[5] and Releasing Parties[6] are bound by this Final Judgment and Order and by the Settlement Agreement.

---

[4] Class Notice is defined in paragraph 2(g) of the Settlement Agreement as: "The notice of proposed settlement to be provided to the Settlement Class as provided in this Agreement and the Preliminary Approval Order."

[5] Released Party or Released Parties is defined in paragraph 2(z) of the Settlement Agreement as: "MLS PIN and each of its past or present direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, successors, shareholders (except those who are Defendants in the Action), and each of their respective officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, and assigns. Released Parties does not include the other Defendants in the Action."

[6] Releasing Party or Releasing Parties is defined in paragraph 2(aa) of the Settlement Agreement as: "Individually and collectively, Plaintiffs and each Settlement Class Member, on behalf of themselves and, to the extent permitted by law, any of their respective past or present officers, directors, shareholders, agents, employees, legal representatives, partners, associates, trustees, beneficiaries, beneficial owners, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns, whether or not they object to the settlement set forth in this Agreement."

14.    The Court dismisses with prejudice the Action as against MLS PIN, as well as all of the Released Claims[7], against any of the Released Parties by the Releasing Parties. The parties are to bear their own costs, except as otherwise provided in the Settlement Agreement, provided that such dismissal shall not affect, in any way, the right of the Releasing Parties to pursue claims, if any, outside the scope of the Released Claims.

15.    Upon the Effective Date, and except as otherwise authorized under paragraph 8(b) of the Settlement Agreement, the Releasing Parties: (a) shall be deemed to have hereby fully and irrevocably waived, released, relinquished, and discharged all Released Claims against the Released Parties; (b) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and (c) agree and covenant not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Party related in any way to any Released Claims.

16.    The Settlement Agreement, acts performed in furtherance of the Settlement Agreement and/or documents executed in furtherance of the Settlement Agreement may not be deemed or used as evidence of an admission or other statement supporting: (a) the validity of any claim made by Plaintiffs, Settlement Class, or Class Counsel (including without limitation the appropriateness of class certification); (b) any wrongdoing or liability of the Released Parties; or

---

[7] Released Claims is defined in paragraph 2(y) of the Settlement Agreement as: "Any and all manner of claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, arising from or relating in any way to any conduct alleged or that could have been alleged in and that arise from the factual predicate of the Action."

(c) any fault or omission of the Released Parties in any court, administrative agency, or other proceeding.

17.     The Settlement Agreement shall not be offered or be admissible in evidence against Released Parties in any action or proceeding, except in an action or proceeding that is in furtherance of the respective Settlement's terms or brought to enforce its terms. Notwithstanding the foregoing, the Settlement Agreement may be filed in an action to enforce or interpret the terms of the respective Settlement Agreement and any other documents executed in connection with the performance of the agreements embodied therein. The Released Parties may file the Settlement Agreement and/or this Final Judgment and Order in any action that may be brought against them in order to support a defense or counterclaim based on the principles of res judicata, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

18.     Any order entered regarding the motion for attorneys' fees and expenses in this Action shall in no way disturb or affect this Final Judgment and Order and shall be considered separate from this Final Judgment and Order.

19.     If this Final Judgment and Order is set aside, materially modified, or overturned by this Court or on appeal, and is not fully reinstated on further appeal, this Final Judgment and Order shall be deemed vacated and shall have no force or effect whatsoever. In the event the Settlement Agreement is terminated in accordance with its terms, is vacated, is not approved, or the Effective Date fails to occur for any reason, then the parties shall be deemed to have been restored to their respective status in the Action as of the Execution Date without prejudice and shall comply with all applicable provisions of the Settlement Agreement including, without limitation, the provisions of its paragraphs 11(c) and 12(c).

20.     Without affecting the finality of this Final Judgment and Order in any way, this Court hereby retains exclusive continuing jurisdiction over: (a) implementation of the Settlement Agreement; (b) hearing and determining applications for attorneys' fees, costs, and expenses; and (c) all parties hereto for the purpose of construing, enforcing, and administering the Settlement Agreement.

21.     To the extent permitted by law, the Court bars claims against the Released Parties for contribution or indemnification (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of any settlement, judgment or otherwise by any of the following:

    a.      Any of the other Defendants currently named in the Action;

    b.      Any other Person[8] formerly named as a party in the Action; or

    c.      Any other Person subsequently added or joined as a party in this Action.

22.     There is no just reason for delay in the entry of this Final Judgment and Order, and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.


**IT IS SO ORDERED** on this _____ day of_____, 2023.


                                        _____
                                        Hon. Patti B. Saris
                                        **UNITED STATES DISTRICT JUDGE**

---

[8] Person(s) is defined in paragraph 2(t) of the Settlement Agreement as: "An individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, municipality, state, state agency, any entity that is a creature of any state, any government or any political subdivision, authority, office, bureau or agency of any government, and any business or legal entity, and any spouses, heirs, predecessors, successors, representatives, agents, or assignees of the foregoing."

# Exhibit 3a

**EXECUTION COPY**

## Exhibit 3a
### NOSALEK v. MLS PROPERTY INFORMATION NETWORK, INC.,
### No. 1:20-cv-12244-PBS

**CHANGE #1: Section 1.0(c):**

(c)   ACCEPTANCE OF LISTINGS.  ~~Except as specifically set forth in the next sentence of this Section 1.0(c), t~~The Service will accept for Filing only those Listings that make it possible for the Listing Broker to offer cooperation~~, with accompanying compensation,~~ to Cooperating Brokers~~, as and in the manner provided for in Article V below~~.  In the context of this Section 1.0(c) and of Section 5.0 below, "cooperation" shall be defined as the ability of a Cooperating Broker to assist its client or customer in the purchase, lease, or rental of a Listed Property. ~~Notwithstanding the foregoing, the Service will accept for Filing Listings of properties for lease or rent that make it possible for the Listing Broker to offer cooperation to Cooperating Brokers, even if those Listings do not offer accompanying compensation.~~

The Service will accept for Filing a Listing only if the Listing Broker has first certified, through the appropriate key, code or symbol on the Property Data Form as specified by the Service, that the Listing Broker, before entering into the Listing Agreement with respect to that Listing, notified the Seller (i) that the Service does not require the Seller to offer compensation to Cooperating Brokers, and (ii) that, while a Cooperating Broker may request compensation from the Seller in lieu of requesting from the prospective purchaser all or a portion of any compensation to which the Cooperating Broker and prospective purchaser may agree for the Cooperating Broker's services to that prospective purchaser, the Service does not require the Seller to accede to such a request.

