UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER NOSALEK, RANDY HIRSCHORN and TRACEY HIRSCHORN, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　*Plaintiffs*,<br>　　　v.<br><br>MLS PROPERTY INFORMATION NETWORK, INC., ANYWHERE REAL ESTATE INC. (F/K/A REALOGY HOLDINGS CORP.), CENTURY 21 REAL ESTATE LLC, COLDWELL BANKER REAL ESTATE LLC, SOTHEBY'S INTERNATIONAL REALTY AFFILIATES LLC, BETTER HOMES AND GARDENS REAL ESTATE LLC, ERA FRANCHISE SYSTEMS LLC, HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, POLZLER & SCHNEIDER HOLDINGS CORPORATION, INTEGRA ENTERPRISES CORPORATION, RE/MAX OF NEW ENGLAND, INC., RE/MAX INTEGRATED REGIONS, LLC, AND KELLER WILLIAMS REALTY, INC.,<br><br>　　　　　　　　　*Defendants*. | No. 1:20-cv-12244-PBS<br><br>Judge Patti B. Saris |

## STATEMENT OF INTEREST OF THE UNITED STATES AND MOTION TO EXTEND DEADLINES TO REVIEW THE SETTLEMENT

The United States respectfully submits this statement pursuant to 28 U.S.C. § 517, which permits the Attorney General to direct any officer of the Department of Justice to attend to the interests of the United States in any case pending in a federal court. The United States respectfully requests the Court extend the deadlines for action under the proposed Stipulation and Settlement Agreement between the plaintiffs and MLS Property Information Network, Inc. ("MLS PIN") (Dkt. Nos. 221–224, the "Proposed Settlement") pursuant to the Class Action

Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1711–1715, which generally requires that the United States receive notice of any "proposed settlement" of a "class action," as those terms are defined by the Act. The United States makes this request to better enable the Department of Justice to evaluate the Proposed Settlement and its competitive effects.

The Department of Justice's Antitrust Division enforces the federal antitrust laws and has a strong interest in ensuring that markets remain open, vibrant, and unencumbered by anticompetitive practices. These interests are especially important in the sale and purchase of housing. For many American families, home ownership is an important vehicle for wealth and equity accumulation. The vast majority of home sales involve real estate brokers—brokers whose fees have generated more than $100 billion this year alone. Promoting competition for the steep fees that sellers and buyers face can help return billions of dollars to the American people. The Antitrust Division also has a strong interest in ensuring that remedies for antitrust violations fully promote competition and protect consumers nationwide.

Pursuant to its mission, the Antitrust Division is concerned about policies, practices, and rules in the residential real-estate industry that may increase broker commissions. Buyer-broker commission rules are the subject of several pending antitrust suits and a pending appeal in which the United States is an appellant. *See National Association of Realtors v. United States of America, et al.*, Case No. 23-5065 (D.C. Cir.); *Burnett, et al. v. National Association of Realtors, et al.*, Case No. 19-cv-0332 (W.D. Mo.); *Moehrl, et al. v. National Association of Realtors, et al.*, Case No. 19-cv-1610 (N.D. Ill.). And, as the Antitrust Division has explained elsewhere, the Division has investigated potentially unlawful rules, policies, and practices in the residential real estate industry, including multiple listing service buyer-broker commission rules. *See National Association of Realtors v. United States*, Case No. 23-5065, App. Br. at 6–11 (D.C. Cir. Aug. 18,

2023). Such rules may "curtail price competition among buyer-brokers" by "effectively affording *sellers' brokers* control over what *buyers* pay their brokers." *Id*. at 8. "Potentially exacerbating these effects, buyer-brokers could steer customers to higher-commission listings—or discourage sellers' agents from offering lower commissions." *Id.* Inflated real-estate commissions harm both home sellers and homebuyers, which is particularly concerning given that buying a house is often the most expensive transaction of many Americans' lives. *Id.* at 6.

The United States has significant concerns with the planned rule changes under the Proposed Settlement. Evidence from other multiple listing services suggests that merely tweaking a buyer-broker commission rule to allow zero-percent commissions does little to "unfetter a market from anti-competitive conduct and 'pry open to competition a market that has been closed by defendants' illegal restraints.'" *Ford Motor Co. v. United States*, 405 U.S. 562, 577–78 (1972) (quoting *Int'l Salt Co. v. United States*, 332 U.S. 392, 401 (1947)).[1] To the contrary, rules such as those presented may merely perpetuate an antitrust violation through slightly modified means: MLS PIN's proposed rule changes still establish an elaborate protocol (under penalty of sanction) regulating buyer-broker commissions, including requiring the listing broker to initially set the "total amount of compensation offered" (including the number zero) in the listing. Thus, MLS PIN would continue to organize and facilitate brokers' blanket, unilateral offers of compensation to buyer brokers.[2]

