# Settling Parties'
# Exhibit A



**Seth R. Klein**
860-493-6291
sklein@ikrlaw.com

*Via Email*

June 7, 2024

Jessica N. Leal
U.S. Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 8000
Washington, D.C. 20530
Jessica.leal@usdoj.gov

      Re:    *Nosalek v. MLS Property Information Network, Inc., et al.*
              No. 1:20-cv-12244-PBS

Dear Jessica:

Thank you for your email of June 4, 2024, in response to my email of June 3. I respond below and also discuss further Plaintiffs' position regarding the issues raised by the U.S. Department of Justice ("Department").

**<u>The Third Amended Settlement Agreement</u>**

As I noted in my June 3 email, Exhibits 3a and 3b (*i.e.,* the substantive change to MLS PIN's Rules and Regulations) proposed under the Third Amended Settlement Agreement ("TASA") remain the same as in the previous versions of the Settlement Agreement.

Since I sent you the last copy of the TASA on May 17, there have been additional minor edits. I have enclosed the complete TASA with all Exhibits, along with a redline of the TASA against the Second Amended Settlement Agreement.

Due to serious health issues impacting certain Plaintiffs, the TASA is not yet fully executed. However, Plaintiffs do not anticipate further changes, barring an agreement with the Department concerning injunctive relief.

**<u>Injunctive Relief under the TASA</u>**

The Court asked Plaintiffs to confer with the Department to ascertain what, if any, injunctive relief could be included in the TASA to resolve the Department's concerns.

Jessica N. Leal
June 7, 2024
Page 2

Accordingly, Plaintiffs are hoping to learn what specific language or revisions would satisfy the Department. During Plaintiffs' and the Department's video conference on November 13, 2023, the Department proposed that ¶ 9(a) of the Settlement Agreement (which remains the same in the TASA) be revised to remove all references to the specific rule changes embodied in Ex. 3 of the Settlement Agreement, and instead provide a general prohibition as follows:

> Subject to the conditions set forth herein, including without limitation Paragraph 9(b) below, MLS PIN agrees that, commencing no later than one hundred eighty (180) days after the Effective Date of Settlement, MLS PIN will not adopt, maintain or enforce any rule, or enter into or enforce any agreement or practice, that directly or indirectly (i) requires participants or the seller to make an offer of buyer-broker compensation on the listing filed with the service, or (ii) prohibits the participants, the seller and the prospective purchaser from negotiating and agreeing upon buyer-broker compensation. MLS PIN will not at any time adopt any language, or otherwise promulgate any policy, that materially (re)instates the Buyer-Broker Commission Rule that is the subject of this Agreement.

We assume this proposed revision is what you are referencing when you say in your June 4 email that "[w]e previously described the kind of relief that would address our competition concerns"—please let us know if we are mistaken.

Assuming our understanding is correct, we continue to have the same concern that we expressed both during our November 2023 call and in subsequent communications: we believe that a specific change to the actual written language of MLS PIN's Rules and Regulations (the "Rule") is important to protect home sellers in Massachusetts. To be clear, we agree with the general policy embodied by the Department's language. But in our view, the phrase "or indirectly" causes the Department's version of ¶ 9(a) to be unreasonably vague. Accordingly, in order to avoid future disputes over whether conduct does or does not violate ¶ 9(a), we believe that the settlement should include specific and express language changes in the Rule.

Moreover, we believe that that the proposed Rule fully comports with the underlying relief sought in the Department's version of ¶ 9(a) as follows:

- The Department's version of ¶ 9(a)(i) provides that "MLS PIN will not adopt, maintain or enforce any rule, or enter into or enforce any agreement or practice" that "requires participants or the seller to make an offer of buyer-broker compensation on the listing filed with the service." The Rule changes in Ex. 3 already meet this requirement. For example:

  - Under Change #1, Section 1.0(c) is amended to specifically provide that Listing Brokers must *certify* that they have told their clients "that the service *does not require* the Seller to offer compensation to cooperating Brokers." Ex. 3a (redline) at p.1 (emphasis added).

  - The change to Section 1.0(c) also expressly adds that although "a Cooperating Broker may *request* compensation from the Seller … the Service does *not* require the Seller to accede to such a request." Ex. 3a (redline) at p.1 (emphasis added).

Jessica N. Leal
June 7, 2024
Page 3

       o   Under Change # 2, Section 5.0 Note 1 is amended to ***delete*** the prior requirement that Listing Brokers "specify on each Listing Filed with the Service the compensation being offered…" Ex. 3a (redline) at p.2.

Accordingly, as per the Department's proposal, the amended MLS PIN rules in Ex. 3 expressly make clear that participants and sellers are ***not*** "require[d] … to make an offer of buyer-broker compensation on the listing filed with the service."

- The Department's version of ¶ 9(a)(ii) provides that "MLS PIN will not adopt, maintain or enforce any rule, or enter into or enforce any agreement or practice," that "prohibits the participants, the seller and the prospective purchaser from negotiating and agreeing upon buyer-broker compensation." The Rule changes in Ex. 3 already accomplish this goal by ***adding*** new provisions that for the first time ***expressly allow*** the seller to engage in exactly such negotiations. For example:

       o   Under Change #2, Section 5.0 Note 1 is amended to expressly add that "the Service does ***not prohibit*** the Participants, the Seller, and the prospective purchaser, following the production of an offer to purchase, from ***negotiating and agreeing upon*** some compensation ***different*** from the compensation indicated on the Listing Filed with the Service." Ex. 3a (redline) at p. 2 (emphasis added).

       o   Under Change #2, Section 5.0 Note 2 is similarly amended to add the same language as is added to Note 1 above. Ex. 3a (redline) at p. 3.

