UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER NOSALEK, RANDY HIRSCHORN and TRACEY HIRSCHORN, individually and on behalf of all others similarly situated, | No. 1:20-cv-12244-PBS |
| Plaintiffs, | |
| vs. | CLASS ACTION |
| MLS PROPERTY INFORMATION NETWORK, INC., *et al.*, | |
| Defendants. | January 17, 2025 |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO PRELIMINARILY APPROVE
SETTLEMENT WITH DEFENDANT MLS PIN AND IN RESPONSE TO
THE DEPARTMENT OF JUSTICE'S STATEMENT OF INTEREST**

## TABLE OF CONTENTS

I.    INTRODUCTION..........................................................................................1

II.   RELEVANT BACKGROUND.......................................................................2

III.  THE MLS PIN PRACTICE CHANGES ARE FAIR AND REASONALBE AND
      BENEFIT HOME SELLERS IN MASSACHUSETTS AT LEAST AS MUCH
      AS THE NAR PRACTICE CHANGES ..........................................................8

IV.   THE CONCERNS RAISED BY THE DEPARTMENT IN ITS STATEMENT
      OF INTEREST ARE WITHOUT MERIT ....................................................13

V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO
      THE TASA...............................................................................................16

VI.   CONCLUSION..........................................................................................18

i

Pursuant to this Court's Orders (*see* [ECF Nos. 339 and 344]), Plaintiffs respectfully submit this supplemental Memorandum of Law in further support of Plaintiffs' Motion to Preliminarily Approve their Settlement Agreement with MLS Property Information Network, Inc. ("MLS PIN") [ECF No. 190] and in response to the Department of Justice's ("Department") Statement of Interest [ECF No. 290] (the "Statement").

## I.      **INTRODUCTION**

Eighteen months ago, Plaintiffs and MLS PIN reached a settlement regarding alleged anticompetitive practices in the Massachusetts market for real estate brokerage services. The Settlement included amendments to MLS PIN's Rules and Regulations that eliminated the anticompetitive restraints by removing the requirement that home sellers in Massachusetts must offer cooperative compensation to the buyer broker and by requiring the seller broker to explicitly disclose this fact to sellers. Moreover, the settlement established a settlement fund of $3 million. This Court granted preliminary approval to that original Settlement Agreement. *See* [ECF No. 227]. The current version of the Settlement (which keeps the same substantive changes to MLS PIN's Rules and Regulations but increases the Settlement Fund to $3.95 million) embodied in the Third Amended Settlement Agreement ("TASA" or "Settlement") remains fair and reasonable, and Plaintiffs respectfully move this Court for preliminary approval thereof as-is.

As this Court is aware, Judge Bough on November 27, 2024, granted final approval of a settlement in the *Burnett* litigation with regard to similar claims against the National Association of Realtors ("NAR").[1] While the NAR settlement contains terms that are somewhat different than those here, the MLS PIN Settlement is at a minimum also fair and adequate (indeed,

---

[1] *See Burnett v. National Ass'n of Realtors et al.*, No. 19-CV-00332-SRB (W.D. Mo.) ("*Burnett*") Docket at [ECF No. 1622].

Plaintiffs believe it is in fact even more beneficial to consumers). *See Bezdek v. Vibram USA, Inc.,* 809 F.3d 78, 83 (1st Cir. 2015).The Department has suggested that it has concerns regarding the terms of the settlement in this case. But it has consistently declined to provide Plaintiffs with an explanation of the specific changes it would like made to the Settlement Agreement. Such general concerns as the Department does express in its Statement are misplaced, if not already fully resolved. *See* Part IV below; *see generally* Parts II-III. Moreover, specific and explicit language in the MLS PIN Settlement provides that the United States and its instrumentalities are ***not*** part of the Settlement Class, and that the Settlement Agreement or any final judgment thereunder "***does not provide any defense or immunity***" to any action brought by any federal government entity or instrumentality. *Id.* Accordingly, the Department is completely free to seek additional relief from MLS PIN if it so chooses. The TASA should be granted preliminary approval.

## II.    **RELEVANT BACKGROUND**

Plaintiffs filed this case in December 2020. They alleged two anticompetitive aspects of the MLS PIN Rules: (1) the requirement that a seller offer to pay the commission of the buyer-broker, and (2) the prohibition on the seller from negotiating the amount of the commission once an offer was made by the buyer.

