UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER NOSALEK, RANDY HIRSCHORN and TRACEY HIRSCHORN, individually and on behalf of all others similarly situated,<br><br>     *Plaintiffs*,<br>   v.<br><br>MLS PROPERTY INFORMATION NETWORK, INC., ANYWHERE REAL ESTATE INC. (F/K/A REALOGY HOLDINGS CORP.), CENTURY 21 REAL ESTATE LLC, COLDWELL BANKER REAL ESTATE LLC, SOTHEBY'S INTERNATIONAL REALTY AFFILIATES LLC, BETTER HOMES AND GARDENS REAL ESTATE LLC, ERA FRANCHISE SYSTEMS LLC, HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, POLZLER & SCHNEIDER HOLDINGS CORPORATION, INTEGRA ENTERPRISES CORPORATION, RE/MAX OF NEW ENGLAND, INC., RE/MAX INTEGRATED REGIONS, LLC, AND KELLER WILLIAMS REALTY, INC.,<br>     *Defendants*. | No. 1:20-cv-12244-PBS<br><br>Judge Patti B. Saris |

## SUPPLEMENTAL STATEMENT OF INTEREST OF THE UNITED STATES

Plaintiffs have again failed to establish that the proposed settlement is "fair, reasonable and adequate," as required under Federal Rule of Civil Procedure 23(e). *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 345 (1st Cir. 2022).

Like the previous settlement, the current proposed settlement would make only cosmetic changes to MLS PIN's rules with respect to sellers providing offers of compensation to buyers' agents. These changes perpetuate the status quo—alleged to be the product of collusion among competing brokers through MLS PIN—and neither protect nor restore competition to this

important market. The current proposed settlement would not change the dynamic according to which sellers would continue to offer "customary" commissions out of fear that buyer brokers will direct buyers away from listings with lower commissions, a well-documented phenomenon known as steering.

The monetary relief included in the proposed settlement is similarly lacking. From what little information Plaintiffs have submitted, the monetary relief for each proposed class member appears to be limited, especially with the parties' expansion of the class to include an unspecified number of land and mobile home sellers.

In short, Plaintiffs have not established that "the settlement, taken as a whole," provides fair, reasonable, or adequate relief to class members in return for broadly relinquishing their claims. *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173 (3d Cir. 2013). Thus, for the reasons discussed below, the Court should deny preliminary approval.

## I. INTEREST OF THE UNITED STATES

The purchase or sale of a home is often one of the most significant transactions of Americans' lives and home ownership is for most families an important vehicle for wealth accumulation. Brokerage fees represent a substantial portion of the costs of making those transactions—costs that should be kept in check by unrestrained competition among brokers. Yet, despite technological advances and shifts over time in how Americans buy and sell properties, real-estate broker commission rates in the United States and Massachusetts have barely budged from the 5-6% "standard" rates for decades. *See* Dkt. 290 (Statement of Interest) at 3-4.

The Department of Justice's Antitrust Division (along with the Federal Trade Commission) has long fought to inject competition into residential real-estate markets. The United States has a strong interest in protecting American home sellers and buyers and ensuring

that private class-action settlement agreements do not perpetuate serious competitive concerns. The United States' participation in this suit also furthers the aims of the Class Action Fairness Act. *See* Dkt. 290 at 3-5.

## II. PROCEDURAL BACKGROUND

As Plaintiffs alleged in this case, MLS PIN's buyer-broker commission rule (i) is a product of collusion among competing brokers and (ii) suppresses price competition among brokers by requiring the listing broker to make an "unconditional" and "blanket unilateral offer[] of compensation to" the buyer broker, which the buyer broker knows "prior to initiating any sales effort[.]" *See* Dkt. 290 at 8-9 (citing Dkt. 39 at 17-18 (Sec. 5 and Note 1 of MLS PIN Rules and Regulations)). Although the rule theoretically permits an offer of compensation as low as one penny, in practice, "[t]he Rule creates tremendous pressure on sellers to offer the 'standard' supra-competitive commission" to avoid the risk that "buyer brokers will 'steer' home buyers to the residential properties that provide the higher standard commission." Dkt. 150 at ¶ 77. As Plaintiffs contend, the rule thereby "diminish[es] price competition and stabiliz[es] and fix[es] the buyer broker charges imposed on home sellers at or near the 'standard real [e]state commission' level" in violation of the antitrust laws. *Id.* at ¶ 94.

The prior iteration of the parties' proposed settlement (the Second Amended Settlement, Dkt. 268-1), provided for a settlement fund of $3,000,000 (including $900,000 in counsel fees and expenses) and injunctive relief that requires three categories of changes to MLS PIN rules:

1. Requiring that the seller, not the listing broker, make any offer of cooperative compensation and permitting such an offer of compensation to be zero cents, in contrast to the existing requirement of at least one cent (*see* Dkt. 222 at 58);

2. Noting that buyer-broker commission offers are negotiable (*see* Dkt. 222 at 59-60); and

3

      3. Requiring that listing brokers certify in the MLS platform that they "notified" the seller that an offer of compensation is not required and a buyer broker's request for compensation need not be granted (*see* Dkt. 222 at 58).

