# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER NOSALEK, RANDY HIRSCHORN and TRACEY HIRSCHORN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>MLS PROPERTY INFORMATION NETWORK, INC., *et al.*,<br><br>Defendants. | No. 1:20-cv-12244-PBS<br><br>CLASS ACTION<br><br>March 25, 2025 |

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO**
**THE DEPARTMENT OF JUSTICE'S  SUPPLEMENTAL STATEMENT OF INTEREST**

Plaintiffs respectfully submit this response to the Department of Justice's ("Department") Supplemental Statement of Interest [ECF No. 358] ("Supp. Statement").

## I. The Proposed Injunctive Relief is Meaningful

After seventeen months, the Department's Supp. Statement still does not specify to Plaintiffs or the Court what Settlement terms the Department would find acceptable.[1] The Department wrongly claims that the Settlement maintains the "status quo" (Supp. Statement at 7) without addressing Plaintiffs' and MLS PIN's previous filings about how the Settlement changes the landscape in MLS PIN's service area. *See* [ECF No. 345] at 8-15; [ECF No. 346] at 3-6. The Department's objection is especially peculiar given that the Department did not similarly object to the NAR settlement before Judge Bough. *See* [ECF No. 345-4] (Department Statement of Interest in *Burnett*). In any event, the Department is wrong. Since MLS PIN implemented the Settlement term allowing sellers to offer no cooperative compensation in July 2024, approximately three-quarters of sellers have indeed chosen *not* to. Klein Supp. Decl. at ¶ 3.

The Department incorrectly focuses on the fact that the Settlement allows offers of compensation to continue to be posted on MLS PIN's listing platform when the seller so desires. *See generally* Supp. Statement at 6-7. But disallowing offers of compensation from MLSs, as the NAR settlement does, is illusory: for example, the *exact same* information can be posted on the *exact same* brokers' own websites. *See* [ECF No. 345] at 11-13. The MLS PIN settlement accepts this fact by having only sellers choosing the offer of compensation, if any, including

---

[1] As set forth in Plaintiffs' prior filings, Plaintiffs reached out to the Department repeatedly over the last seventeen months to try to get the Department to explain what settlement terms it would not find objectionable. *See* [ECF No. 345] at 2-8. Following the status conference with the Court on January 27, 2025, Plaintiffs again reached out and participated in two videoconferences. Supplemental Declaration of Seth R. Klein ("Supp. Klein Decl.") at ¶ 4. The Department declined to specify how Plaintiffs could address its concerns. *Id.* The Department did, however, pose several questions, which Plaintiffs responded to in writing. *Id.*

offering zero compensation to buyer-brokers. The Department does not dispute or address this fact. Rather, the Department simply ignores it.

In that regard, there are limits on what a private class action can properly accomplish under the auspices of Rule 23. The Department continues to argue, in essence, that the underlying structure of the residential real estate market needs to be rebuilt from the ground up to altogether ban the payment of cooperative compensation from sellers to buyer-brokers. *See* Supp. Statement at 6-7. Plaintiffs take no position on whether, as a matter of public policy, cooperative compensation should be completely banned. But the present litigation is a private class action on behalf of a class of *sellers* in the MLS PIN service area. In a competitive residential real estate market, it may be in seller's best interests to offer cooperative compensation to generate interest in their property. Accordingly, the Department's sweeping change must be accomplished through legislation, public rulemaking, or a Department enforcement action, rather than in the context of a private Rule 23 class action on behalf of a seller class. Similarly, the Department complains that the settlement does not address the issue of "steering" (Supp. Statement at 6-7). If steering were a concern, it is unlikely that, as discussed above, 75% of sellers would offer no compensation since July 2024. In any event, "steering" raises individualized class certification issues. For example, to the extent that individual *buyer* brokers are choosing to act contrary to their clients' interests by steering them away from three-quarters of listed properties.

If the Department believes that "steering" in the residential real estate market is not addressed by the NAR settlement or MLS PIN Settlement, it has the authority to regulate or enforce existing law after related private lawsuits have been filed. *See, e.g., U.S. v. Agri Stats, Inc.*, No. 23-cv-03009-JRT-JFD, 2024 WL 2728450 (D. Minn. May 28, 2024) (denying motion to dismiss United States action). Indeed, the Third Amended Settlement Agreement ("TASA")

*explicitly* allows the Department to bring an enforcement action *even if* this Court grants final approval to the Settlement. *See* TASA [ECF No. 345-2] at ¶ 9(b); *see generally* [ECF No. 345] at 4-5, 15. MLS PIN acknowledges that the Department retains this right. *See* [ECF No. 333] at 23. Although the Department claims a "strong interest in protecting American home sellers and buyers" and touts that it "has long fought to inject competition into residential real-estate markets" (Supp. Statement at 2), it has yet to file its own action seventeen months after becoming involved in this Settlement. If the Department believes that the residential real estate market should be restructured on behalf of buyers as well as sellers, it remains free to file such a case. The Department's inaction on buyer-broker conduct is no reason to derail a settlement on behalf of sellers that does not, and likely could not, encompass such conduct.

