

Dmitry Shkipin

Geodoma.com

325 Sharon Park Dr. #416

Menlo Park, California 94025

(650) 281-6962

April 4, 2025

Attn: Judge Patti B. Saris

Courtroom 19, 7th floor

John Joseph Moakley U.S. Courthouse

1 Courthouse Way, Suite 2300

Boston, Massachusetts 02210

**Re:  No. 1:20-cv-12244-PBS Amicus Curiae Re: MLS PIN's settlement terms and IPCs limits.**

The Honorable Patti B. Saris,

With respect, I'd like a few minutes of your time, to help clarify the intent behind the settlement between home sellers and MLS PIN, et al.

On April 1, 2025, Brooklee Han from HousingWire had published an article titled: Judge to MLS PIN: 'Trying to understand why this matters' (Source: https://www.housingwire.com/articles/judge-to-mls-pin-trying-to-understand-why-this-matters/ )

> *"...Conversation then moved to MLS PIN's insistence on maintaining sellers' ability to make offers of compensation to buyers' brokers through the MLS if they so choose,*



*unlike MLSs affiliated with Realtor associations, which have removed offers of compensation from the MLS due to provisions in the National Association of Realtors' (NAR) settlement.*

*"I'm just trying to understand why this matters," Judge Saris said. "Why do you care so much? ..."*

Your Honor, this issue matters because of two elemental and very important things: (1) homebuyers (realistically) cannot pay $10,000s in fees for services of their buyer agent out-of-pocket, and (2) buyer brokers cannot simply bake in costs of buyer-paid commissions into the federally-funded mortgage loans.

Federally-funded mortgage loans are insured and re-purchased by Fannie Mae and Freddie Mac (the Enterprises, or GSEs) subject to certain Qualified Mortgage (QM) terms. These terms are all public record, posted by Federal Housing Finance Agency (FHFA), and other agencies involved. One of the basics of these terms is such that federally-funded mortgage loans must be used to finance the property itself. Certain allowances are built-into the system to allow certain concessions and incentives to be included into our mortgages as long as these GSE's guidelines are met, however, these incentives are very limited and very specific (otherwise, people can bake in all kinds of things into the mortgage loan.)

- Buyer Agent Commissions, **paid by buyers to their buyer broker**, cannot be baked into the mortgage without raising the IPC limits for the transaction as described in Selling Guide B3-4.1-03, Types of Interested Party Contributions (IPCs).

- Buyer Agent Commissions, **paid by sellers to their listing broker**, who then share a portion of these fees (in 40 US states jurisdictions where buyer brokers are able to offer buyer rebates) requires home seller agree to pay all commissions to their seller's real



estate broker who, in turn, makes an offer to pay the buyer's real estate broker commission pursuant to cooperative brokerage arrangement made in a real estate brokerage capacity, subject to the Real Estate Settlement Procedures Act (RESPA) 12 C.F.R. 1024.14(g)(1)(v) and 12 U.S.C. 2607(c)(3) exemption. **These seller-paid commissions are not required to be counted towards the IPC limits for the transaction**

See https://geodoma.com/ipcs-limits

The basic reason why, is that any seller-paid costs **are not required to be counted towards the IPC limits for the transaction.** The GSEs hold it that any costs that sellers typically pay for, are not really being financed with the mortgage – they are financed with home sellers' loss of equity. The biggest deal of all – to be able to offset certain costs against the greater principal of the loan vs. having to get one's client to get their checkbook and write a check for that same amount. Even bigger deal, is to charge those same fees, outside of IPCs limits entirely.

In effect, ONLY by sharing seller-paid commissions, can brokers avoid buy-side fees from being counted toward IPCs limits. As soon as sellers no longer pay for commissions, these costs are no longer seller-paid closing costs.

As you well aware, the National Association of REALTORS (NAR) has become a massive liability magnet over the last several years. Specifically, the NAR imposed a NAR Participation Rule that required listing brokers to offer compensation to buyer brokers when listing a property (disallowing listing brokers to offer $0 in compensation.) This strict requirement was found to be a form of illegal price-fixing. NAR could not find a bond for an appeal, and, subsequently, settled with home sellers what was to become a $600 billion nationwide liability for $418 million.



