Bill Wendel
Real Estate Cafe
(Presently operating virtually)
Cambridge, MA 02138
617-661-4046
realestatecafe@gmail.com
http://bit.ly/SeeBWLinkedIn

April 22, 2025

Attn: Judge Patti B. Saris
Courtroom 19, 7th Floor
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210

**Re: Case 1:20-cv-12244- PBS Amicus re: Nosalek vs MLSpin Settlement Terms**

The Honorable Patti B. Saris,

As a long-time consumer advocate who served on President Bill Clinton's National Homeownership Partnership and founded the world's first walk-in, real estate cyber cafe in 1995, would like to offer my perspective on the proposed settlement, more specifically, the lack of a monitoring and enforcement mechanisms and why cobroker compensation should be banned both on MLSpin and off-MLS as proposed by the U.S. Dept of Justice (DOJ) in their initial and Supplemental Statements of Interest.

Will amplify your question, "why this matters," by asking additional questions:

*1. Are practice changes baked in for three years without any opportunity for organizational learning?*

After five years of compensation confusion in the housing market, understand that making one policy change is tempting but if the meme "Nothing's really changed" is true, as the #RECartel already wants homebuyers and sellers to believe, what opportunity is there for course correction if the MLSpin settlement does NOT translate #ClassActRE lawsuits into #ClassActSAVINGS?

See expose in the New York Times that has attracted over 1,100 comments underlining the importance of this question:

[Home Sellers and Buyers Accuse Realtors of Blocking Lower Fees](#) (3/15/25)

*2. Does locking in practice changes provide any opportunity to evaluate effectiveness under different housing market conditions and address anti-competitive practices to reach DOJ's twin goals: reduce transparency costs and lower sales prices?*

This question is particularly urgent now as economic uncertainty from Trump tariffs, slashes medical and research in the regional economy, and the $9 billion fight with Harvard threatens to put downward pressure on local prices. See Wall Street Journal article & breaking news

[Boston at Risk of 'Wealth Spiral' as Harvard Fight Ripples Through Economy](#) (4/20/25)

[Dow Headed for Worst April Since 1932 as Investors Send 'No Confidence' Signal](#) (4/21/25, 9pm)

As homes become more difficult to sell, will the number of sellers publishing cobroker fees via MLSpin rise - perhaps tripling to 3 out of 4 sellers or more to compete against other listings are doing the same?

*3. Finally, as Attorney Tanya Monesteir has argued on LinkedIn, there is no assurance that homebuyers who choose to self-represent can pocket savings for their self-resiliency. Will publishing a cobroker split in MLSpin force them to use a buyer agent rather than reducing the sales price or allow the listing broker double dip - collect both sides of the commissions?*

Publication of cobroker offers online via MLSpin may have fallen to one in four listings since practice changes since July 2024, but not aware of any evidence that cobroker offers off-MLS have also fallen. To my knowledge, there is no data showing compensation amounts has been reduced or whether anti-competitive practices still exist in some "product / price" market niches or geographic submarkets ([see potential monitoring proposed in Tweet](#)). To the contrary, Mike Delprete, a leading real estate consultant, found that the ["customary commission" has shown little or no variation since the NAR Settlement](#). Will giving sellers the option to publish cobroker

commissions through MLSpin empower homebuyers to save $10K per transaction or unleash a potential $100M per month in consumer savings across MA?

The answer to that $1 BILLION question is NO.

As a real estate consultant who has offered a menu of money-saving fees and rebate options to buyer clients for three decades, one might think Real Estate Cafe would like to see offers of compensation published in MLSpin but that's NOT the case. Our fiduciary duty as a buyer agents is to help buyer clients pay the lowest possible price. The question of how much to pay "a la carte" for our services, as recommended in an Economic Brief by the Richmond Fed, operates outside any "one-size-fits-all" compensation a seller may offer as a cobroker bribe. That term was coined by Attorney Doug Miller, see #CoBrokerBribes posts on Twitter).

BOTTOMLINE:

Encourage the court to BAN #CoBrokerBribes on and off-MLSpin to maximize homebuyer savings both on transaction costs and purchase prices as DOJ seeks in their Statement of Interest & Supplemental Statement of Interest.

In closing, thank you for the opportunity to share my perspective, one that has been informed by fellow real estate consumer advocates who've run this commission reform marathon for 30+ years. "Relay race" might a better metaphor than marathon, as the baton is now in your hands; and real estate innovators who are eager to deliver consumer savings are waiting for the handoff.

Bill Wendel
Consumer Advocate
Founder, Real Estate Cafe

---

Formatting footnote: For consistency, our Amicus uses #Hashtags that have been shared in dozens of social media posts on Twitter, Linkedin, blog posts over past two decades. For example, #RECartel = real estate cartel is a phrase first used in 1991 by Steve Brobeck, then Executive Director of the Consumer Federation of America. It was amplified by Ralph Nader and panelists in a two-day conference in Boston, less than a mile from the courthouse, entitled the Consumer Revolution in Real Estate (4/2-3/93).

To access hyperlinks on a digital copy of this document, visit https://bit.ly/4lD4QS1