If the Service becomes aware of any proposed Listing or any existing Listing that, in the sole and exclusive determination of the Service, may not comply with all fair housing and other laws and regulations that may be applicable to the sale, lease or rental of the proposed or existing Listing, the Service may refuse to accept the proposed Listing for Filing and may remove the existing Listing from the Service Compilation.  Any such determination and action by the Service shall be final, and neither the Service, nor any of its employees or agents, shall have an liability or responsibility of any kind, nor shall any Participant or Subscriber have or assert any claim against the Service, or against any of its employees or agents, arising out of (i) such determination or action by the Service, (ii) the Service's failure for any reason to make any such determination or take any such action or (iii) the Service's failure for any reason to become aware of a proposed or existing Listing's possible non-compliance with any fair housing or other law or regulation.

**CHANGE #2: Section 5.0:**

**SECTION 5.0  COOPERATIVE COMPENSATION SPECIFIED ON EACH LISTING:**

~~Except only for Listings of properties offered for lease or rental, for which the Listing Broker (as provided in Section 1.0(c) above) is not obligated to offer compensation to other Participants for their services as Cooperating Brokers, a~~The Listing Broker shall specify, on each Listing Filed with the Service, ~~the~~ any compensation offered by the Seller to other Participants for their services as Cooperating Brokers in the sale, lease or rental of the Listed Property.  Such offers shall be unconditional, except that entitlement to compensation shall be conditioned on the Cooperating Broker's performance as the procuring cause of the sale, lease or rental.  If a Listing does not contain such an offer of compensation, the Cooperating Broker may request compensation from the Seller in lieu of requesting from the prospective purchaser all or a portion of any compensation to which the Cooperating Broker and prospective purchaser may have agreed for the Cooperating Broker's services to that prospective purchaser.  The Service does not require the Seller to accede to such a request. ~~A Listing Broker's obligation to compensate any Cooperating Broker as the procuring cause~~

**NOSALEK v. MLS PROPERTY INFORMATION NETWORK, INC.,**
**No. 1:20-cv-12244-PBS**

~~of a sale, lease or rental may be excused only by agreement between the Listing Broker and the Cooperating Broker or by determination through arbitration or other legal process.  Notwithstanding any agreement between the Listing Broker and the Seller of a Listed Property with respect to the compensation of a Cooperating Broker for the sale, lease or rental of the Listed Property, the ultimate responsibility and liability for compensating the Cooperating Broker shall remain with the Listing Broker.  If a Listing Broker for a property offered for lease or rental elects to offer compensation to other Participants for their services as Cooperating Brokers, that Listing Broker is subject to the same requirements regarding cooperative compensation hereunder as a Listing Broker for a property offered for sale.~~

**Note 1:**       <u>Subject to the second paragraph of Section 1.0(c) above, the Listing Broker must obtain the Seller's prior authorization (1) for the Seller to offer compensation with respect to a Listing, and (2) for any amount of compensation to be offered by the Seller with respect to a Listing.</u>~~In Filing a Listing with the Service, a Participant is deemed to be making blanket unilateral offers of compensation to the other Participants in the Service.  The Participant therefore shall specify on each Listing Filed with the Service the compensation being offered to the other Participants, as a Cooperating Broker has the right to know, prior to initiating any sales effort, what its compensation might be for that effort.~~

~~The Listing Broker has the right to determine the amount of compensation to be offered to a Cooperating Broker.  The compensation offered by a Listing Broker to a subagent, to a buyer's agent or to any other appropriately licensed facilitator in the process of selling a Listed Property, whether or not the facilitator is acting in an agency capacity, may, but need not be, the same.~~

<u>Subject to the provisions set forth in the third paragraph of Section 1.0(c) above , n</u>~~N~~othing ~~in Section 1.0 of Article I above or~~ in this <u>Section 5.0</u>~~Article V~~ shall preclude a <u>Seller</u>~~Listing Broker~~ from offering a Participant compensation different from the compensation indicated on any Listing Filed with the Service, provided that (1) the Listing Broker informs the Participant in writing of such proposed change in compensation <u>(a)</u> in advance of the Participant's producing an offer to purchase<u>.</u>, or~~,~~ <u>(b)</u> in the case of an Auction Listing, in advance of the Participant's registering a prospective bidder for participation in the Auction, <u>provided, however, that in either case the Service does not prohibit the Participants, the Seller, and the prospective purchaser, following the production of an offer to purchase, from negotiating and agreeing upon some compensation different from the compensation indicated on the Listing Filed with the Service;</u> and (2) the change in the listed compensation is not the result of any agreement ~~or other cooperative activity~~ between the Listing Broker and any one or more of the other Participants or Subscribers.  Any superseding offer of compensation must be expressed in the same manner that the original offer of compensation was required to be expressed under this Note 1.

~~In addition to the foregoing, i~~<u>I</u>f a Seller requests that a Listing Broker not offer ~~compensation to and/or~~ cooperation with a specific Participant in connection with the offering and sale of the Seller's property, the Listing Broker may accede to the Seller's request, but only if the Listing Broker, prior to Filing the Listing, transmits to such identified Participant a written notice of the Seller's request.

A Listing Broker need not disclose the amount of total negotiated commissions in its Listing Agreement, and the Service shall not publish the total negotiated commissions on a Listing that has been Filed with the Service by a Participant.  The Service shall not disclose the total commissions negotiated between a Seller and a Listing Broker.