---

[1] *See, e.g., Moehrl, et al. v. National Association of Realtors, et al.*, Case No. 19-cv-1610 (N.D. Ill.), Dkt. No. 403 (Mar. 29, 2023 Mem. Op. & Order Granting Class Certification), 2023 U.S. Dist. LEXIS 53299, *64 ("The Northwest MLS . . . recently stopped requiring listings to include an offer of compensation to buyer-brokers. Since that rule change went into effect, 99.75% of sellers continue to offer compensation to buyer-brokers, and 95% of those offers are at rates exceeding 2%. A similar outcome can be seen with respect to the West Penn MLS, which has not required sellers to offer compensation to buyer-brokers since 2013.").

[2] *See, e.g., Arizona v. Maricopa Cty. Med. Soc.*, 457 U.S. 332, 348 (1982) ("In this case the rule is violated by a price restraint that tends to provide the same economic rewards to all

At this preliminary stage, the United States has determined that the issues raised by the Proposed Settlement warrant further inquiry. In order to assess the competitive impact of the Proposed Settlement, the Antitrust Division requests a modification to the Court's current schedule (Dkt. Nos. 227, 228) by extending the following deadlines by approximately two months:

|  | Current Deadline | Requested Deadline |
|---|---|---|
| Deadline for commencement of Notice Plan (mailing of Postcard Notice, start of social media campaign, publication of first publication notice, issuance of press release, and launch of Settlement website) | October 17, 2023 [i.e., 40 days after entry of Preliminary Approval Order] | December 15, 2023 |
| Motion(s) for, and memoranda in support of, (i) Final Approval of Settlement and (ii) Fee, Expense and Litigation Fund Application | October 22, 2023 [i.e., 45 days after entry of Preliminary Approval Order] | December 21, 2023 |
| Last day for objections to the Settlement to be filed with the Court and sent to counsel | December 7, 2023 [i.e., 28 days before Final Approval Hearing] | February 5, 2024 |
| Parties file responses to any filed objections and any other reply briefs in support of Final Approval and Fee, Expense and Litigation Fund Application | December 21, 2023 [i.e., 14 days before Final Approval Hearing] | February 20, 2024 |
| Final Approval Hearing | January 4, 2024 | March 7, 2024 |

If the Antitrust Division continues to have concerns about the competitive effects of the Proposed Settlement at the time the Court intends to issue a final decision, the United States may

---

practitioners regardless of their skill, their experience, their training, or their willingness to employ innovative and difficult procedures in individual cases."); *Burnett, et al. v. National Association of Realtors, et al.*, Case No. 19-cv-0332 (W.D. Mo.), Dkt. No. 1019 (Dec. 16, 2022 Order Denying Defendants' Motions for Summary Judgment), 2022 U.S. Dist. LEXIS 226614, *26 ("Plaintiffs have also produced evidence that Section 2-G-1 [buyer-broker commission rule] creates a system that rewards all Buyer-Brokers similarly, despite their skill as a broker or the amount of effort expended in procuring the Buyer.").

3

consider other filings as helpful to the Court and consistent with its statutory obligation to safeguard the economic interests of the American people.

Dated: September 28, 2023

Respectfully submitted,

JONATHAN S. KANTER
*Assistant Attorney General*

DOHA G. MEKKI
*Principal Deputy Assistant Attorney General*

MICHAEL KADES
*Deputy Assistant Attorney General*

DANIEL S. GUARNERA
*Chief, Civil Conduct Task Force*

TIMOTHY S. LONGMAN
*Acting Assistant Chief, Civil Conduct Task Force*

By: /s/ Jessica N. Leal
JESSICA N. LEAL (CA Bar No. 267232)
*Trial Attorney*

U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Telephone: (202) 598-2221
Email: jessica.leal@usdoj.gov

*Counsel for the United States of America*

## Rule 7.1 Certification

Pursuant to Local Rule 7.1(a)(2), the United States has conferred with counsel for the plaintiffs and MLS PIN on whether they oppose the requested modification to the Court's current schedule. The plaintiffs oppose an extension. MLS PIN takes no position on the extension.

Dated: September 28, 2023

Respectfully submitted,

*/s/ Jessica N. Leal*

JESSICA N. LEAL
U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530

*Counsel for the United States of America*

**Certificate of Service**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants.

Dated: September 28, 2023                      /s/ *Jessica N. Leal*
                                                                      JESSICA N. LEAL