Accordingly, the Seller is bound by an offer to pay buyer-broker compensation only if an offer to sell is unconditionally accepted. Otherwise, sellers ***can*** negotiate cooperative compensation, as sought by the Department.[1] The amended MLS PIN rules in Ex. 3 thus make negotiation of cooperative compensation, like any other contractual negotiation, subject to ordinary rules of offer and acceptance.

In sum, Plaintiffs believe that the amended MLS PIN rules in Ex. 3 fully address all of the concerns raised by the Department on November 13, and already effectively implement the Department's proposed revisions to ¶ 9(a).

---

[1] Plaintiffs' memorandum in support of preliminary approval provided the following illustration: "under the rule proposed in the Settlement, when a seller first retains a seller-broker, the seller-broker is required to tell the seller that the seller has the option of whether to include an offer of compensation to the buyer-broker in the MLS PIN listing. If the seller chooses to list the home for $250,000 and the listing includes a 3% offer of compensation to the buyer-broker, the buyer can accept that offer, the parties are bound, and the seller pays the buyer-broker a 3% commission. But if the buyer counteroffers only $225,000, the seller is free to counteroffer to accept the $225,000 sales price on the condition that the seller does not pay the buyer-broker, and any commission to be paid by the seller to the buyer-broker is subject to negotiation between the seller, the buyer, the seller-broker and the buyer-broker. In other words, the buyer-broker commission is subject to negotiation like any other contract term." [ECF No. 191] at 5-6.

Jessica N. Leal
June 7, 2024
Page 4

To the extent that the Department believes otherwise, Plaintiffs respectfully request that the Department explain why the Ex. 3 amendments discussed above do ***not*** resolve the Department's concerns.

If the Department believes additional rule changes are appropriate, Plaintiffs would be more than happy to discuss any such proposals. However, consistent with the Court's direction that the parties meaningfully confer on this issue, we respectfully ask the Department to tell Plaintiffs what additional ***specific*** rule changes, if any, would resolve the Department's objections.

Plaintiffs further note that at the Department's request, Plaintiffs and MLS PIN included ***express*** language in the TASA that the Department is ***not*** bound by the Settlement and is completely free to seek "any" additional relief it deems appropriate.[2]

We remain hopeful that we can address the Department's concerns cooperatively. However, if the Department is not prepared to explain prior to the filing of our joint report why it views the proposed rule changes discussed above to be insufficient, and is not prepared to propose specific rule changes that the Department believes ***would*** satisfy its concerns, Plaintiffs will report to the Court that resolution is not possible and propose an accelerated briefing schedule to resolve this dispute.

<u>**Responses to the Department's Questions**</u>

Finally, we respond below to the three questions raised in your June 4 email.

1. We intend to seek the Court's approval of the TASA and permission to send class notice once the outstanding dispute with the Department is resolved, whether by agreement or through Court decision.

   Should we not reach a cooperative resolution, Plaintiffs anticipate asking the Court for two weeks following entry of the joint report to file their response to the Department's Statement. Once the Court resolves the dispute, then, assuming the Settlement is still moving forward, Plaintiffs will seek a reasonable amount of time to prepare a new notice and to obtain Court approval of and send that notice.

2. We decline to specify the contents of any future brief before making that filing. However, in the interest of full transparency, the issues raised in this letter will likely be integral parts of any future filing. You have previously expressed, and we understand, that the Department may request permission to file a responsive pleading.

3. We understand your third question to be asking about contemplated distributions to class members. *Nosalek* class members will receive proportionate payment from the *Burnett* settlements with Broker Defendants once those settlements become effective. Plaintiffs

---

[2] *See* TASA at ¶ 9(b), which provides: "The Released Parties and Releasing Parties acknowledge that this Settlement Agreement or any final judgment and order of dismissal shall not provide ***any*** defense, immunity (including but not limited to Noerr-Pennington or state action immunity), excuse, release, justification, or any other form of mitigation (whether partial or complete) in ***any*** suit or enforcement action ***brought by any federal government entity or instrumentality.***" (Emphasis added.)

Jessica N. Leal
June 7, 2024
Page 5

anticipate Class members will also receive payment from the proposed $3.95 million settlement fund with MLS PIN after payment of any costs of notice and administration and any attorneys' fees and expenses and lead plaintiff awards that the Court may award, consistent with the terms of the TASA, including paragraphs 7, 9 and 11 thereof.

*      *      *

Plaintiffs have discussed the foregoing points with MLS PIN, who share the concerns raised in this letter. We look forward to hearing from you on these issues.

Sincerely,

*Seth R. Klein*

Seth R. Klein

cc (via email):

B. Sweeney (Department of Justice)
J. Anderson, J.M. Goodin (MLS PIN)
Plaintiffs' counsel of record