Plaintiffs filed the full and complete Settlement Agreement between Plaintiffs and MLS PIN on June 30, 2023. *See* [ECF No. 192-1]. This Settlement Agreement included amendments to MLS PIN's Rules and Regulations that eliminated ***both*** alleged anticompetitive restraints by requiring MLS PIN to amend the MLS PIN's Rules and Regulations to (1) remove the requirement that a seller must offer compensation to a buyer-broker; (2) require the seller-broker to disclose to the seller that (a) the seller is not required to offer compensation to the buyer-

broker and (b) if the buyer-broker requests compensation from the seller, the seller can decline; and (3) provide that *if* the seller elects to make an initial offer to the buyer-broker and the buyer makes a counteroffer (effectively rejecting the seller's offer), then any commission to be paid to the buyer-broker is also subject to negotiation amongst the seller, the buyer, the seller-broker and the buyer-broker. *See* [ECF No. 192-1] at ¶ 9(a) and Exs. 3a and 3b; *see generally* [ECF No. 91] (preliminary approval memorandum discussing proposed Rule change).[2] In other words, the practice changes in the Settlement Agreement remedy *all* of the misconduct alleged in the case. The original Settlement Agreement also established a settlement fund of $3 million. [ECF No. 192-1] at ¶ 11.[3]

On August 3, 2023, counsel for Plaintiffs and the Department conferred by phone. During that call, the Department asked questions concerning the negotiation of the Settlement but did not express any concerns about the substance thereof. Klein Decl. at ¶ 3.

On August 9, 2023, this Court held its remote preliminary approval hearing concerning the Settlement. *See* [ECF No. 211]. Counsel for the Department attended the hearing but did not raise any concerns about the Settlement. Klein Decl. at ¶ 4. At the hearing, the Court expressed its general approval of the substantive rule change obtained by Plaintiffs but raised a concern over the Settlement Class period and certain aspects of the treatment of the Settlement Fund and directed Plaintiffs to submit a revised Settlement Agreement addressing those concerns. *Id.*

Following the preliminary approval hearing, Counsel for the Department requested a second conference with counsel for Plaintiffs, which took place on August 22, 2023. Klein Decl.

---

[2] The TASA, attached as Exhibit A to the Declaration of Seth R. Klein ("Klein Decl.") submitted herewith, preserves these changes. *See* Klein Decl. Ex. A at ¶ 9(a) and Exs. 3a and 3b thereto.

[3] As discussed in Part V below, the Settlement Fund is now $3.95 million.

at ¶ 5. During that conference, counsel for the Department for the first time expressed generalized and non-specific "concerns" over the Settlement. *Id.*.

On September 5, 2023, Plaintiffs filed their Amended Settlement Agreement [ECF No. 222], which was substantively identical to the previous Settlement Agreement in all respects except for modification of the Settlement Class Period and revision of the treatment of the monetary Settlement Fund as suggested by the Court. On September 7, this Court granted preliminary approval to the Settlement, authorized the sending of class notice, and set a final approval hearing date of January 4, 2024. *See* [ECF Nos. 227, 228].

On September 25, 2023, the Department requested an immediate phone conference, which took place on the morning of September 26. Klein Decl. at ¶ 6. During the conference, the Department requested that Plaintiffs agree to delay the sending of notice and the date for the final approval hearing by two months. *Id.* After further discussions with the Department, Plaintiffs ultimately agreed, and the Court granted the extension. *See* [ECF Nos. 232, 233].

On November 6, 2023, the Department requested a videoconference with Plaintiffs, which was scheduled for November 13, 2023. Although the Amended Settlement Agreement provided that the Settlement's injunctive relief would be superseded by any "existing or subsequently adopted, promulgated or issued state or federal statute, regulation, rule, or order,"[4] the Department raised its concerns for the first time that the Settlement Agreement (or an order of the Court granting final approval to the Settlement) could interfere with the Department's ability to seek additional injunctive relief from MLS PIN. Klein Decl. at ¶ 7. Accordingly, to

---

[4] [ECF No. 222] at ¶ 9(b). The Amended Settlement Agreement also provided that the Settlement Agreement's injunctive relief would be superseded by "any existing or future formal or informal regulatory directive, requirement, instruction, guidance, order, decree, settlement, or compromise agreement, whether of general application or directed at or applicable to any one or more of the Defendants." *Id.*

address the Department's concern, Plaintiffs and MLS PIN thereafter entered into a Second Amended Settlement Agreement on January 5, 2024. *See* [ECF No. 268-1]. The Second Amended Settlement Agreement specifically added to the above language to specify that the types of "order" that would supersede the Settlement Agreement would "include[e], but not [be] limited to, a judicial order or decree applying or enforcing any aforementioned law, regulation or rule." [ECF No. 268-1] at ¶ 9(b). The Second Amended Settlement Agreement further specified that "federal government entities or instrumentalities" are "excluded from the Settlement Class." *Id.* at ¶ 3(b). More important, it expressly and unequivocally added that:

> The Released Parties and Releasing Parties acknowledge that this Settlement Agreement or any final judgment and order of dismissal shall not provide ***any*** defense, immunity (including but not limited to Noerr-Pennington or state action immunity), excuse, release, justification, or any other form of mitigation (whether partial or complete) in ***any*** suit or enforcement action ***brought by any federal government entity or instrumentality.***

*Id.* at ¶ 9(b) (emphasis added).[5]

The Department then filed its Statement of Interest on February 15, 2024. The Statement primarily criticized in general terms the sufficiency of the injunctive relief that Plaintiffs obtained, even though the injunctive relief obtained by Plaintiffs fully remedied the specific misconduct alleged in Plaintiffs' complaint and was all of the injunctive relief that could have been obtained on a class-wide basis. Notwithstanding the new language in the Second Amended Settlement Agreement discussed above, the Department also argues that the Settlement still "unnecessarily interfere[s] with the ability of the United States" to seek additional relief. [ECF 290] at 2-3, 18-20. Finally, the Statement raises concerns that, under the Second Amended Settlement Agreement, Plaintiffs were seeking certification only under Fed. R. Civ. P. 23(b)(1) and (2), thus preventing Class Members from opting out. *Id.* at 3, 22-24.

---

[5] The TASA preserves this language. *See* Klein Decl. Ex. A at ¶¶ 3(b) and 9(b).

MLS PIN responded to the Department's Statement on June 11, 2024 [ECF No. 333], and Plaintiffs expected to file their response by June 28, 2024 (*see* [ECF No. 338] at p. 2]). In anticipation of filing their response, Plaintiffs on June 7, 2024, wrote a detailed letter to the Department explaining why Plaintiffs believed the Settlement was fair and reasonable and again asking the Department, if it disagreed with Plaintiffs' analysis, to "propose specific rule changes that the Department believes would satisfy its concerns." *See* [ECF No. 338-1] at 4. The Department never substantively responded to Plaintiffs' letter. Klein Decl. at ¶ 9.

On June 24, 2024 (before Plaintiffs filed their Response to the Department's Statement), this Court *sua sponte* stayed further proceedings regarding the Settlement until Judge Bough issued a ruling concerning final approval of the proposed *Burnett* settlement with NAR. *See* [ECF No. 339].[6]

Judge Bough scheduled the *Burnett* final approval hearing for Tuesday, November 26, 2024. On Sunday, November 24, 2024, the Department filed a Statement of Interest with regard to that settlement. *See Burnett* Docket at [ECF No. 1603]. The Department raised a substantive concern regarding the *Burnett* settlement, but stated that its concern could be remedied if the parties "disclaim[ed] that the settlement creates any immunity or defense under the antitrust laws."[7]

At the *Burnett* final approval hearing two days later, counsel for the *Burnett* plaintiffs noted that, just like the Settlement Agreement here, the *Burnett* settlement agreement ***already*** "specifically says that the government may come after NAR, and if there's a judgment in that case [*i.e.,* in a Department enforcement action], that would override anything that's contrary

---

[6] A copy of the NAR Settlement Agreement is attached to the Klein Decl. as Ex. B.

[7] A copy of the Department's *Burnett* Statement of Interest is attached to the Klein Decl. as Ex. C.

here" in the *Burnett* settlement. *See Burnett* NAR settlement Final Approval Transcript dated

November 26, 2024 ("*Burnett* Tr."), attached as Ex. D to the Klein Decl., at 5:16-6:7 (discussing

¶ 59 of the NAR Settlement Agreement).[8] On November 27, 2024, Judge Bough granted final

approval to the NAR settlement "as is." *See Burnett* Docket at [ECF No. 1622]. Judge Bough did

not require any additional modifications to the NAR settlement agreement or any additional

statement from plaintiff or NAR counsel that the settlement would not preclude the Department

from taking further enforcement action. *See generally id.*

      Following Judge Bough's final approval order, Plaintiffs contacted the Department on

December 2, 2024, to ascertain whether, in light of the Department's Statement of Interest in

*Burnett* and Judge Bough's approval of the NAR settlement, the Department would provide