The United States previously explained that these cosmetic rule changes would not meaningfully address MLS PIN's or its participants' longstanding conduct, and thus they would leave in place a status quo that is the product of alleged collusion among competitors. The proposed rule changes would do little to "unfetter a market from anticompetitive conduct and 'pry open to competition a market that has been closed by defendants' illegal restraints.'" *Ford Motor Co. v. United States*, 405 U.S. 562, 577–78 (1972) (citation omitted); Dkt. 290 at 12-20; *see* Dkt. 150. The proposed rule will still pressure most sellers to offer "customary" commissions out of fear of steering. When sellers make such offers, buyer brokers need not compete on price to attract buyers, which thereby keeps commissions high. Worse, the settlement agreement would mandate that these rules stay in place for a minimum of three years, prohibiting MLS PIN from adopting a rule that does not harm competition. *Id.* at 2-3.

In November 2024, the district court in *Burnett v. National Association of Realtors* approved a settlement with the National Association of Realtors containing $418 million dollars of monetary relief and injunctive relief requiring NAR to prohibit offers of compensation from being made on NAR-affiliated MLSs. *Burnett v. Nat'l Ass'n of Realtors*, 4:19-cv-00332-SRB, ECF No. 1622 (W.D. Mo. Nov. 27, 2024). That settlement does not bind or release MLS PIN, which chose not to opt into it.

Plaintiffs in this case filed their supplemental motion for preliminary approval on January 17, 2025. Dkt. 345. The current proposed settlement includes the same inadequate

4

injunctive relief proposed in the Second Amended Settlement, as well as some unrelated changes:

- The proposed class has expanded to include sellers of all Real Estate (defined now to include "[a]ny real or personal property"), as opposed to "residential" real estate listings, Dkt. 345-6 ¶¶ 2(z), 3(a);

- The settlement purports to release even more parties—notably brokers and brokerages—by adding as Released Parties "participants, and subscribers" of MLS PIN other than named defendants in this case and *Gibson v. NAR*, *id.* ¶ 2(bb), and expands released claims to include those related to "commissions negotiated, offered, obtained, or paid to brokerages," Dkt. 345-6 at 6; and

- The settlement fund has increased from $3 million to $3.95 million, and class counsel may seek a higher percentage of that increased fund in fees and expenses (now 33.3%, up from 30%), *id.* ¶¶ 7, 11.

### III.    ARGUMENT

#### A.  Legal Standard for Preliminary Settlement Approval

Courts may grant preliminary approval of a proposed class settlement only where the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). At this stage, "the role of the court effectively is to serve as a fiduciary for absent class members and protect them from an unjust or unfair settlement." *Mongue v. Wheatleigh Corp.*, 2023 WL 5435918, at *4 (D. Mass. Aug. 23, 2023); *see also Grenier v. Granite State Credit Union*, 344 F.R.D. 356, 362 (D.N.H. 2023) (holding that Rule 23(e) requires courts to "conduct a 'searching,' 'careful,' and 'rigorous' inquiry before preliminarily approving a settlement"). Specifically, the court must determine whether it "will likely be able to" (1) certify the class for settlement purposes and (2) finally approve the settlement proposal under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B).

Where, as here, the parties will seek simultaneous class certification and settlement approval, courts should be "'even more scrupulous than usual' when they examine the fairness of the proposed settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995)); *see also Saucillo v. Peck*, 25 F.4th 1118, 1133 (9th Cir. 2022) (requiring a "more searching legal standard" for settlements reached before class certification). Such heightened scrutiny is "'to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Saucillo*, 25 F.4th at 1131 (quoting *Roes, 1-2 v. SFBSC Mgmt. LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019)); *see also In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). ("When a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members.").

### B. The Proposed Injunctive Relief Amounts to Superficial Practice Changes That Will Not Meaningfully Benefit Class Members or Address Harm

The Third Amended Settlement makes only superficial changes to the status quo, while continuing to categorically delegate initial price setting of *buyer* brokerage services to *sellers*—a feature of the market allegedly arrived at, not through competition on the merits, but through collusion among competitors. Under the proposed injunctive relief, sellers must still list upfront an amount of compensation, perpetuating the same steering that forces sellers to offer "customary" amounts. Even if a seller could theoretically now offer "zero cents," it is likely that very few will do so out of fear that buyer brokers will steer their clients elsewhere. With the rule continuing to stymie price competition among buyers' agents, sellers (and, indirectly, buyers) will continue to pay inflated commissions.