## II.    The Monetary Relief is Adequate

The Department's discussion concerning the monetary relief under the Settlement (Supp. Statement at 7-8) is a "red herring." In June 2023, Plaintiffs secured a $3 million Settlement Fund, based in part upon MLS PIN's ability to pay as reflected in MLS PIN's most recent financial statements. Supp. Klein Decl. at ¶ 5. When the NAR settlement was announced in March 2024, MLSs across the country, including MLS PIN, had the option of joining that nationwide agreement. MLS PIN opted not to do so, which is its right. Plaintiffs accepted MLS PIN's decision and moved forward with the MLS PIN Settlement, which they believe to be at least as beneficial to Class Members as the NAR settlement (*see* [ECF No 345] at 8-17).

However, Plaintiffs' counsel conducted a detailed analysis of the NAR settlement and calculated that the cost of MLS PIN's "buy-in" to the that settlement, had MLS PIN opted to do so, would have been $3.95 million. Supp. Klein Decl. at ¶ 5. Accordingly, Plaintiffs insisted that MLS PIN increase the Settlement Fund in this case to the same $3.95 million. *Id*. After

3

protracted negotiations and a review of MLS PIN's more recent financial position, MLS PIN agreed. Accordingly, the Settlement Fund here is *exactly the same* as MLS PIN's contribution to the NAR settlement would have been. Notably, the Department raised no concern before Judge Bough about the size of the NAR settlement fund. *See* [ECF No. 345-4].

The Department's concern about the expanded scope of released parties in the TASA (Supp. Statement at 5) is baseless. In return for MLS PIN increasing the size of the Settlement Fund to match the NAR settlement buy-in, Plaintiffs agreed to expand the scope of the release to match the scope of the NAR settlement release. *Compare* TASA [ECF No. 345-2] at ¶ 2(bb) (defining released parties as including MLS PIN's "participants and subscribers") with *Burnett* NAR settlement agreement [ECF No. 345-3] at ¶ 18(b) (defining released parties as including individual Realtors (*i.e.,* the participants and subscribers in NAR MLSs)). The Department expressed no concern before Judge Bough about the scope of the released parties. *See* [ECF No. 345-4]. Moreover, any Class Member who wishes to sue their individual broker may opt out.

The Department's concern about the expansion of the Class to include sellers of all properties listed on MLS PIN (rather than just residential properties) is equally unfounded. As Plaintiffs previously noted ([ECF No. 345] at 17-18), removing the "residential" limitation only increases the monetary value of the covered listing by 2%. The Department complains that Plaintiffs had not disclosed how that change impacts the number of class members (as opposed to the value of their properties). Supp. Statement at 8. Plaintiffs believe the monetary value of covered properties is the more salient metric given the proposed Plan of Allocation (as discussed below). Nonetheless, Plaintiffs have also performed the analysis suggested by the Department, and the number of covered properties likewise only increases by 2%. Supp. Klein Decl. at ¶ 6. Plaintiffs believe this modest increase in Class size is more than offset by the 33% increase in the

4

Settlement Fund from $3 million to $3.95 million.²

The Department's concern that "Plaintiffs have not submitted a distribution plan" (Supp. Statement at 8) has been addressed by Plaintiffs' recent filing of the proposed Notice Plan. As set forth in the proposed Notice and claim documents, the fund will be distributed "on a *pro rata* basis based on the sale price" of the sold property (which information is in MLS PIN's possession). *See, e.g.,* [ECF No. 359-1] at pp. 32, 46 of 48  Insofar as cooperative compensation is a percentage of the property's sales price, Class Members will accordingly receive a distribution directly proportional to the harm they suffered. Notably, the NAR settlement received *final* approval without a distribution plan, with no objection from the Department.

Finally, the Department's concern that Plaintiffs plan to seek an attorneys' fee award of up to 33.3% of the Settlement Fund (Supp. Statement at 5) is premature and does not provide a basis to deny preliminary approval here. Regardless of Plaintiffs' ultimate attorneys' fee request, the Court obviously determines the actual amount of any award. The size of Plaintiffs' ultimate request—which will not be determined until Plaintiffs actually submit their fee request in due course—simply does not bear on whether the Settlement as a whole merits preliminary approval.