(This $600 billion nationwide liability is a real number. If one it to extrapolate Sitzer/Burnett verdict $1.785 billion x 50 states = +/-200 billion x trebled = $600 billion. If one is to divide these potential damages against the $418 million settlement sum, an affected home seller who overpaid by $20,000 in commissions is going to get $14 check. Granted, slightly more, because not all people will claim the money, but the numbers are very far apart, simply because NAR does not have the $600 billion – these price-fixed commissions were all paid to brokers in fees, and NAR does not partake in RESPA-covered brokerage fees.)

In a parallel copycat lawsuit, the federal court also held that whenever MLS rules do not require the listing broker to share compensation with the buyer broker, the optional compensation rules could not form the basis of the conspiracy (In Grace v. Bay Area Real Estate Information Services, Inc., et al., 23-cv-06352, U.S. District Court, Northern District of California  judge, Haywood S. Gilliam, Jr., held that BAREIS' rules "simply do not on their face require the results Plaintiff alleges they do" when dismissing the case against BAREIS-affiliated MLS Participants.)

MLS PIN knows this, and they want to avoid this fallout *(I am assuming here, that MLS PIN likely did violate the law, just like NAR did, by making the firm requirement to post BAC with each listing. However, I am not suggesting anything about what the settlement terms should include, or not include, by the way, starting with the fact that I don't know any details better than the Court. All I am trying to convey is that preventing MLS PIN from being able to transmit BAC offers is, indeed, a massive retribution. Should this be a required condition, included as a condition to settle? I don't know.)*

This IPCs issue is also not so clearly evident to most people, because the NAR is really trying to hide it. I even informed the NAR to stop lying about this IPCs issue, because they are actually placing their MLS Participants at another massive litigation risk with this very big lie. Here is how:



In April 2024, NAR formally settled nationwide antitrust lawsuit with home sellers. As part of the settlement, NAR-affiliated MLS Participants were required to implement certain practice changes that "eliminate and prohibit any requirement by the National Association of REALTORS®, REALTOR® MLSs, or Member Boards that listing brokers or sellers must make offers of compensation to buyer brokers or other buyer representatives" that further **"require that all REALTOR® MLS Participants working with a buyer enter into a written agreement"** and **"specify and conspicuously disclose the amount or rate of compensation for buyer representation services provider to the homebuyers."** This NAR Settlement Agreement is set to expire seven years from August 17, 2024, when it first went into effect.

Starting on August 17, 2024, home sellers are no longer paying commissions to both their own agent and buyer's agent, and a seller's agent can no longer specify on NAR-affiliated MLS how much the buyer's agent will be paid. Instead, the NAR-affiliated MLS Participants' buy-side commission to the buyer's agent is negotiated separately between the buyer and buyer's agent.

The U.S. Department of Housing and Urban Development (HUD) sets the guidelines and regulations for FHA loans. This includes how seller credits can be used towards closing costs. HUD's guidelines state that "interested parties" to the transaction may contribute up to 3% to 6% of the sales price, and cannot exceed actual costs. Any contributions that are over 3% to 6% are considered "inducement to purchase" and are only allowed in dollar-for-dollar price reductions (meaning, they have to be deducted from the loan principal.)

Typical fees and/or closing costs paid by a home seller to their listing agent in accordance with this custom (known as common and customary fees or costs) are not subject to IPCs limits (IPCs refers to all payments by an interested party, or combination of parties, towards the homebuyer's origination fees, closing costs, and discount points.)



Historically, home sellers paid the entire commission to their listing agent who then split that fee with the buyer's agent upon making the sale pursuant to cooperative brokerage arrangement made in a real estate brokerage capacity, subject to the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. 2607(c)(3) exemption. As seller-paid costs, real estate commissions were historically treated as obligations against the property by the home seller - any obligations of the home seller paid against their property.

In response to the NAR Settlement Agreement with home sellers, Fannie Mae stated in a non-binding way that "[i]f a seller or seller's real estate agent continues to pay the buyer's real estate agent commission in accordance with local common and customary practices, these amounts are not required to be counted towards the IPC limits for the transaction." (Source: https://singlefamily.fanniemae.com/media/38706/display )

In the United States, buy-side commissions are not financeable with a mortgage, as a matter of law. When home sellers paid the entire commission to their listing agent, they were, in effect, financing the buy-side commissions through their listing broker. This mechanism allowed buyers to receive the services of a buyer broker without invoking IPCs caps.