**NOSALEK v. MLS PROPERTY INFORMATION NETWORK, INC.,**
**No. 1:20-cv-12244-PBS**

The total amount of any compensation offered to a Participant on a Listing Filed with the Service shall be shown in the Listing, in the appropriate compensation data field, either as (1) a percentage of the selling price of the Listed Property or (2) a definite dollar amount.  If the total amount of any compensation offered is shown as a percentage of the selling price of the Listed Property as permitted by clause (1) (rather than as a definite dollar amount as permitted by clause (2)), the Listing Broker, as authorized by the Seller, shall ~~elect to~~ use as the "selling price" either (i) the full or gross selling price of the Listed Property or (ii) the Net Sales Price ~~(~~as defined in Section 13.0 (the "Selling Price Selection").  The Selling Price Selection~~Listing Broker's election~~ shall be ~~made and~~ disclosed in the Property Data Form by a key, code or symbol specified for the purpose by the Service.  The total amount of any compensation shown in the appropriate compensation data field shall set forth, without reference to any other data field, the total amount to which a Cooperating Broker shall be entitled for its performance as the procuring cause of the sale or lease of the Listed Property.  Except only for ~~(a)~~ the percentage calculation permitted by clause (1) in the first sentence of this paragraph ~~and (b) the calculation permitted by the next sentence in this paragraph~~, compensation shown in a Listing Filed with the Service shall be stated by the Listing Broker in such a way that it is not necessary for a Participant to make any mathematical calculation or employ any formula in order to determine the compensation offered.

Nothing set forth in this Section 5.0 or elsewhere in these Rules and Regulations shall prohibit a Seller~~Listing Broker~~ from offering Participants, for their services as Cooperating Brokers, something of value over and above the compensation that may~~required to~~ be offered hereunder.  Like the underlying offer of compensation that may~~required to~~ be made pursuant to this Section 5.0, any such offer of additional compensation shall not require or be conditioned on the Cooperating Broker's taking or completing, or its refraining from taking or completing, any specified actions, except only that entitlement to any additional compensation that is offered shall be conditioned on the Cooperating Broker's performance as the procuring cause of the sale, lease or rental of the Listed Property to which the underlying offer of compensation relates.  If a Seller~~Listing Broker~~ elects to make an offer of additional compensation, an accurate description of the nature and terms of that offer shall be shown in the Listing in a data field other than the compensation data field.''

**Note 2:**   If the Seller elects to~~A Listing Broker, from time to time, may~~ adjust (i) the compensation offered to all other Participants for their services as Cooperating Brokers with respect to any Listing and/or (ii) anything of value that may be offered to other Participants for such services in addition to the compensation ~~A,~~ any such adjustment shall be effected by the Listing Broker's Filing with the Service a notice of such adjusted compensation and/or other adjusted offering.  The notice of adjustment shall be Filed with the Service in advance of the production of any offer to purchase the Listed Property so that all Participants and prospective purchasers can be advised of such adjustment or adjustments through the Service Compilation, provided, however, that the Service does not prohibit a Listing Broker, a Cooperating Broker, a Seller, and a prospective purchaser, following the production of an offer to purchase, from negotiating and agreeing upon some compensation different from the compensation indicated on the Listing Filed with the Service.  The adjusted compensation and/or other adjusted offering shall be effective from and after the time at which the notice of adjustment is Filed with the Service.

**Note 3:**   Excepting the authorization and disclosure requirements set forth in this Section 5.0 and the dispute-resolution provisions set forth in Section 7.2, t~~T~~he Service takes no position on the division of commissions between a Participant and any individual or entity that is not a Participant.  ~~That division is the responsibility and concern solely of the Participant.~~

**CHANGE #3: Attachment A, sanction for filing a listing without cooperation and compensation:**

## NOSALEK v. MLS PROPERTY INFORMATION NETWORK, INC.,
## No. 1:20-cv-12244-PBS

[VIOLATION:] Filing a Listing for which it is not possible for the Listing Broker to offer or provide cooperation, with accompanying compensation, to Cooperating Brokers (Section 1.0(c)).

[SANCTION:] $100 and removal of the Listing from the Service Compilation for the first violation; $250 and removal of the Listing from the Service Compilation for the second violation; $500 and removal of the Listing from the Service Compilation for the third violation; for each violation thereafter, suspension of not less than ten (10) days and removal of the Listing from the Service Compilation.

### CHANGE #4: Section 7.2:

**SECTION 7.2  DISPUTES BETWEEN PARTICIPANTS AND/OR SUBSCRIBERS:**  If a dispute arises between or among any two or more Participants, Subscribers to and/or users of the goods and services provided by the Service, and if that dispute arises out of the use of those goods or services, then, unless the dispute relates solely to a violation of these Rules and Regulations or of any policies of the Service which could subject the disputing parties to a sanction by the Service hereunder, the disputing parties agree that (a) they shall diligently and in good faith seek to resolve the dispute amicably, but (b) if they are unable to do so within thirty (30) days after the first notice of dispute is given by one disputant to the other disputing party or parties, then the dispute shall be submitted for resolution as provided in the next three sentences, such submission to be made promptly at the end of such thirty day period, but in no event later than (1) the close of business on the second business day following the last day of the thirty day period or (2) if agreed by all the disputing parties, the close of business on an earlier or later date agreed upon by all of such parties.  If each of the disputing parties is a "REALTOR®" (as defined from time to time by the National Association of REALTORS®), and if mandated by the rules, regulations or other requirements of the National Association of REALTORS®, or any affiliate thereof, to which the disputing parties are subject, the parties shall submit their dispute for resolution by binding arbitration to a tribunal that is maintained by any board or association of REALTORS® (a "REALTOR® Tribunal") and that has been chosen or otherwise determined in accordance with such rules, regulations or other requirements.  If one or more of the disputing parties is a REALTOR® and one or more is not, the parties shall submit their dispute for resolution by binding arbitration either (i) to a REALTOR® Tribunal (which may include, without limitation, a REALTOR® Tribunal maintained by the Massachusetts Association of REALTORS®) (A) that is selected by the REALTOR® or REALTORS® that are party to the dispute and (B) that is willing to conduct the arbitration or (ii) if agreed to by all the disputing parties, to a tribunal of any kind acceptable to the disputing parties.  If none of the disputing parties is a REALTOR®, the parties shall submit their dispute for resolution either (I) to a court with which one or more of the disputing parties has been the first to file a complaint relating to the dispute, provided that such court has jurisdiction over all of the disputing parties, or (II) if a complaint has not been filed with a court pursuant to clause (I), and if all the disputing parties agree, by binding arbitration to a tribunal of any kind acceptable to the disputing parties.  The Service shall have no responsibility of any kind with respect to, nor shall the Service have, and none of the disputing parties shall assert or have the right to assert against the Service, any liability related to or arising out of the dispute or the mediation, arbitration or other resolution of the dispute.  Notwithstanding the continuation of any such dispute, the parties to the dispute shall remain obligated to comply with these Rules and Regulations, with the policies of the Service and with all other conditions to their continued use of the goods and services provided by the Service.  Throughout the continuation of any dispute, the parties to the dispute shall keep the Service informed in writing of the status of the dispute and of the terms and conditions of its settlement.