Plaintiffs with specific changes to the MLS PIN Settlement Agreement that would resolve the

Department's concerns. Klein Decl. at ¶ 10. Counsel for Plaintiffs met via videoconference with

Department attorneys on December 3 and 10, 2024. *Id.*. During the first conference, Plaintiffs,

again inquired about any specific amendments to the MLS PIN Settlement Agreement that the

Department would like to propose, and also specifically asked the Department whether the

Department would withdraw its objections if the MLS PIN Settlement Agreement were amended

to mirror the NAR settlement. *Id.*.[9] During the second conference, the Department advised that it

would not propose ***any*** specific changes to Plaintiffs. *Id.*

---

[8] Counsel for NAR further explained to Judge Bough that "[a]s far as we can tell from the Department of Justice's filing and our several meetings with the DOJ, the DOJ doesn't know what it wants to do." Klein Decl. Ex. D at 9:11-16.

[9] As discussed below, Plaintiffs believe that the MLS PIN Settlement is at least as good, if not better, for consumers than the NAR Settlement. However, Plaintiffs were willing to discuss the issue with the Department in good faith, and thought at a minimum that establishing a baseline might facilitate further discussions.

The MLS PIN Settlement has been pending for over eighteen months since the filing of the original Settlement Agreement and sixteen months since the original grant of preliminary approval. Given Judge Bough's final approval in *Burnett* and the Department's ongoing decision not to engage with Plaintiffs thereafter, Plaintiffs now submit this preliminary approval memorandum.

## III.    THE MLS PIN PRACTICE CHANGES ARE FAIR AND REASONABLE AND BENEFIT HOME SELLERS IN MASSACHUSETTS AT LEAST AS MUCH AS THE NAR PRACTICE CHANGES

As Judge Bough observed in granting final approval to the *Burnett* Plaintiffs' settlement with RE/MAX, Anywhere and Keller Williams, "[t]he standard the Court applies" in assessing a settlement "is whether the settlement is fair, reasonable and adequate—not perfection." *Burnett* Docket at [ECF No. 1487] at 22. "The fact that a better deal for class members is imaginable does not mean that such a deal would have been attainable in these negotiations, or that the deal that was actually obtained is not within the range of reasonable outcomes." *Bezdek v. Vibram USA, Inc.,* 809 F.3d 78, 83 (1st Cir. 2015). "The court's task, then, is simply to decide whether the settlement agreement *as written* is fair, reasonable and adequate, not whether the parties or the court could conceivably have come up with a 'better' agreement." *Godson v. Eltman, Eltman & Cooper P.C.*, 328 F.R.D. 35, 54 (W.D.N.Y 2018) (emphasis in original).

Here, Plaintiffs respectfully submit that the practice changes embodied in the MLS PIN settlement benefit home sellers in Massachusetts as discussed above. Moreover, Plaintiffs believe those practice changes are at least as, if not arguably more, beneficial than those in the NAR settlement. As summarized in Part II above, the MLS PIN Settlement Agreement

eliminated **_all of the_** anticompetitive restraints alleged in the Complaint by requiring MLS PIN to amend its policies in several ways:[10]

- First, the MLS PIN Settlement Agreement removes the requirement that a seller must offer compensation to a buyer-broker, so the seller can freely decide what cooperative compensation, if any, to offer to the buyer-broker. *See* Klein Decl. Ex. A (TASA) at Ex. 3a (redlined Rule changes), Changes Nos. 1, 2, 3, 5 & 7. The NAR Settlement does this as well. However, in the MLS PIN settlement, Plaintiffs took the additional step of **_requiring_** that the **_seller him- or herself_**, and **_not_** the seller's **_broker_**, be the party that actually makes any initial cooperative compensation offer to the buyer's broker. *Id.* at Change No. 2. By contrast, under the NAR settlement, although the initial cooperative compensation offer cannot be made **_on the MLS_** by the seller broker (as discussed below), the offer can be made **_by the seller broker_** through any other means, including on the seller broker's website or electronic listings feed, as discussed below. This distinction between who makes the initial cooperative compensation offer—the seller or the seller broker—is meaningful. Where a seller is exclusively and directly responsible for making any initial offer of cooperative compensation, that seller is unavoidably aware of the existence of any separate seller-broker and buyer-broker commissions that may be negotiated, and can better assess what cooperative compensation to offer the buyer-broker (if any). Under the NAR system, the seller-broker can still seek an overall elevated commission rate (such as 5-

---

[10] For ease of reference, Plaintiffs cite in the below paragraphs to the TASA, which is identical with regard to the cited Rule changes to the original Settlement Agreement.