Instead of tackling steering, the rules require sellers' listing agents to provide disclosures around the voluntariness and negotiability of commissions and obtain their clients' permission before offering compensation to buyer brokers in a listing. Dkt. 345 at 10. The disclosures essentially track the current rule.[1] And the fundamental problem with the current rule is not an absence of information, but rather that it pressures sellers into making offers. Additional process around offers of compensation neither diminishes the threat of steering nor addresses MLS PIN's role in perpetuating this system.[2]

In sum, the proposed injunctive relief will simply maintain the status quo, allowing MLS PIN and its participants to continue to insulate brokerage fees from competition and restrain buyers' and sellers' ability to obtain competitive rates via individualized negotiations with their brokers. The injunctive relief therefore will likely not result in class members benefitting from competition among buyer-brokers on price or services.

### C. Plaintiffs Have Not Shown that the Monetary Relief Provides Adequate Relief for the Proposed Class

Plaintiffs have not provided basic information necessary to assess the adequacy of the monetary relief in the current proposed settlement. The current proposed settlement expands the

---

[1] *See* Dkt. 38 at 13, 14 ("The PIN rules do not prohibit buyers, sellers or brokers from negotiating buyer commissions downward."); *id.* at 14 ("[I]f the Listing Broker wants to offer a lesser commission to Buyer Broker A, he can do so if such decision is not the result of cooperative activity between the Listing Broker and Brokers B, C, D, etc.").

[2] Other industry rules may interact with the buyer-broker commission rule. For example, many MLSs have a "clear cooperation" policy, which requires MLS participants to post listings (which could include offers of compensation) to the MLS within 24 hours of publicly marketing properties. Of note, industry participants have made public statements about the Division's purported position on clear cooperation policies that are misleading and out of context. The Division has not taken a position that such policies *standing alone* (i.e., without mandated MLS publication of offers of compensation or exceptions benefitting primarily large brokerages) are anticompetitive.

class from only "residential real estate" to include "[a]ny real or personal property (including mobile homes)." Instead of indicating how this will affect the size of the class, Plaintiffs cryptically say that the class definition expansion "would only increase the monetary value of the covered listings by approximately 2%." Dkt. 345 at 18. But that figure cannot substitute for an estimate of the class size, especially where, as here, the types of property added to the class definition (e.g., commercial properties, land, and mobile homes) may be worth less on average than the properties included already (residential real estate). When the United States inquired about the new class's size, Plaintiffs' counsel declined to provide additional information.

Exacerbating this deficiency, Plaintiffs have not submitted a distribution plan explaining how Plaintiffs intend to distribute the $3.95 million (after deducting settlement administrator and up to a third in attorneys' fees and expenses) to class members. Absent a distribution plan, it is unclear how Plaintiffs can "bear the burden of developing a record demonstrating that the settlement distribution is fair, reasonable and adequate." *Ponzio v. Pinon*, 87 F.4th 487, 495 (11th Cir. 2023) (citation omitted).

Without information about the class size, the distribution plan, or an approximation of the expected monetary benefit each class member stands to receive, the Court has no way to assess the substantiality of the monetary relief. Thus, the monetary compensation does not provide a basis to conclude that the proposed settlement is fair, reasonable, and adequate.[3]

---

[3] Nor do the Settling Parties make any attempt to meet their burden to show that this new class definition meets the requirements of Rule 23(a) by demonstrating that the claims of residential real estate sellers serving as putative class representatives are typical of the claims of the newly added commercial, land, or personal property sellers. *See In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015); *see, e.g.*, *Martinez v. National EWP, Inc.*, No. 23-cv-837-RSH-LR, 2024 WL 5395870, at *3 (S.D. Cal. June 18, 2024) (denying preliminary approval where plaintiffs "fail[ed] to address typicality").

## IV. CONCLUSION

Like the previous proposed settlement, the latest proposed settlement is not "fair, reasonable, and adequate," and therefore should not be approved.

Dated: March 17, 2025                                   Respectfully submitted,

ABIGAIL A. SLATER                          KATHERINE E. CLEMONS
*Assistant Attorney General*               HANNAH BENJAMIN
                                           CURTIS STRONG
RYAN J. DANKS                              FREDERICK S. YOUNG
*Director of Civil Enforcement*            *Trial Attorneys*

DAVID G.B. LAWRENCE
*Policy Director*

GEORGE C. NIERLICH
*Deputy Director of Civil Enforcement*

MARKUS BRAZILL
*Counsel to the Assistant Attorney General*

YVETTE TARLOV
*Chief, Media, Entertainment, and Communications Section*

JARED A. HUGHES
*Assistant Chief, Media, Entertainment, and Communications Section*

                                           /s/ *Katherine E. Clemons*
                                           KATHERINE E. CLEMONS (D.C. Bar No. 1014137)

                                           U.S. Department of Justice
                                           Antitrust Division
                                           450 Fifth Street, N.W.
                                           Washington, DC  20530
                                           Telephone: (202) 598-2372
                                           Email: Katherine.Clemons@usdoj.gov

                                           *Counsel for the United States of America*

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants.

Dated: March 17, 2025                                            /s/ *Katherine E. Clemons*
                                                                KATHERINE E. CLEMONS