### III.    Conclusion

For the foregoing reasons, Plaintiffs submit that the Department's concerns in its Supplemental Statement are unwarranted and respectfully request that the Court grant their motion for preliminary approval of the MLS PIN Settlement.

---

² The Department also argues in a footnote that Plaintiffs have not shown "that the claims of residential real estate sellers serving as putative class representatives are typical of the claims of" sellers of non-residential properties. Supp. Statement at 8 n. 3. This argument is without merit. There is no reason to believe that the interests of residential and non-residential sellers do not fully overlap, when all sellers are listing on the same MLS subject to the exact same rules. Indeed, the Department makes no effort to argue how the various sellers' interests might differ.

Dated: March 25, 2025            Respectfully submitted,

BY:    */s/ Seth R. Klein* _____
Robert A. Izard (pro hac vice)
Craig A. Raabe (pro hac vice)
Seth R. Klein (pro hac vice)
Christopher M. Barrett (pro hac vice)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
(860) 493-6290 fax
rizard@ikrlaw.com
craabe@ikrlaw.com
sklein@ikrlaw.com
cbarrett@ikrlaw.com

Christopher L. Lebsock (pro hac vice)
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
(415) 633-1908
clebsock@hausfeld.com

James Gotz (MA Bar #567157)
HAUSFELD LLP
One Marina Park Drive
Suite 1410
Boston, MA 02210
(617) 207-0600
jgotz@hausfeld.com

Jose Roman Lavergne (pro hac vice)
HAUSFELD LLP
888 16th Street, N.W.
Suite 300
Washington, D.C., 20006
(202) 540-7200
jlavergne@hausfeld.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

  I, Seth R. Klein, hereby certify that on this 25th day of March, 2025, the foregoing was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access these documents though the court's CM/ECF system.


                 */s/  Seth R. Klein*
                 Seth R. Klein

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER NOSALEK, RANDY HIRSCHORN and TRACEY HIRSCHORN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>MLS PROPERTY INFORMATION NETWORK, INC., *et al.*,<br><br>Defendants. | No. 1:20-cv-12244-PBS<br><br>CLASS ACTION<br><br>March 25, 2025 |

**SUPPLEMENTAL DECLARATION OF SETH R. KLEIN**

I, Seth R. Klein, hereby declare as follows:

1. I am an attorney with the law firm of Izard Kindall & Raabe LLP ("IKR") and am competent to declare the matters stated herein.

2. My firm, along with co-counsel at Hausfeld LLP, represents Plaintiffs in this putative class action lawsuit against MLS Property Information Network ("MLS PIN") and various other Defendants as set forth in the case caption. I submit this declaration in support of Plaintiffs' Supplemental Memorandum of Law in Support of Plaintiffs' Supplemental Response to the Department of Justice's Supplemental Statement of Interest.

3. MLS PIN has informed Plaintiffs' counsel that since MLS PIN implemented the Settlement term allowing sellers to offer zero cooperative compensation, approximately three-quarters of sellers have indeed chosen to *not* offer any cooperative compensation.

4.	Following the status conference with the Court on January 27, 2025, Plaintiffs again reached out to the Department, and participated in two videoconferences. However, the Department never specified how Plaintiffs could address all of its concerns. The Department did, however, pose several questions, which Plaintiffs responded to in writing.

5.	In June 2023, Plaintiffs secured a $3 million Settlement Fund, based in part upon MLS PIN's ability to pay as reflected in MLS PIN's most recent financial statements. Following the announcement of the NAR settlement in March 2024, Plaintiffs' counsel conducted a detailed analysis of the NAR settlement and calculated that the cost of MLS PIN's "buy-in" to the that settlement, had MLS PIN opted to do so, would have been $3.95 million. Accordingly, Plaintiffs insisted that MLS PIN increase the Settlement Fund in this case to the same $3.95 million.

6.	Based upon data provide by MLS PIN, the removal of the "residential" limitation from the Class definition only increases the number of covered properties by 2%.

DATED:	March 25, 2025

_/s/ Seth R. Klein_____<br>
Seth R. Klein

**CERTIFICATE OF SERVICE**

      I, Seth R. Klein, hereby certify that on this 25th day of March, 2025, the foregoing was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access these documents though the court's CM/ECF system.

                                                */s/ Seth R. Klein*
                                                Seth R. Klein