However, for the next seven years (as long as NAR Settlement Agreement is in force) when working with NAR-affiliated MLS Participants, homebuyers are fully responsible for paying their own buyer brokerage - these fees are no longer seller-paid costs. While homebuyers can certainly request concessions to pay for buyer broker NAR-affiliated MLS Participants' fees (home sellers can contribute these credits towards the buyer's FHA closing costs, but they are not required to provide them) the settlement-mandated shift of the payer of buy-side commissions from the home seller to the homebuyer, requires the one to count any such request toward IPCs limits. By including these buyer-paid costs into federally-funded loans above permitted IPCs limits, NAR-affiliated MLS Participants are exposing themselves to a massive legal liability before the United States government.



As your Honor is well aware, The False Claim Act (FCA) is the government's primary litigation tool for recovering losses resulting from fraud. The FCA imposes civil penalties and treble damages on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" 31 U.S.C. 3729 "that caused the government to pay out money or forfeit moneys due (i.e. that involved a claim)." U.S. ex rel. Longhi v. United States, 575 F.3d 458, 467 (5th Cir. 2009). Federal courts have repeatedly held that the "use of fraudulent information to induce the Government to provide a loan guarantee constitutes a false claim under the FCA" U.S. v. Eghbal, 548 F.3d 1281, 1283 (9th Cir. 2008). It is illegal to induce the government to provide FHA insurance for mortgages that include home seller concessions above IPCs limits.

NAR continues to hide this massive liability simply because the aggregate real estate brokerage fees amount to over $100 billion every year. When working with NAR-affiliated MLS Participants, under the terms of the NAR Settlement Agreement, buy-side fees must be counted toward IPCs limits for this liability to be extinguished. NAR refuses to acknowledge this, because it is that much easier to lie about a problem, than to tell every Realtor in the United States that their fees are capped as IPCs for the next seven years.

Making a lawful BAC offers is highly beneficial to consumers, buyers and sellers, if these offers are optional and the buyer is able to negotiate a rebate. Alas, we have massive antirust problem that united 1.5 million brokers into a price-fixing cartel, under flawed Rules of NAR. The NAR broke the antitrust law (a jury said so, and NAR did not appeal the ruling.) However, the NAR did not at all suffer the ultimate punishment of this conduct. Instead, NAR chose to make false claims that the NAR-affiliated MLS Participants fees are NOT capped as IPCs even though home sellers are no longer payers of buy-side fees, under the terms of NAR's settlement agreement.



In the real world (governed by law, reason, and transparency) NAR-affiliated MLS Participants buy-side fees are capped as IPCs (until August 17, 2031 when the agreement with home sellers expires) simply because sellers are no longer responsible for buyer-paid brokerage costs.

I also can show you this IPCs problem, from a typical new home sales ad (in this case, a home seller is a massive residential builder that also happens to own a mortgage company.)

Toll Brothers 2/1 Buydown Program (Source: https://www.tollbrothers.com/3.99 )

EXAMPLE: 2/1 BUYDOWN PROGRAM SAVINGS
Loan Type: 30-Year Fixed
Note Rate: 5.99% (6.04% APR)
Loan Amount: $700,000
TOTAL SAVINGS = $15,520.32 (First Two Years)

Temporary interest rate buydowns are allowed on fixed-rate mortgages (and certain ARM plans for principal residences or second homes) provided that (1) the rate reduction does not exceed 3%, and (2) the rate increase will not exceed 1% per year. This is a lawful incentive by a home seller, to get more homebuyers interested in their home.

When the source of the buydown funds is an interested party to the property sale or purchase transaction, Fannie Mae's interested-party contribution limits apply. See B3-4.1-02, Interested Party Contributions (IPCs). (Source: https://selling-guide.fanniemae.com/sel/b3-4.1-02/interested-party-contributions-ipcs )

In this ad, Toll Brothers correctly values this incentive at $15,520.32 (this is genuine savings to homebuyer, because home seller, basically, agrees to pay this money that, otherwise, would be



$0, without the incentive.) Eventually, Toll Brothers makes up this money by raising the sales price of the home, one way or another, which is why these incentives are strictly capped.

In this ad, the principal loan amount is $700,000, the maximum IPC is 3% or $21,000 (IPCs that exceed these limits are considered sales concessions) that can be contributed subject to the terms of federally-funded loan, backed by Fannie Mae and/or Freddie Mac.