4

**NOSALEK v. MLS PROPERTY INFORMATION NETWORK, INC.,**
**No. 1:20-cv-12244-PBS**

Note 1:  If a dispute arises between a Seller and one or more Participants involving entitlement to, and/or payment of, compensation offered pursuant to Section 5.0 in connection with a Listing, and if the Seller requests that the dispute be submitted for resolution via arbitration to a REALTOR® Tribunal that is willing to conduct the arbitration, the involved Participant(s) shall submit to the arbitration through the REALTOR® Tribunal and shall not submit the dispute for resolution to a court without the Seller's agreement.~~For the avoidance of doubt, among the kinds of disputes to which the foregoing dispute resolution procedures apply are disputes of every kind involving the proper payment of compensation offered pursuant to Section 5.0 in connection with a Listing, including without limitation disputes between a Listing Broker and a Cooperating Broker, between or among two or more Participants asserting claims to be the Listing Broker for a Listing or between or among two or more Participants asserting claims to be the Cooperating Broker for the Listing.~~

If the Service at any time receives notice that two or more Participants or Subscribers claim to have entered into (or to have the right to enter into) separate Listing Agreements with a Seller for the same property, the Service will so advise each of the named Participants or Subscribers, and the matter shall be treated as a dispute between such Participants and/or Subscribers to be resolved in the manner provided in the first paragraph of this Section 7.2.  The Service shall have no liability or responsibility of any kind with respect to the dispute, as provided in the first paragraph of this Section 7.2.  Notwithstanding the efforts of the parties to resolve the dispute, if the dispute has not been resolved within ten (10) days after the Service has advised the parties of the conflicting Listing Agreements, the Service, in its sole and absolute discretion, and in order to preserve the integrity of the data and information in the Service Compilation, may remove from the Service Compilation the Listings of the property which is in dispute.  Simultaneously with such removal, the Service shall give notice of the removal to each of the disputing parties.  The Service shall be under no obligation to reinstate the removed Listing to the Service Compilation unless and until each of the disputing parties has Filed a notice with the Service acknowledging that the dispute has been resolved and identifying the single Participant and/or Subscriber under whose name the property is to be entered into the Service Compilation as the Listing Broker.

**CHANGE #5: Change Attachment A, REMOVE sanction for failure or refusal to pay undisputed compensation.**

~~[VIOLATION:] Failure or refusal of a Participant to pay to another Participant the compensation and/or anything else of value offered or owed to that other Participant in a transaction in which the other Participant's entitlement to the compensation and/or to the other value offered or owed is undisputed or the dispute concerning the compensation and/or the other value offered or owed has been finally resolved in accordance with the dispute resolution provisions of Section 7.2 (Section 5.0 and Section 7.2)~~
~~[SANCTION:] If compensation and/or any other value offered or owed is not paid in full within five (5) days after warning by the Service, suspension until the compensation and/or the other value offered or owed, as the case may be, is paid in full.  The Service will not issue a warning unless and until it has received written evidence reasonably satisfactory to it that either entitlement to the compensation and/or to the other value offered or owed, as the case may be, is undisputed or the dispute concerning the compensation and/or the other value offered or owed has been finally resolved in accordance with the dispute resolution provisions of Section 7.2.~~

**CHANGE #6: Section 10.4(b):**

(b) Nothing contained in this Section 10.4 or elsewhere in these Rules and Regulations is intended to grant, nor shall anything herein or therein be deemed to grant, to any Participant or Subscriber any

**NOSALEK v. MLS PROPERTY INFORMATION NETWORK, INC.,**
**No. 1:20-cv-12244-PBS**

right of access to or usage of any data, information or Image contained in any Service Compilation where grant of such rights or access to or usage of such data, information or Image is prohibited or not permitted by applicable law.  Without limiting the foregoing, no Participant or Subscriber may filter, suppress, hide, or not display or distribute any data, information or Image contained in any Service Compilation based on (i) the level of compensation, if any, offered to Cooperating Brokers, or (ii) the name or other identifier of the Listing Broker or agent affiliated with the Listing Broker.

**CHANGE #7: Attachment A, sanction for violating Section 10.4(b):**

[VIOLATION:] Violation of the prohibition against a Participant's or Subscriber's filtering, suppressing, hiding, or not displaying or distributing any data, information or Image contained in any Service Compilation based on (i) the level of compensation, if any, offered to Cooperating Brokers, or (ii) the name or other identifier of the Listing Broker or agent affiliated with the Listing Broker (Section 10.4(b)).