6%), and then unilaterally split that commission with the buyer-broker. This distinction may be especially important in protecting less sophisticated consumers.

- Second, the MLS PIN Settlement Agreement requires the broker for the seller to provide notice to the seller that (a) the seller is not required to offer compensation to the buyer-broker and (b) if the buyer-broker requests compensation from the seller, the seller can decline. The NAR settlement contains similar requirements, but the MLS PIN Settlement has a more robust compliance system by requiring seller-brokers to check a box on the MLS system certifying that the listing broker has notified the seller of the seller's right not to offer compensation and not to accede to a cooperating broker's request for compensation. *See* Klein Decl. Ex. A (TASA) at Ex. 3a (redlined Rule changes), Changes Nos. 1, 9 & 10. Moreover, as discussed above, under the MLS PIN Settlement Agreement, the ***seller*** (as opposed to the seller-***broker***) directly controls and is responsible for initial cooperative compensation offers to buyer-brokers.

- Third, the MLS PIN Settlement provides that ***if*** the seller elects to make an initial offer to the buyer-broker and the buyer makes a counteroffer (effectively rejecting the seller's offer), then any commission to be paid to the buyer-broker may also be (re)negotiated amongst the seller, the buyer, the seller-broker and the buyer-broker. *See* Klein Decl. Ex. A (TASA) at Ex. 3a (redlined Rule changes), Change No. 1 at Note 1. Under this Rule change, when a seller first retains a seller-broker, the seller-broker is required to tell the seller that the seller has the option to include an initial offer of compensation to the buyer-broker in the MLS PIN listing. If the seller chooses to list the home for $250,000 and the listing includes a 3% offer of

10

compensation to the buyer-broker, the buyer can accept that offer, the parties are bound, and the seller pays the buyer-broker a 3% commission. But if the buyer counteroffers only $225,000, the seller is free to accept the $225,000 sales price on the condition that the seller does not pay the buyer-broker, and any commission to be paid by the seller to the buyer-broker, if any, is subject to negotiation between the seller, the buyer, the seller-broker and the buyer-broker. In other words, the buyer-broker commission is subject to negotiation like any other contract term. The NAR settlement, however, does ***not*** contain an analogous express provision.

The NAR settlement also contains certain provisions that are not included in the TASA. Indeed, NAR's official website Frequently Asked Questions ("FAQ") focuses entirely on two unique aspects of that settlement: (1) that "written buyer agreements are now required" between buyers and buyer-brokers, and (2) that "offers of [cooperative] compensation … can no longer be shared on Multiples Listing Services" at all.[11] But neither of those provisions benefit the putative Class here.

First, the requirement that buyers and buyer-brokers must have written contracts may (or may not) be good policy, but Plaintiffs believe it is beyond the scope of a private class action settlement meant to benefit a class of ***sellers,*** as here. Second, the NAR settlement rule that cooperative compensation cannot be listed on an MLS is not material. As NAR itself publicizes in its website FAQ, brokers can "augment" home sale listings with offers of cooperative compensation on the broker's ***own*** websites or private broker data feeds, even if the information cannot be posted to the MLS itself.[12] Indeed, the MLSs for Cape Cod & Islands ("CCIMLS")

---

[11] https://www.nar.realtor/the-facts/nar-settlement-faqs at FAQ 1 (last visited January 16, 2025).

[12] https://www.nar.realtor/the-facts/nar-settlement-faqs at FAQ 53 (last visited January 16, 2025).

and Martha's Vinyard ("MVMLS"), which cover neighboring territories to MLS PIN in Massachusetts, have joined the NAR settlement but carefully specify that "[n]o offer of compensation may now be made *in the MLS*" (emphasis added) while providing a link to the NAR FAQs noted above that discuss brokers' ability to post elsewhere.[13] Similarly, the Greater Boston Association of Realtors posted an article about the growing number of private subscription websites being set up as clearinghouses for cooperative compensation information that could no longer be posted directly on the MLS.[14] Because such avoidance is expressly permitted under the NAR settlement, these workaround efforts are occurring nationwide.[15] Accordingly, the NAR rule change will *not* substantially hinder blanket offers of cooperative compensation being posted online. That settlement simply moves them to a new website. It is a distinction without a meaningful difference. MLS PIN's rules allow brokers to post cooperative compensation on third-party or broker sites in addition to the MLS, but *restricting* offers of cooperative compensation to *only* non-MLS sources may actually harm consumers. MLS sites provide centralized repositories where sellers and buyers can assess the overall market. Restricting that information to broker and third-party sites does little to limit any undue

---

[13] https://cciaor.com/nar-settlement-resources  (last visited January 16, 2025).