Let's say, sometime before August 17, 2031, a homebuyer comes in and, smartly, takes advantage of this offer... and they also hired NAR-affiliated MLS Participant to help with the sale (who has a contract to represent them during the home purchase for 2.5% buyer broker fee, in this case 2.5% of $700,000 = $17,500.00)

Provided that, NAR-affiliated MLS participants buy-side fees are capped as IPCs, between August 17, 2024 and August 17, 2031:

Total IPCs calculations are:

$17,500.00 NAR-affiliated MLS Participant's buyer broker fee.
+
$15,520.32 Toll Brothers 2/1 Buydown
=
$33,020.32 total IPCs

But... $21,000 is the MAXIMUM.

By baking in buy-side brokerage fees above IPCs limits, NAR-affiliated MLS Participant, defrauds the US government by $12,020.32, simply because IPCs caps are exceeded.



To multiply $12,020.32 x 6 million homes sold annually, over 7 years = $504,853,440,000 liability. Granted, not all transactions will have this IPCs caps excess problem, but a large number of home sales absolutely will, because real estate commissions is the single largest expense item that there is and IPCs limits are often taken for various fees and incentives. Even if just 10% of all home sales are exposed to this problem, the 10% of $504,853,440,000 is, still, $50 billion in damages to the government that are baked into the mortgage above IPCs limits.

The NAR controls 95% of the listings market in the United States. MLS PIN does not. However, if a similar settlement agreement requires MLS PIN to enter into a similar agreement as NAR, the MLS PIN Participants' fees will also be capped as IPCs.

It does matter how commissions are financed into the mortgage. It also matters that brokers should be able to lawfully share commissions, using lawful MLSs. Conduct of sharing commissions, by itself, is not a violation of Sherman Antitrust Act. Price-fixing the terms of commissions sharing is a violation.

My transparent and highly accessible consumer-facing MLS, Geodoma (be it a one-person startup) allows optional BAC to be offered in 40 states without rebate bans. I consider this ability (to transmit BAC offers lawfully) to be the ONLY thing that give me even a remote chance to take down the NAR (because it is something that the NAR lost as retribution.)

In some ways, I don't know what the remedy should be in this dispute, but I do know that this Court should not be lied to, or deceived when making such integral decisions about how people buy and sell homes. We need a lot more transparency, and a lot less lies. These people, who broke the law, refuse to acknowledge that it is their flawed rules that caused all these problems. If the United States government desires better competition, better rules, better networks, the answer is to address individual illegal conduct, as opposed to destroying a lawful function.



There is a movement of thought the real estate now: to kill "commissions sharing" as the primary solution. No. The ultimate evil here is price-fixing, disguised as lawful "commissions sharing."

If brokers stop sharing commissions (either willingly, or as a result of a legal action) any request to pay for buyer agent fees, is a capped contribution from a seller to pay for something a buyer has a legal obligation to pay. When a homebuyer takes out a mortgage loan to pay for a home, their buyer broker must either cooperate with the seller's broker to share seller-paid fees, or they must request a concession under IPCs caps. This third option that the NAR operates under, until August 17, 2031, is a $500 billion lie.

According to NAR's Settlement FAQs:

> 112. Is compensation paid by a seller or listing broker to a buyer broker considered an IPC?
>
> No. Cooperative compensation is considered a fee that is "customarily" or "traditionally" paid by the seller. The FHA, Fannie Mae, and Freddie Mac exclude these types of fees from the IPC calculation.
>
> 113. Does the NAR settlement change that? Is compensation paid by a seller or listing broker to a buyer broker now an IPC?
>
> The settlement would preserve the choices consumers have regarding real estate services and compensation. After the new rule goes into effect, on August 17, 2024, listing brokers and sellers can continue to offer compensation for buyer broker services, but communicating such offers is prohibited on an [NAR-affiliated] MLS.



**Based on our interpretation of current guidance from Fannie Mae, Freddie Mac, and the FHA, we do not expect compensation paid by a seller or listing broker to a buyer broker to become an IPC.**

(Source: https://www.nar.realtor/the-facts/nar-settlement-faqs )

That is not what Fannie Mae, Freddie Mac, and the FHA said at all.

The exact statement from Fannie Mae reads only that: **"[i]f a seller or seller's real estate agent continues to pay the buyer's real estate agent commission in accordance with local common and customary practices, these amounts are not required to be counted towards the IPC limits for the transaction."**

Thank you for your time,

Dmitry Shkipin

Development and Operations at Geodoma and HomeOpenly