[SANCTION:] A warning for the first violation; if the violation is not corrected by the end of the third calendar day after delivery of the warning, $1,000 and possible suspension of service until the violation is corrected.  For each subsequent violation, $1,000 and possible suspension until the violation is corrected

**CHANGE #8: Attachment A, sanction for displaying compensation in a non-compliant format:**

[VIOLATION:] Failure or refusal to show total compensation, if any, offered to a Cooperating Broker on a Listing in the manner or format required by Section 5.0 (Section 5.0).

[SANCTION:] $250 for the first violation; $500 for the second violation; $1,000 for the third violation; and suspension of not less than ten (10) days for each violation thereafter.  For each violation, beginning with the first, and in addition to the above sanctions, the violation will result in removal of the Listing from the Service Compilation.

**CHANGE #9: Attachment A, new sanction for a Listing Broker's failure or refusal to comply with the notification, authorization, and certification requirements of Section 1.0(c):**

[VIOLATION:] Failure or refusal, by a Listing Broker or its agent, to comply with either (i) the notification and certification requirements set forth in the second paragraph of Section 1.0(c), or (ii) the authorization requirements set forth in the first paragraph of Note 1 of Section 5.0, with regard to any existing or proposed Listing.

[SANCTION:] A written warning for the first violation; $500 and removal of the Listing from the Service Compilation for the second violation; $1000 and removal of the Listing from the Service Compilation for the third violation; for each violation thereafter, suspension of not less than ten (10) days and removal of the Listing from the Service Compilation.

**CHANGE #10: Section 13.0, excerpted definitions of Listing Agreement and Participant:**

**Listing Agreement -** Shall mean a signed written agreement between a Seller and a broker which constitutes either an Exclusive Agency, an Exclusive Right To Sell, an Exclusive Right to Sell at Auction, an Exclusive Right To Sell With Dual Rate of Commission, an Exclusive Right To Sell With Named Exclusion, an Exclusive Right To Sell With Variable Rate Of Commission, a Facilitation/Exclusive, a Facilitation/Exclusive Right To Sell Listing, a Facilitation/Exclusive Right

**NOSALEK v. MLS PROPERTY INFORMATION NETWORK, INC.,**
**No. 1:20-cv-12244-PBS**

To Sell With Dual Rate of Commission, a Facilitation/Exclusive Right To Sell With Named Exclusion, a Facilitation/Exclusive Right To Sell With Variable Rate Of Commission or an Exclusive Right to Rent.  A Listing Agreement must include (i) the Seller's written authorization to the Listing Broker to submit the Listing Agreement to the Service and to File the Listing at such time and upon satisfaction of such conditions as shall be specified therein; (ii) all of the required notifications specified in the second paragraph of Section 1.0(c) of these Rules and Regulations; and (iii) if the Seller elects to offer compensation to Cooperating Brokers, the Seller's written acknowledgment that the Cooperating Broker is an intended third-party beneficiary of the Listing Agreement with the right to enforce the same.

…

**Participant -** Shall mean, as the context requires, (i) any individual or sole proprietorship and any partnership, corporation, limited liability company or other legal entity which Participates in the Service (sometimes referred to herein as a "Participant Firm") and/or (ii) the individual who is designated by a Participant Firm to be the individual with the responsibility of the Participant under these Rules and Regulations (sometimes referred to herein as an "Individual Participant").  For purposes of qualifying for Participation in the Service, the proposed Participant Firm and the proposed Individual Participant shall be required to satisfy the applicable eligibility requirements stated in the definition of "Participation" below.  Upon admission of a Participant Firm to Participation in the Service, an Individual Participant has and may exercise all of the rights, benefits and privileges of Participation in the Service in the name and on behalf of the Participant Firm with which the Individual Participant is affiliated.  Any such Individual Participant shall be responsible for compliance with all of the liabilities and obligations to the Service by the Participant Firm with which the Individual Participant is affiliated, including compliance with these Rules and Regulations and with the policies of the Service by all of the Subscribers and other persons affiliated with the Participant Firm.  Under no circumstances is any individual or entity entitled to be a Participant or to Participate in the Service unless (a) the individual or entity holds a current, valid real estate broker's license issued by one or more of the Subscription States and has all necessary power and authority to offer and accept cooperation and compensation to and from other Participants, (b) the individual holds a current, valid license or certificate issued by an appropriate state regulatory agency or authority of any one or more of the Subscription States to engage in the appraisal of real property or (c) the entity (I) employs or otherwise engages the services of licensed or certified appraisers one or more of whom are Participants and (II) meets the applicable standards set forth in the definition of Participation in this Section 13.0.

**CHANGE #11: Rename Article V:**

**ARTICLE V - DISCLOSING COMPENSATION AND CONFLICTS OF INTEREST** DIVISION OF COMMISSIONS

# Exhibit 3b

**EXECUTION COPY**

## Exhibit 3b
## NOSALEK v. MLS PROPERTY INFORMATION NETWORK, INC.,
## No. 1:20-cv-12244-PBS

**CHANGE #1: Section 1.0(c):**

(c)  ACCEPTANCE OF LISTINGS.  The Service will accept for Filing only those Listings that make it possible for the Listing Broker to offer cooperation to Cooperating Brokers.  In the context of this Section 1.0(c) and of Section 5.0 below, "cooperation" shall be defined as the ability of a Cooperating Broker to assist its client or customer in the purchase, lease, or rental of a Listed Property.

The Service will accept for Filing a Listing only if the Listing Broker has first certified, through the appropriate key, code or symbol on the Property Data Form as specified by the Service, that the Listing Broker, before entering into the Listing Agreement with respect to that Listing, notified the Seller (i) that the Service does not require the Seller to offer compensation to Cooperating Brokers, and (ii) that, while a Cooperating Broker may request compensation from the Seller in lieu of requesting from the prospective purchaser all or a portion of any compensation to which the Cooperating Broker and prospective purchaser may agree for the Cooperating Broker's services to that prospective purchaser, the Service does not require the Seller to accede to such a request.