[14] https://www.gbreb.com/GBAR/Sites/GBAR/News/General_News/Meet_the_Companies_Offering_Commission_Sharing_Workarounds.aspx (last visited January 16, 2025).

[15] For example, the Connecticut REALTORS association issued a "Public Explanation" noting that "[t]he [NAR] settlement specifically includes that real estate companies would still be able after the NAR settlement to post cooperative compensation" to other brokers "on their own company websites" or "via written agreement, email, text, phone or any other non-MLS entity method." https://www.ctrealtors.com/Customer-Content/www/announcements/PDFs/CTR-Points-NAR-Settlement.pdf (last visited January 16, 2025). *See also, e.g.,* https://finance.yahoo.com/news/commission-sharing-websites-emerged-buyer-121640533.html (Yahoo Finance article on cooperative compensation aggregation websites) (last visited January 16, 2025); https://caar.com/wp-content/uploads/2024/10/Legal-CAAR-Compensation-FAQs_July2024.pdf (Charlottesville Areas Association of Realtors FAQ stating that "the amount of buyer agent cooperative compensation can be stated on the listing broker's website for such listing broker's own listings") (last visited January 16, 2025).

"steering" or pressure that may exist for sellers to offer such compensation. Rather, it merely pushes cooperative compensation *more* into the shadows and makes it *harder* for sellers (and buyers) to obtain all the information they need to make an informed decision.

Accordingly, Plaintiffs respectfully submit that putative Class Members here are at least as well served, if not better served, under the TASA than under the NAR settlement.

## IV.    THE CONCERNS RAISED BY THE DEPARTMENT IN ITS STATEMENT OF INTEREST ARE WITHOUT MERIT

As discussed in Parts II and III above, Plaintiffs have secured fundamental changes to MLS PIN's Rules and Regulations that eliminate *all of* the specific anticompetitive practices alleged in Plaintiff's complaint. In recognition of the substantive benefits obtained by the Settlement, the Court granted preliminary approval to those substantive terms in the First Amended Settlement Agreement. *See* [ECF No. 227].

The Department's arguments in the Statement regarding the purported deficiencies of the injunctive relief obtained by Plaintiffs are baseless. The Department asserts that the Settlement's injunctive relief "provides no meaningful benefit to class members." Statement at 12; *see generally id.* at 12-20. This is simply incorrect, and has been thoroughly rebutted in the amici briefs filed by the Council of Multiple Listing Services [ECF No. 309] and the Northwestern MLS [ECF No. 308].

Plaintiffs note that in the sixteen months since Plaintiffs publicly filed the initial Settlement Agreement in August 2023, the Department has offered no guidance as to what alternative injunctive relief would fully address their concerns (and have not brought its own enforcement action). In the Statement, the Department's only specific suggestion is a hypothetical rule that altogether "*prohibits* offers of buyer-broker compensation by MLS PIN participants" under any circumstance. *See, e.g.,* Statement at 20 (emphasis added). Plaintiffs

respectfully question whether such a restriction—which is *itself* a restraint of trade—is a proper injunctive remedy. Plaintiffs here represent a putative class of sellers that legitimately may want to offer to pay a buyer's broker in order to advance a transaction, including, for example, a simple desire to move quickly and get a deal done. Yet the Department's proposed resolution would *restrict* home sellers in Massachusetts from arranging a contract for sale as they see fit. Plaintiffs believe the Department's proposal should instead be addressed through administrative rule making or legislation, not a lawsuit under the auspices of the antitrust laws (much less a private lawsuit governed by the restrictions of Rule 23).

Plaintiffs further note that the *only* substantive objection that the Department articulated in its Statement of Interest regarding the NAR settlement (in addition to its procedural concern discussed above seeking to preserve its rights to bring subsequent enforcement actions) was that "[t]he proposed settlement includes a provision requiring buyers and their brokers enter 'written agreement before the buyer tours any home.'" *Burnett* Docket at [ECF No. 1603] at p. 1. However, that provision already is *not* part of the MLS PIN Settlement. Notably, the Department did *not* argue in its NAR Statement of Interest that NAR should have prohibited all public offers of buyer-broker compensation by MLS participants, as they did five months earlier in their Statement of Interest in the MLS PIN case. Plaintiffs do not know why the Department failed to raise the same concerns in *Burnett* as they have in this case.