If the Service becomes aware of any proposed Listing or any existing Listing that, in the sole and exclusive determination of the Service, may not comply with all fair housing and other laws and regulations that may be applicable to the sale, lease or rental of the proposed or existing Listing, the Service may refuse to accept the proposed Listing for Filing and may remove the existing Listing from the Service Compilation.  Any such determination and action by the Service shall be final, and neither the Service, nor any of its employees or agents, shall have an liability or responsibility of any kind, nor shall any Participant or Subscriber have or assert any claim against the Service, or against any of its employees or agents, arising out of (i) such determination or action by the Service, (ii) the Service's failure for any reason to make any such determination or take any such action or (iii) the Service's failure for any reason to become aware of a proposed or existing Listing's possible non-compliance with any fair housing or other law or regulation.

**CHANGE #2: Section 5.0:**

**SECTION 5.0  COOPERATIVE COMPENSATION SPECIFIED ON EACH LISTING:**  The Listing Broker shall specify, on each Listing Filed with the Service, any compensation offered by the Seller to other Participants for their services as Cooperating Brokers in the sale, lease or rental of the Listed Property.  Such offers shall be unconditional, except that entitlement to compensation shall be conditioned on the Cooperating Broker's performance as the procuring cause of the sale, lease or rental.  If a Listing does not contain such an offer of compensation, the Cooperating Broker may request compensation from the Seller in lieu of requesting from the prospective purchaser all or a portion of any compensation to which the Cooperating Broker and prospective purchaser may have agreed for the Cooperating Broker's services to that prospective purchaser.  The Service does not require the Seller to accede to such a request.

**Note 1:**     Subject to the second paragraph of Section 1.0(c) above, the Listing Broker must obtain the Seller's prior authorization (1) for the Seller to offer compensation with respect to a Listing, and (2) for any amount of compensation to be offered by the Seller with respect to a Listing.

## NOSALEK v. MLS PROPERTY INFORMATION NETWORK, INC.,
## No. 1:20-cv-12244-PBS

Subject to the provisions set forth in the third paragraph of Section 1.0(c) above, nothing in this Section 5.0 shall preclude a Seller from offering a Participant compensation different from the compensation indicated on any Listing Filed with the Service, provided that (1) the Listing Broker informs the Participant in writing of such proposed change in compensation (a) in advance of the Participant's producing an offer to purchase, or (b) in the case of an Auction Listing, in advance of the Participant's registering a prospective bidder for participation in the Auction, provided, however, that in either case the Service does not prohibit the Participants, the Seller, and the prospective purchaser, following the production of an offer to purchase, from negotiating and agreeing upon some compensation different from the compensation indicated on the Listing Filed with the Service; and (2) the change in the listed compensation is not the result of any agreement between the Listing Broker and any one or more of the other Participants or Subscribers. Any superseding offer of compensation must be expressed in the same manner that the original offer of compensation was required to be expressed under this Note 1.

If a Seller requests that a Listing Broker not offer cooperation with a specific Participant in connection with the offering and sale of the Seller's property, the Listing Broker may accede to the Seller's request, but only if the Listing Broker, prior to Filing the Listing, transmits to such identified Participant a written notice of the Seller's request.

A Listing Broker need not disclose the amount of total negotiated commissions in its Listing Agreement, and the Service shall not publish the total negotiated commissions on a Listing that has been Filed with the Service by a Participant. The Service shall not disclose the total commissions negotiated between a Seller and a Listing Broker.

The total amount of any compensation offered to a Participant on a Listing Filed with the Service shall be shown in the Listing, in the appropriate compensation data field, either as (1) a percentage of the selling price of the Listed Property or (2) a definite dollar amount. If the total amount of any compensation offered is shown as a percentage of the selling price of the Listed Property as permitted by clause (1) (rather than as a definite dollar amount as permitted by clause (2)), the Listing Broker, as authorized by the Seller, shall use as the "selling price" either (i) the full or gross selling price of the Listed Property or (ii) the Net Sales Price as defined in Section 13.0 (the "Selling Price Selection"). The Selling Price Selection shall be disclosed in the Property Data Form by a key, code or symbol specified for the purpose by the Service. The total amount of any compensation shown in the appropriate compensation data field shall set forth, without reference to any other data field, the total amount to which a Cooperating Broker shall be entitled for its performance as the procuring cause of the sale or lease of the Listed Property. Except only for the percentage calculation permitted by clause (1) in the first sentence of this paragraph, compensation shown in a Listing Filed with the Service shall be stated by the Listing Broker in such a way that it is not necessary for a Participant to make any mathematical calculation or employ any formula in order to determine the compensation offered.

Nothing set forth in this Section 5.0 or elsewhere in these Rules and Regulations shall prohibit a Seller from offering Participants, for their services as Cooperating Brokers, something of value over and above the compensation that may be offered hereunder. Like the underlying offer of compensation that may be made pursuant to this Section 5.0, any such offer of additional compensation shall not require or be conditioned on the Cooperating Broker's taking or completing, or its refraining from taking or completing, any specified actions, except only that entitlement to any additional compensation that is offered shall be conditioned on the Cooperating Broker's performance as the procuring cause of the sale, lease or rental of the Listed Property to which the underlying offer of compensation relates. If a Seller elects to make an offer of additional compensation, an accurate

**NOSALEK v. MLS PROPERTY INFORMATION NETWORK, INC.,**
**No. 1:20-cv-12244-PBS**

description of the nature and terms of that offer shall be shown in the Listing in a data field other than the compensation data field.

**Note 2:**    If the Seller elects to adjust (i) the compensation offered to all other Participants for their services as Cooperating Brokers with respect to any Listing and/or (ii) anything of value that may be offered to other Participants for such services in addition to the compensation, any such adjustment shall be effected by the Listing Broker's Filing with the Service a notice of such adjusted compensation and/or other adjusted offering.  The notice of adjustment shall be Filed with the Service in advance of the production of any offer to purchase the Listed Property so that all Participants and prospective purchasers can be advised of such adjustment or adjustments through the Service Compilation, provided, however, that the Service does not prohibit a Listing Broker, a Cooperating Broker, a Seller, and a prospective purchaser, following the production of an offer to purchase, from negotiating and agreeing upon some compensation different from the compensation indicated on the Listing Filed with the Service.  The adjusted compensation and/or other adjusted offering shall be effective from and after the time at which the notice of adjustment is Filed with the Service.