The Department also raises concerns regarding the specific provisions of Fed. R. Civ. P 23 under which the Settlement Class will be certified and the ability of Class Members to opt-out. Statement [ECF No. 290] at 3, 22-24. Plaintiffs believe that certification of the Settlement Class would have been proper under Fed. R. Civ. P. 23(b)(1) and (2), as provided for in the Second Amended Settlement Agreement. However, in order to avoid unnecessary dispute,

Plaintiffs and MLS PIN have revised the Settlement in the TASA to instead provide for certification under Fed. R. Civ. P. 23(b)(2) (as sought and briefed in connection with preliminary approval of the First Amended Settlement Agreement) and *(b)(3)*, rather than (b)(1), to allow class members to exercise Rule 23(b)(3) opt-out rights as requested by the Department. *See* TASA at ¶¶ 3(a), 5(a)(i), 5(e)(i).[16] Accordingly, this issue has been fully resolved and is moot.

Finally, the Department's concern that the Settlement will effectively "chill" future challenges to MLS PIN's post-injunction Rules (Statement at 2, 18-20) ignores the plain language of the Settlement Agreement. The Settlement Agreement has always provided that if any subsequent court order or other legal or regulatory requirement is inconsistent with the Settlement Agreement, ***the subsequent order or legal or regulatory requirement will control***. TASA at ¶ 9(b) (emphasis added). This allowance applies to court orders obtained both by private parties and by the Department. Moreover, as discussed in Part II above, Plaintiffs (at the Department's request) included ***additional*** language in the Second Amended Settlement Agreement to be ***even more*** explicit that the Department is ***not*** precluded from seeking additional remedies. *Id.* ("this Settlement Agreement or any final judgment … shall not provide any defense … or any other form of mitigation … to any suit or enforcement action brought by any federal government entity or instrumentality"). *Id.*

In sum, the injunctive relief that Plaintiffs obtained in the Settlement Agreement is, at a minimum, fair and reasonable. And to the extent that the Department believes that alternative or additional relief is preferable, it will continue to have the right to seek such relief even should the Court ultimately grant final approval to the MLS PIN Settlement.

---

[16] Plaintiffs shared an execution copy of the TASA with the Department on May 17, 2024. *See* Klein Decl. at ¶ 8.

## V.    THIS COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE TASA

This Court previously granted preliminary approval to the First Amended Settlement Agreement. *See* [ECF No. 227]. Plaintiffs thereafter submitted the Second Amended Settlement Agreement to the Court which added the language discussed in Part II above further clarifying that the Department was not restricted from taking further action of its own (*see* [ECF No. 268-1]), but never sought formal preliminary approval of that revision due to then-ongoing attempts to resolve the Department's concerns. Plaintiffs now seek preliminary approval of the TASA (Klein Decl. Ex. A), which retains the substantive Rule changes already approved in connection with the First Amended Settlement Agreement and the expanded language protecting the Department from the Second Amended Settlement Agreement but makes certain other amendments discussed below. For the sake of brevity, Plaintiffs incorporate by reference the arguments in their Memorandum in Support of Preliminary Approval of the original Settlement Agreement [ECF No. 191], which remain fully applicable to the TASA, and address herein only the terms that differ in the TASA.

First, as discussed above, the TASA now provides for class certification under Fed. R. Civ. P. 23(b)(2) and *(b)(3)*. Plaintiffs briefed the elements of Rule 23(a) and the appropriateness of Rule 23(b)(2) certification in their Memorandum in Support of Preliminary Approval of the First Amended Settlement Agreement. *See* [ECF No. 191] at 22-27. Plaintiffs respectfully submit that the Settlement also easily satisfies the requirements of Rule 23(b)(3) certification:

- As to Fed. R. Civ. P. 23(b)(3)(A), individual putative Class Members have little incentive to individually control prosecution of their claims, given the complexity of antitrust actions and the relatively modest size of individual damages when assessed against the costs and burdens of such litigation.

16

- As to Fed. R. Civ. P. 23(b)(3)(B), Plaintiffs are not aware of any other litigation by putative Class Members against MLS PIN or involving the MLS PIN service area concerning the present controversy. Insofar as MLS PIN has not opted-in to the NAR settlement, Plaintiffs' and Class Members' dispute with MLS PIN is not covered by the terms of that settlement.