**Note 3:**    Excepting the authorization and disclosure requirements set forth in this Section 5.0 and the dispute-resolution provisions set forth in Section 7.2, the Service takes no position on the division of commissions between a Participant and any individual or entity that is not a Participant.

**CHANGE #3: Attachment A, sanction for filing a listing without cooperation and compensation:**

[VIOLATION:] Filing a Listing for which it is not possible for the Listing Broker to offer or provide cooperation to Cooperating Brokers (Section 1.0(c)).

[SANCTION:] $100 and removal of the Listing from the Service Compilation for the first violation; $250 and removal of the Listing from the Service Compilation for the second violation; $500 and removal of the Listing from the Service Compilation for the third violation; for each violation thereafter, suspension of not less than ten (10) days and removal of the Listing from the Service Compilation.

**CHANGE #4: Section 7.2:**

**SECTION 7.2  DISPUTES BETWEEN PARTICIPANTS AND/OR SUBSCRIBERS:**  If a dispute arises between or among any two or more Participants, Subscribers to and/or users of the goods and services provided by the Service, and if that dispute arises out of the use of those goods or services, then, unless the dispute relates solely to a violation of these Rules and Regulations or of any policies of the Service which could subject the disputing parties to a sanction by the Service hereunder, the disputing parties agree that (a) they shall diligently and in good faith seek to resolve the dispute amicably, but (b) if they are unable to do so within thirty (30) days after the first notice of dispute is given by one disputant to the other disputing party or parties, then the dispute shall be submitted for resolution as provided in the next three sentences, such submission to be made promptly at the end of such thirty day period, but in no event later than (1) the close of business on the second business day following the last day of the thirty day period or (2) if agreed by all the disputing parties, the close of business on an earlier or later date agreed upon by all of such parties.  If each of the disputing parties is a "REALTOR®" (as defined from time to time by the National Association of REALTORS®), and if mandated by the rules, regulations or other requirements of the National Association of REALTORS®, or any affiliate thereof, to which the disputing parties are subject, the parties shall submit their dispute for resolution by binding arbitration to a tribunal that is maintained by any board or association of REALTORS® (a "REALTOR® Tribunal") and that has

## NOSALEK v. MLS PROPERTY INFORMATION NETWORK, INC.,
## No. 1:20-cv-12244-PBS

been chosen or otherwise determined in accordance with such rules, regulations or other requirements.  If one or more of the disputing parties is a REALTOR® and one or more is not, the parties shall submit their dispute for resolution by binding arbitration either (i) to a REALTOR® Tribunal (which may include, without limitation, a REALTOR® Tribunal maintained by the Massachusetts Association of REALTORS®) (A) that is selected by the REALTOR® or REALTORS® that are party to the dispute and (B) that is willing to conduct the arbitration or (ii) if agreed to by all the disputing parties, to a tribunal of any kind acceptable to the disputing parties.  If none of the disputing parties is a REALTOR®, the parties shall submit their dispute for resolution either (I) to a court with which one or more of the disputing parties has been the first to file a complaint relating to the dispute, provided that such court has jurisdiction over all of the disputing parties, or (II) if a complaint has not been filed with a court pursuant to clause (I), and if all the disputing parties agree, by binding arbitration to a tribunal of any kind acceptable to the disputing parties.  The Service shall have no responsibility of any kind with respect to, nor shall the Service have, and none of the disputing parties shall assert or have the right to assert against the Service, any liability related to or arising out of the dispute or the mediation, arbitration or other resolution of the dispute.  Notwithstanding the continuation of any such dispute, the parties to the dispute shall remain obligated to comply with these Rules and Regulations, with the policies of the Service and with all other conditions to their continued use of the goods and services provided by the Service.  Throughout the continuation of any dispute, the parties to the dispute shall keep the Service informed in writing of the status of the dispute and of the terms and conditions of its settlement.

Note 1:  <span style="color:red">If a dispute arises between a Seller and one or more Participants involving entitlement to, and/or payment of, compensation offered pursuant to Section 5.0 in connection with a Listing, and if the Seller requests that the dispute be submitted for resolution via arbitration to a REALTOR® Tribunal that is willing to conduct the arbitration, the involved Participant(s) shall submit to the arbitration through the REALTOR® Tribunal and shall not submit the dispute for resolution to a court without the Seller's agreement.</span>

If the Service at any time receives notice that two or more Participants or Subscribers claim to have entered into (or to have the right to enter into) separate Listing Agreements with a Seller for the same property, the Service will so advise each of the named Participants or Subscribers, and the matter shall be treated as a dispute between such Participants and/or Subscribers to be resolved in the manner provided in the first paragraph of this Section 7.2.  The Service shall have no liability or responsibility of any kind with respect to the dispute, as provided in the first paragraph of this Section 7.2.  Notwithstanding the efforts of the parties to resolve the dispute, if the dispute has not been resolved within ten (10) days after the Service has advised the parties of the conflicting Listing Agreements, the Service, in its sole and absolute discretion, and in order to preserve the integrity of the data and information in the Service Compilation, may remove from the Service Compilation the Listings of the property which is in dispute.  Simultaneously with such removal, the Service shall give notice of the removal to each of the disputing parties.  The Service shall be under no obligation to reinstate the removed Listing to the Service Compilation unless and until each of the disputing parties has Filed a notice with the Service acknowledging that the dispute has been resolved and identifying the single Participant and/or Subscriber under whose name the property is to be entered into the Service Compilation as the Listing Broker.