- As to Fed. R. Civ. P. 23(b)(3)(C), Plaintiffs believe that the United States District Court for the District of Massachusetts is the optimal forum in which to resolve a federal antitrust dispute concerning the sale of real estate in Massachusetts listed on MLS PIN.

- As to Fed. R. Civ. P. 23(b)(3)(D), Plaintiffs respectfully submit that there will be no significant difficulties in managing this class action for Settlement purposes. Indeed, the Claims Administrator retained by MLS PIN following the original grant of preliminary approval has already gathered contact information for the sending of Notice to Class Members (which has been delayed pending resolution of the Department's concerns).

Accordingly, certification under Fed. R. Civ. P. 23(b)(3) is warranted.

Second, the Settlement now covers all Real Estate (as that term is defined in the Agreement) listings on MLS PIN during the Class Period, rather than only "residential" real estate listings. *See, e.g.,* Klein Decl. Ex. A (TASA) at ¶ 2(z). The "Released Parties" are also expanded to include MLS PIN's "participants and subscribers" (in addition to its officers, directors, employees, agents, etc.). *Id.* at ¶ 2(bb). In return, Plaintiffs negotiated for and obtained an extra ***$950,000*** for the Settlement Fund (an addition of nearly one-third of the original Fund), bringing the fund from $3 million to $3.95 million. *Id.* at ¶ 9(c). When negotiating these revised

terms, Plaintiffs confirmed with MLS PIN that removing the "residential" limitation from the listings covered by the Settlement would only increase the monetary value of the covered listings by approximately 2%. Moreover, Plaintiffs do not believe that many, if any, Class Members are likely to pursue individual claims against their individual brokers (i.e., MLS PIN's "subscribers and participants"), and in any event any Class Member who wishes to do so may opt out of the Settlement. Accordingly, Plaintiffs believe that the nearly 33% increase in Settlement Fund cash that they received in return for these modest concessions is a net significant benefit to the Class.

Finally, the TASA also makes a handful of typographical or conforming edits that Plaintiffs do not believe affects the substance of the Settlement terms. A redline of the TASA against the Second Amended Settlement Agreement previously submitted to the Court is attached to the Klein Decl. as Ex. E.

Accordingly, Plaintiffs respectfully submit that the TASA, like the First Amended Settlement Agreement before it, warrants preliminary approval by this Court.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs submit that the Department's concerns in its Statement are unwarranted and respectfully request that the Court grant this motion for preliminary approval of the MLS PIN Settlement.[17]  If the Court does grant preliminary approval, Plaintiffs respectfully request that Plaintiffs and MLS PIN be allowed 30 days to (1) finalize new Notice documents for the Court's approval incorporating the final Settlement provisions preliminarily approved by this Court; and (2) consult with the Claims Administrator about any changes in costs since the original preliminary approval order and to submit a Notice

---

[17] To the extent that the Court has additional concerns, Plaintiffs respectfully request the opportunity address those concerns.

plan to the Court for the sending of such Notice.

Dated: January 17, 2025                              Respectfully submitted,

                                    BY:    /s/ Seth R. Klein
                                           Robert A. Izard (pro hac vice)
                                           Craig A. Raabe (pro hac vice)
                                           Seth R. Klein (pro hac vice)
                                           Christopher M. Barrett (pro hac vice)
                                           IZARD, KINDALL & RAABE, LLP
                                           29 South Main Street, Suite 305
                                           West Hartford, CT 06107
                                           (860) 493-6292
                                           (860) 493-6290 fax
                                           rizard@ikrlaw.com
                                           craabe@ikrlaw.com
                                           sklein@ikrlaw.com
                                           cbarrett@ikrlaw.com

                                           Christopher L. Lebsock (pro hac vice)
                                           HAUSFELD LLP
                                           600 Montgomery Street
                                           Suite 3200
                                           San Francisco, CA 94111
                                           (415) 633-1908
                                           clebsock@hausfeld.com

                                           James Gotz (MA Bar #567157)
                                           HAUSFELD LLP
                                           One Marina Park Drive
                                           Suite 1410
                                           Boston, MA 02210
                                           (617) 207-0600
                                           jgotz@hausfeld.com

                                           Jose Roman Lavergne (pro hac vice)
                                           HAUSFELD LLP
                                           888 16th Street, N.W.
                                           Suite 300
                                           Washington, D.C., 20006
                                           (202) 540-7200
                                           jlavergne@hausfeld.com

                                           *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Seth R. Klein, hereby certify that a true copy of the foregoing document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing on January 17, 2025.

*/s/ Seth R. Klein*
Seth R. Klein