**CHANGE #5: Change Attachment A, REMOVE sanction for failure or refusal to pay undisputed compensation.**

**NOSALEK v. MLS PROPERTY INFORMATION NETWORK, INC.,**
**No. 1:20-cv-12244-PBS**

**CHANGE #6: Section 10.4(b):**

(b) Nothing contained in this Section 10.4 or elsewhere in these Rules and Regulations is intended to grant, nor shall anything herein or therein be deemed to grant, to any Participant or Subscriber any right of access to or usage of any data, information or Image contained in any Service Compilation where grant of such rights or access to or usage of such data, information or Image is prohibited or not permitted by applicable law.  Without limiting the foregoing, no Participant or Subscriber may filter, suppress, hide, or not display or distribute any data, information or Image contained in any Service Compilation based on (i) the level of compensation, if any, offered to Cooperating Brokers, or (ii) the name or other identifier of the Listing Broker or agent affiliated with the Listing Broker.

**CHANGE #7: Attachment A, sanction for violating Section 10.4(b):**

[VIOLATION:] Violation of the prohibition against a Participant's or Subscriber's filtering, suppressing, hiding, or not displaying or distributing any data, information or Image contained in any Service Compilation based on (i) the level of compensation, if any, offered to Cooperating Brokers, or (ii) the name or other identifier of the Listing Broker or agent affiliated with the Listing Broker (Section 10.4(b)).

[SANCTION:] A warning for the first violation; if the violation is not corrected by the end of the third calendar day after delivery of the warning, $1,000 and possible suspension of service until the violation is corrected.  For each subsequent violation, $1,000 and possible suspension until the violation is corrected

**CHANGE #8: Attachment A, sanction for displaying compensation in a non-compliant format:**

[VIOLATION:] Failure or refusal to show total compensation, if any, offered to a Cooperating Broker on a Listing in the manner or format required by Section 5.0 (Section 5.0).

[SANCTION:] $250 for the first violation; $500 for the second violation; $1,000 for the third violation; and suspension of not less than ten (10) days for each violation thereafter.  For each violation, beginning with the first, and in addition to the above sanctions, the violation will result in removal of the Listing from the Service Compilation.

**CHANGE #9: Attachment A, new sanction for a Listing Broker's failure or refusal to comply with the notification, authorization, and certification requirements of Section 1.0(c):**

[VIOLATION:] Failure or refusal, by a Listing Broker or its agent, to comply with either (i) the notification and certification requirements set forth in the second paragraph of Section 1.0(c), or (ii) the authorization requirements set forth in the first paragraph of Note 1 of Section 5.0, with regard to any existing or proposed Listing.

[SANCTION:] A written warning for the first violation; $500 and removal of the Listing from the Service Compilation for the second violation; $1000 and removal of the Listing from the Service Compilation for the third violation; for each violation thereafter, suspension of not less than ten (10) days and removal of the Listing from the Service Compilation.

**CHANGE #10: Section 13.0, excerpted definitions of Listing Agreement and Participant:**

**NOSALEK v. MLS PROPERTY INFORMATION NETWORK, INC.,**
**No. 1:20-cv-12244-PBS**

**Listing Agreement -** Shall mean a signed written agreement between a Seller and a broker which constitutes either an Exclusive Agency, an Exclusive Right To Sell, an Exclusive Right to Sell at Auction, an Exclusive Right To Sell With Dual Rate of Commission, an Exclusive Right To Sell With Named Exclusion, an Exclusive Right To Sell With Variable Rate Of Commission, a Facilitation/Exclusive, a Facilitation/Exclusive Right To Sell Listing, a Facilitation/Exclusive Right To Sell With Dual Rate of Commission, a Facilitation/Exclusive Right To Sell With Named Exclusion, a Facilitation/Exclusive Right To Sell With Variable Rate Of Commission or an Exclusive Right to Rent.  A Listing Agreement must include (i) the Seller's written authorization to the Listing Broker to submit the Listing Agreement to the Service and to File the Listing at such time and upon satisfaction of such conditions as shall be specified therein; (ii) all of the required notifications specified in the second paragraph of Section 1.0(c) of these Rules and Regulations; and (iii) if the Seller elects to offer compensation to Cooperating Brokers, the Seller's written acknowledgment that the Cooperating Broker is an intended third-party beneficiary of the Listing Agreement with the right to enforce the same.

…

**Participant -** Shall mean, as the context requires, (i) any individual or sole proprietorship and any partnership, corporation, limited liability company or other legal entity which Participates in the Service (sometimes referred to herein as a "Participant Firm") and/or (ii) the individual who is designated by a Participant Firm to be the individual with the responsibility of the Participant under these Rules and Regulations (sometimes referred to herein as an "Individual Participant").  For purposes of qualifying for Participation in the Service, the proposed Participant Firm and the proposed Individual Participant shall be required to satisfy the applicable eligibility requirements stated in the definition of "Participation" below.  Upon admission of a Participant Firm to Participation in the Service, an Individual Participant has and may exercise all of the rights, benefits and privileges of Participation in the Service in the name and on behalf of the Participant Firm with which the Individual Participant is affiliated.  Any such Individual Participant shall be responsible for compliance with all of the liabilities and obligations to the Service by the Participant Firm with which the Individual Participant is affiliated, including compliance with these Rules and Regulations and with the policies of the Service by all of the Subscribers and other persons affiliated with the Participant Firm.  Under no circumstances is any individual or entity entitled to be a Participant or to Participate in the Service unless (a) the individual or entity holds a current, valid real estate broker's license issued by one or more of the Subscription States and has all necessary power and authority to offer and accept cooperation to and from other Participants, (b) the individual holds a current, valid license or certificate issued by an appropriate state regulatory agency or authority of any one or more of the Subscription States to engage in the appraisal of real property or (c) the entity (I) employs or otherwise engages the services of licensed or certified appraisers one or more of whom are Participants and (II) meets the applicable standards set forth in the definition of Participation in this Section 13.0.

<u>CHANGE #11: Rename Article V:</u>

**ARTICLE V - DISCLOSING COMPENSATION AND CONFLICTS OF INTEREST**