## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

JENNIFER NOSALEK, RANDY HIRSCHORN
and TRACEY HIRSCHORN, individually and
on behalf of all others similarly situated,

                   Plaintiffs,

    vs.

MLS PROPERTY INFORMATION
NETWORK, INC., *et al*.,

                  Defendants.

No. 1:20-cv-12244-PBS

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF SETTLEMENT WITH DEFENDANT
<u>MLS PROPERTY INFORMATION NETWORK, INC.</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION .............................................................................................. 1

II.   BACKGROUND ................................................................................................ 2

    A.    Procedural Background ............................................................................ 2

    B.    The Settlement Negotiations and Settlement Terms ................................ 6

III.  ARGUMENT .................................................................................................... 10

    A.    The proposed settlement warrants final approval. ................................. 10

        a.    The Settlement is Procedurally Fair Under Rule 23(e)(2)(A)-(B) ............ 10

        b.    The Settlement is Substantively Fair Under Rule 23(e)(2)(C)-(D) .......... 12

IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ............. 18

    A.    The Settlement Class Meets the Rule 23(a) Requirements ................................... 19

        a.    Rule 23(a)(1) - Numerosity ....................................................................... 19

        b.    Rule 23(a)(2) - Commonality ..................................................................... 19

        c.    Rule 23(a)(3) - Typicality .......................................................................... 20

        d.    Rule 23(a)(4) - Adequacy .......................................................................... 21

    B.    The Settlement Class Meets the Rule 23(b) Requirements ................................... 22

        a.    Predominance ............................................................................................ 22

        b.    Superiority ................................................................................................. 23

        c.    Izard, Kindall & Raabe LLP and Hausfeld LLP Should be Appointed Settlement Class Counsel ........................................................................... 24

    C.    The Notice Plan Adequately Apprised Settlement Class Members of Their Rights ........................................................................................................ 25

V.    CONCLUSION ................................................................................................ 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
  271 F. App'x 41 (2d Cir. 2008) ...........................................................25

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...........................................................10, 18, 22, 23

*In re Asacol Antitrust Litig.*,
  No. 15-cv-12730, 2017 WL 11475275 (D. Mass. Dec. 7, 2017)...........16

*Berman v. Narragansett Racing Ass'n, Inc.*,
  414 F.2d 311 (1st Cir. 1969).........................................................22

*Bezdek v. Vibram USA*,
  79 F. Supp. 3d 324 (D. Mass. 2015) ...............................................26, 27

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)...............................................14

*Burnett v. National Association of Realtors*,
  No. 19-cv-00332, 2022 WL 1203100 (W.D. Mo. April 22, 2022)...................22, 23

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
  No. 85 Civ. 3048, 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ..................14

*Chhab v. Darden Rests., Inc.*,
  No. 11-cv-8345, 2016 WL 3004511 (S.D.N.Y. May 20, 2016) ...............23

*Cisneros v. EP Wrap-It Insulation, LLC*,
  No. 19-cv-500, 2021 WL 2953117 (D.N.M. July 14, 2021) ...................18

*In re Citric Acid Antitrust Litig.*,
  145 F. Supp. 2d 1152 (N.D. Cal. 2001) .............................................18

*Cohen v. J.P. Morgan Chase & Co.*,
  262 F.R.D. 153 (E.D.N.Y. 2009) ....................................................18

*Crane v. Sexy Hair Concepts, LLC*,
  No. 17-10300, 2019 WL 2137136 (D. Mass. May 14, 2019)...........27, 28

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
  177 F.R.D. 54 (D. Mass. 1997).......................................................11, 22

*Garcia-Rubiera v. Calderon*,
   570 F.3d 443 (1st Cir. 2009) ...........................................................................19

*Gorsey v. I.M. Simon & Co.*,
   121 F.R.D. 135 (D. Mass. 1988) ......................................................................19

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................................14, 17

*In re High-Tech Emp. Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) ............................................................20

*Jermyn v. Best Buy Stores, L.P.*,
   No. 08-cv-00214, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) ........................25

*Lipuma v. Am. Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) .............................................................14

*In re Lupron Mktg. and Sales Pracs. Litig.*,
   228 F.R.D. 75 (D. Mass. 2005) ........................................................................12

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..............................................................14

*In re Marsh & McLennan, Cos. Sec. Litig.*,
   No. 04 Civ. 8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .....................14

*Medoff v. CVS Caremark Corp.*,
   No. 09-554, 2016 WL 632238 (D.R.I. Feb. 17, 2016) ......................................10

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..............................................................25

*Moehrl v. Nat'l Ass'n of Realtors*,
   No. 19-cv-01610, 2023 WL 2683199 (N.D. Ill. Mar. 29, 2023) .......................23

*In re Namenda Direct Purchaser Antitrust Litig.*,
   462 F. Supp. 3d 307 (S.D.N.Y. 2020)........................................................15, 17

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) .....................................................................23

*Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*,
   No. 15-30024, 2020 WL 1495903 (D. Mass. Mar. 27, 2020) ...............10, 25, 26

*Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
   247 F.R.D. 253 (D. Mass. 2008)......................................................................19

iii

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*,
    602 F. Supp. 2d 277 (D. Mass. 2009) ...................................................................12

*Ouadani v. Dynamex Operations E., LLC*,
    405 F. Supp. 3d 149 (D. Mass. 2019) ...................................................................21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) .............................................................................10

*Perks v. Activehours, Inc.*,
    No. 19-cv-5543, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ...........................17

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    277 F.R.D. 52 (D. Mass. 2011) .............................................................................20

*In re Prograf Antitrust Litig.*,
    No. 11-md-02242, 2015 WL 13908415 (D. Mass. May 20, 2015) ........................16

*In re Ready-Mixed Concrete Antitrust Litig.*,
    261 F.R.D. 154 (S.D. Ind. 2009).............................................................................21

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005).......................................................................12, 16

*S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*,
    241 F.R.D. 85 (D. Mass. 2007)..............................................................................19

*In re Skechers Toning Shoe Prods. Liab. Litig.*,
    No. 11-md-2308, 2012 WL 3312668 (W.D. Ky. Aug. 13, 2012) ..........................12

*In re Solodyn Antitrust Litig.*,
    No. 14-md-2503, 2018 WL 7075881 (D. Mass. July 18, 2018)............................16

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) .................................................................................20

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011).....................................................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)................................................................................................22

*In re Vitamins Antitrust Litig.*,
    No. 99-cv-197, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) .................................18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................................19

*Walker v. Osterman Propane, LLC*,
    411 F. Supp. 3d 100 (D. Mass. 2019) ............................................................... 20, 21

*Wellness Med. Ctr. LLC v. Liberty Mut. Ins. Co.*,
    703 F. Supp. 3d 289 (D. Mass. 2023) ...................................................................... 28

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................ 10, 13, 16, 18, 24

Pursuant to Federal Rules of Civil Procedure 23(c), (e), (g), Plaintiffs[1] respectfully submit this memorandum of law in support of their Motion for Final Approval of Settlement ("Motion") with Defendant MLS Property Information Network, Inc. ("MLS PIN" or "Settling Defendant") (together with Plaintiffs, the "Parties"), which seeks: (1) final approval of the settlement (the "Settlement" or the "Settlement Agreement") with Defendant MLS PIN; (2) final approval of the proposed Plan of Distribution to members of the Settlement Class; (3) certification of the Settlement Class; (4) appointment of Izard Kindall & Raabe LLP and Hausfeld LLP as Settlement Class Counsel;[2] and (5) a finding that the notice plan, as implemented, comported with the Federal Rule of Civil Procedure 23(c)(2) and due process.

## I.    INTRODUCTION

If approved, the proposed Settlement will resolve this antitrust case against MLS PIN at least as favorably as a litigated judgment given MLS PIN's small size and the expected resolution of Plaintiffs' claims against the other Defendants based on nationwide settlements in *Burnett v. National Association of Realtors*, No. 19-cv-00332-SRB (W.D. Mo.) ("*Burnett*"). This represents an excellent result for the Settlement Class by eliminating the restraints that caused home sellers to pay artificially inflated commissions to buyer-brokers on Pinergy. In addition to providing injunctive relief for the Settlement Class, MLS PIN will pay $3.95 million, which is consistent with MLS PIN's financial position and with the "buy in" for MLS PIN to join the National

---

[1] Plaintiffs are Jennifer Nosalek, Mona Hirschorn, as executor of the Estate of Randy Hirschorn, and Tracey Hirschorn. ECF No. 384.
[2] Jim Glaser of Jim Glaser Law also serves as counsel to the individual Plaintiffs in this Action but is not seeking appointment as Class Counsel.

Association of Realtors' ("NAR") settlement in *Burnett*.[3] Plaintiffs' Motion should therefore be granted.

First, as the Court preliminarily found in its Order preliminary approving the Settlement, the Settlement is "fair, reasonable, and adequate to the Settlement Class[.]" ECF No. 386. Second, the Plan of Distribution, which distributes funds on a *pro rata* basis, is a fair, reasonable, and rational method for Distributing the Net Settlement Fund to the Settlement Class. Third, the proposed Settlement Class meets all of the requirements of Rule 23(a) and (b)(3) such that the Court should certify it for purposes of the Settlement. Fourth, Class Counsel have diligently prosecuted this complex class action and should be appointed as Co-Lead Counsel for the Settlement Class. Finally, notice of the Settlement to potential Settlement Class Members complied with Rule 23 and due process.

## II.     BACKGROUND

### A.  Procedural Background.

Plaintiffs commenced this litigation on December 17, 2020, ECF No. 1, alleging that MLS PIN, a property listing service, and the Broker Defendants conspired to artificially inflate the commission paid by home sellers to buyer-brokers. Since then, Plaintiffs responded to three separate motions to dismiss by Broker Defendants, each on distinct issues, and a motion for summary judgment by HomeServices, as well as a statement of interest by the Department of Justice ("DOJ"). ECF Nos. 37, 40, 42, 94 (order denying motion to dismiss), 203, 243 (opposition to summary judgment), No. 345 (response to statement of interest), No. 364 (supplemental response to supplemental statement of interest). The motion for summary judgment included

---

[3] In *Burnett*, the Court granted final approval of the settlement with NAR on November 27, 2024, *see* ECF No. 1622, which is currently on appeal in the Eighth Circuit.

taking focused document and deposition discovery related to the motion. *See* Declaration of Seth R. Klein ("Klein Decl.") ¶ 9.

On June 30, 2023, Plaintiffs filed the original Settlement Agreement between Plaintiffs and MLS PIN, which provided for certain rule changes and a settlement fund of $3 million. ECF No. 192-1. On August 9, 2023, the Court held its remote preliminary approval hearing concerning the Settlement. ECF No. 211. On September 5, 2023, Plaintiffs filed their Amended Settlement Agreement, ECF No. 222, which was substantively identical to the previous Settlement Agreement except for modification of the Settlement Class Period and revision of the treatment of the monetary Settlement Fund as suggested by the Court. On September 7, 2023, this Court granted preliminary approval to the Settlement, authorized the sending of class notice, and set a final approval hearing date of January 4, 2024. ECF Nos. 227, 228.

Following preliminary approval, Plaintiffs engaged in several rounds of discussions and correspondence with the DOJ regarding questions raised by the DOJ. Klein Decl. ¶ 4. On September 25, 2023, the DOJ requested the Plaintiffs agree to delay the sending of notice and the date for the final approval hearing by two months. Klein Decl. ¶ 5. This case was then stayed on February 14, 2024, in light of then-pending MDL proceedings. ECF Nos. 272, 287. By the time the stay was entered, Plaintiffs were six weeks away from filing a motion for class certification and had already spent hundreds of thousands of dollars on relevant expert analysis. Klein Decl. ¶ 6.

Plaintiffs worked closely with their own experts in anticipation of moving for class certification, including Dr. Panle Barwick, a nationally recognized expert on cooperative compensation generally and in Massachusetts specifically; and a data analysis team at a top-tier analytics firm providing support to Dr. Barwick. Klein Decl. ¶ 7. These experts have spent

hundreds of hours reviewing and analyzing hundreds of thousands of Massachusetts transaction records, which were obtained from and cross referenced across multiple sources (including Defendants' own data). *Id.* Class Counsel have incurred total expert costs of $335,682.60. *See* Declaration of Christopher L. Lebsock ("Lebsock Decl.") ¶ 6.

Plaintiffs' extensive document discovery and review totaled over 240,000 pages. *See generally* Klein Decl. ¶ 8. Moreover, in order to conduct discovery of the other Defendants as efficiently and cost-effectively as possible, Plaintiffs first negotiated with the Broker Defendants and non-Defendant the National Association of Realtors ("NAR") to receive documents and transcripts relating to "nationwide" issues that had been previously produced in the *Burnett* action (and so were easily available for production by Defendants). For example, Anywhere produced over 50,000 pages on "national" issues, Keller Williams over 16,000, RE/MAX over 15,000, and HomeServices over 8,500 pages. *Id.*

However, MLS PIN is distinct from the NAR, and as such implicates different—and highly localized—issues. In particular, Plaintiffs had to determine the extent to which evidence concerning NAR applied to MLS PIN and obtain additional evidence to support their claims when it did not. Accordingly, after receiving the "national" documents, Plaintiffs engaged in lengthy discussions to obtain additional Massachusetts-focused documents from the Broker Defendants to assess and relate the "national" documents to MLS PIN in Massachusetts. *Id.* As a result, the Plaintiffs obtained and reviewed over 50,000 additional pages of Massachusetts-focused documents from Anywhere, an additional 75,000 pages from RE/MAX, nearly 3,000 additional pages from Keller Williams, and over 5,300 pages from HomeServices. *Id.* Finally, Plaintiffs obtained via third-party subpoenas over 10,000 pages of documents from NAR, the Massachusetts Association of Realtors ("MAR"), HUD, and various Massachusetts real estate associations. *Id.*

Once the Broker Defendants began settling the related *Burnett* litigation in late 2023 on a purportedly nationwide basis, Plaintiffs and their counsel immediately acted to protect Settlement Class Member rights and ensure that Settlement Class Members are able to receive monetary recovery from the Broker Defendants in this action as part of the settlements between the Broker Defendants and Plaintiffs in *Burnett* (in addition to the payments that Settlement Class Members will received from the MLS PIN Settlement Fund as part of this Settlement). Klein Decl. ¶ 10. Specifically, Anywhere and RE/MAX settled for $138,500,000 (collectively), Keller Williams settled for $70,000,000, and HomeServices settled for $250,000,000. The releases in those settlements sought to release the claims in this case. *See, e.g.*, *Burnett*, ECF Nos. 1192-3 (Anywhere). 1192-4 at 7-8 (RE/MAX), 1371-1 at 8-9 (Keller Williams), 1518-1 at 8-9 (HomeServices). Plaintiffs ultimately reached an agreement with the *Burnett p*laintiffs that Class Counsel would be involved in formulating the *Burnett* plan of allocation, and *Nosalek* Class members who had listed properties on MLS PIN involving the Broker Defendants would be treated on entirely equal footing in the *Burnett* plan of allocation as those who listed properties on MLSs listed as defendants in the *Burnett* action. Klein Decl. ¶ 11. The *Burnett* final approval orders are currently under appeal in the Eighth Circuit. However, assuming those settlements are not reversed on appeal, Settlement Class Members will thus receive monetary recovery from the Broker Defendants in the *Burnett* claims process in addition to the funds they will receive from MLS PIN if this Court grants final approval to the Settlement.

At the same time as discussions were ongoing between Plaintiffs and the *Burnett* plaintiffs concerning the *Burnett* settlement, the DOJ began to raise substantive objections in this case regarding the MLS PIN settlement terms. As a result, the parties and the Department engaged in extensive discussions about the Settlement terms over a period of approximately 18 months. The

parties ultimately reached a Fourth Amended Settlement Agreement ("FASA") in May 2025 that includes both a Settlement Fund of $3.95 million and substantive rule and practice changes at MLS PIN to remove the alleged anticompetitive misconduct and bring MLS PIN's practices in line with the practices adopted by NAR and approved by Judge Bough in *Burnett*. ECF No. 381-2. This Court granted preliminary approval to the FASA on June 10, 2025. ECF No. 386.

## B. The Settlement Negotiations and Settlement Terms.

Plaintiffs engaged in intensive and lengthy settlement discussions with MLS PIN. Beginning in September 2022 and through the signing of the FASA, counsel for Plaintiffs and MLS PIN engaged in multiple rounds of phone conferences and correspondence with each other and with the DOJ, including exchanging several drafts of the settlement agreements and amendments to MLS PIN's Rules and Regulations. Klein Decl. ¶ 12. The material terms of the FASA are summarized as follows:

The Settlement Class: The Settlement Class is defined (with certain standard exclusions) as: "Sellers who paid, and/or on whose behalf Seller-Brokers paid, Buyer-Broker Commissions during the Settlement Class Period in connection with the sale of Real Estate listed on Pinergy." ECF No. 381-2 at 9. The "Settlement Class Period" is defined as "December 17, 2016, through and including the date of the Final Judgment and Order of Dismissal." ECF No. 381-2 at 7.[4] A class extending through or even beyond Final Judgment is not unusual. *See Crane*

---

[4] The "Final Judgment and Order of Dismissal" is defined as "The order of the Court, substantially in the form attached hereto as Exhibit 2, finally approving the settlement set forth in this Agreement and dismissing the Action against MLS PIN with prejudice." ECF No. 381-2 at 5.

*v. Sexy Hair Concepts, LLC*, No. 1:17-cv-10300-FDS, ECF No. 102 (D. Mass. May 14, 2019)

(approving (b)(3) settlement class extending to and beyond final approval of settlement).[5]

     <u>Injunctive Relief to the Settlement Class:</u> The principal benefit of the Settlement is injunctive relief that targets what Plaintiffs allege are MLS PIN's past and current anticompetitive conduct and may save members of the Settlement Class and others who sell their homes in the future millions of dollars in tangible benefits. The FASA, if approved by the Court, requires MLS PIN to amend its Rules and Regulations to disallow the allegedly anticompetitive practice by:

- **Eliminat[ing] any requirement that Seller-Brokers or Sellers must make offers of Buyer-Broker Commission**, and eliminate any requirement that such offers, if made, must be blanket, unconditional, or unilateral; provided, however, that after expiration of the three (3) year period, MLS PIN shall not reinstate any requirement that Seller-Brokers or Sellers must make offers of Buyer-Broker Commission or that such offers, if made, must be blanket, unconditional, or unilateral;
- **Prohibit[ing] all MLS PIN participants and subscribers from (a) making or sharing offers of Buyer-Broker Commission in a Listing**; or (b) disclosing, in a Listing, broker compensation or total brokerage compensation (i.e., the combined compensation to both listing brokers and cooperating brokers);
- **Eliminat[ing] all Buyer-Broker Commission-specific fields in Pinergy** and prohibit the making or sharing of offers of Buyer-Broker Commission via any other field(s) in Pinergy;
- **Permit[ing] a Listing only if the Seller-Broker certifies through an appropriate check-box to MLS PIN** that the Seller-Broker, before entering into an agreement with the Seller with respect to that Listing, **notified the Seller that (i) MLS PIN does not require the Seller to offer compensation to Buyer-Brokers or other buyer representatives (either directly or through buyers), either on or off of Pinergy**; and (ii) while a Buyer-Broker may request compensation from the Seller in lieu of Buyer-Broker receiving any compensation from the prospective

---

[5] ECF No. 102 at 2 (Court's final approval order defined the Settlement Class as "All purchasers of any of the Subject Products as defined below during the period between November 19, 2002 through the Effective Date …."); ECF No. 97-1 at 4-5 (emphasis added) ("'Effective Date' shall mean forty-five (45) days after the Court's entry of the Final Judgment and Order if no document is filed within that time period seeking appeal, review, or any other relief in connection with the Agreement and/or the Final Judgment and Order. If any such document is filed, then the Effective Date shall be thirty-one (31) days after the date upon which all proceedings relating to such appeal, review, and other relief have fully and finally terminated in such a manner so as to permit full implementation of the Agreement and the Final Judgment and Order without any further risk that the Agreement and/or the Final Judgment and Order could be further challenged.")

purchaser for the Buyer-Broker's services on that Listing, MLS PIN does not require the Seller to accede to such a request; and

- **Eliminat[ing] any forms, advertising, and educational or instructional materials** created and disseminated by MLS PIN that are **inconsistent with any provision of Sections 9(a)(i)-(iv) above**.

ECF No. 381-2, ¶ 9(a) (emphasis added). In addition, MLS PIN has agreed to "not itself create or develop any listing service that is inconsistent with any provision of Sections 9(a)(i)-(v) above, or affirmatively support, through the provision of listing data or otherwise, the creation or maintenance of any third-party service that is inconsistent with those provisions." ECF No. 381-2, ¶ 9(a). "MLS PIN agrees to and will modify the Rules and Regulations within 90 days of the Effective Date to implement the foregoing changes." ECF No. 381-2, ¶ 9(b). In addition, "MLS PIN will provide counsel for Plaintiffs with a final (clean and redline) copy of any revised Rules and Regulations within three (3) business days of their adoption." ECF No. 381-2, ¶ 9(b).

_Monetary Relief to the Settlement Class:_ In June 2023, Plaintiffs secured a $3 million Settlement Fund, based in part upon MLS PIN's ability to pay as reflected in MLS PIN's most recent financial statements at that time. Klein Decl. ¶ 3. When the NAR settlement was announced in March 2024, MLSs across the country, including MLS PIN, had the option of joining that nationwide agreement. MLS PIN opted not to do so. Plaintiffs accepted MLS PIN's decision and moved forward with the MLS PIN Settlement. However, Class Counsel conducted a detailed analysis of the NAR settlement and calculated that the cost of MLS PIN's "buy-in" to that settlement, had MLS PIN opted to do so, would have been $3.95 million. Klein Decl. ¶ 13. Accordingly, Plaintiffs insisted that MLS PIN increase the Settlement Fund in this case to the same $3.95 million. _Id_. After protracted negotiations and a review of MLS PIN's more recent financial position, MLS PIN agreed. _Id_.

Class Counsel are filing concurrently a motion that will seek 33% of the $3.95 million ($1,315,350) in attorneys' fees as well as $200,000 of incurred costs and expenses and $5,000 to each of the named class representatives as lead plaintiff awards. In addition, Kroll Settlement Administration LLC ("Kroll"), the settlement administrator proposed by the Parties, has estimated that the cost of the proposed Notice Plan (discussed below) will be approximately $650,000-$700,000, which MLS PIN will advance and then be permitted to credit against and deduct from its payment into the Settlement Fund pursuant to any order of the Court concerning Class Counsel's fees and expenses.

Cooperation: If the Eighth Circuit ultimately rejects the settlements with Broker Defendants in *Burnett*, the Settlement Agreement ensures MLS PIN's continued cooperation by guaranteeing MLS PIN will respond to document requests and interrogatories and will allow for up to three depositions. ECF No. 381-2, ¶ 10(g).

Notice Plan: The parties have selected Kroll, a national class action administration firm with significant experience, as their Settlement Administrator. *See generally* ECF No. 381-4 (Declaration of Christie K. Reed (Media Director of Kroll Notice Media Solutions)). As detailed in Part IV.C. below, the Notice Plan includes direct postcard mailed notice, plus an extensive online/social media and keyword search campaign, a press release, and a thorough Settlement website. Copies of the forms of the postcard, long, online/social media, and press release notices were attached to the Reed Declaration. *See* ECF No. 381-4 (Exhibits A, B, C, and D). In conjunction with the Plaintiffs' responses to objections on September 22, 2025, Plaintiffs will also submit a supplemental declaration from Kroll updating the Court on notice steps that have occurred and that remain to be taken.

## III.    ARGUMENT

### A.  The proposed settlement warrants final approval.

Fed. R. Civ. P. 23(e) requires court approval of a class action settlement. As this Court recently summarized,

> The factors by which a proposed settlement is judged are whether: (i) the class representatives and class counsel adequately represented the class; (ii) the proposed settlement was negotiated at arm's length; (iii) the relief obtained for the class is adequate; and (iv) the proposed settlement treats class members equitably relative to each other.

*Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*, No. 15-30024, 2020 WL 1495903, at *3 (D. Mass. Mar. 27, 2020) ("NAD") (citing Fed. R. Civ. P. 23(e)(2)). "The court performs this analysis in the shadow of the 'strong public policy in favor of settlements,' … particularly in class action litigation." *Medoff v. CVS Caremark Corp.*, No. 09-554, 2016 WL 632238, at *5 (D.R.I. Feb. 17, 2016) (citing *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007).

### a.  The Settlement is Procedurally Fair Under Rule 23(e)(2)(A)-(B)

#### i.  Plaintiffs and their Counsel have adequately represented the Class.

The adequacy determination under Rule 23(e)(2)(A) looks to whether "the interests of the class representatives do not conflict with the interests of any of the class members … and that [Class] Counsel are qualified and experienced and provided vigorous representation during the course of the case." *NAD,* 2020 WL 1495903, at *3 (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)). In citing *Andrews,* the *NAD* court expressly linked the adequate representation inquiry under Rule 23(e)(2)(A) to the adequacy inquiry required for class certification under Fed. R. Civ. P. 23(a)(4). *Accord, In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11 (E.D.N.Y. 2019). This is a familiar inquiry. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("*Amchem*") (courts look at whether the

10

representatives' interest are antagonistic to or in conflict with those of the class members). Where, as here, the injuries suffered by the named Plaintiff are the same as those that the class is alleged to have suffered, the adequacy requirement is usually satisfied. *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997) ("*Duhaime*").

Ms. Nosalek, Mr. Hirschorn (before his recent passing), and Ms. Hirschorn have been exemplary representatives. They have spent significant time on behalf of the class, gathering their relevant documents, responding to Defendants' discovery requests, and otherwise consulting with counsel and maintaining oversight of the litigation. Klein Decl. ¶ 15. Mr. Hirschorn sat for a deposition. *Id*. In addition, their antitrust claims under Section 1 of the Sherman Act are the same as the claims being advanced by all Settlement Class Members.

Class Counsel are well-qualified and have vigorously prosecuted this Action. Izard, Kindall & Raabe and Hausfeld LLP are active practitioners with long experience with antitrust and class action ligation. *See* Klein Decl., Ex. A (IKR firm resume); Lebsock Decl., Ex. A (Hausfeld firm resume). Courts have recognized counsels' expertise in the field and have repeatedly adjudged Lead Counsel adequate under Rule 23(a)(4) and 23(g). Class Counsel have demonstrated throughout this litigation that they understand this area of antitrust law, have prosecuted this Action with vigor and commitment, and believe this is a fair settlement and in the best interest of the Settlement Class Members.

### ii. The Settlement was the result of arm's-length negotiations.

Rule 23(e)(2)(B) instructs the court to consider whether the proposed Settlement was negotiated at arm's length. Negotiation leading to a settlement is a key factor in deciding whether to grant final approval. Where "a settlement is untainted by collusion and is fair, adequate, and reasonable … and the parties have bargained at arms-length, there is a presumption in favor of the

settlement." *In re Lupron Mktg. and Sales Pracs. Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 76-77 (D. Mass. 2005) ("*Relafen*"); *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277, 282 (D. Mass. 2009). These kinds of negotiations guard against any "obvious deficiencies" in a settlement. *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 11-md-2308, 2012 WL 3312668, at *8 (W.D. Ky. Aug. 13, 2012).

As recounted above, Plaintiffs engaged in intensive and lengthy settlement discussions with MLS PIN. Between September 2022 and the signing of the FASA on May 29, 2025, counsel for Plaintiffs and MLS PIN engaged in multiple rounds of phone conferences and correspondence, including exchanging several drafts of the settlement agreements and amendments to MLS PIN's Rules and Regulations. Klein Decl. ¶ 12. These discussions were based upon the record in this Action, the briefing on motions to dismiss, thousands of pages of documents produced by MLS PIN (including both substantive and financial documents), proposed amendments to MLS PIN's Rules and Regulations, the DOJ's objections and input, and Class Counsel's extensive experience in prosecuting antitrust and class action cases. *Id.* The FASA was brokered and accepted by the parties only after these extensive and thorough negotiations.

### b. The Settlement is Substantively Fair Under Rule 23(e)(2)(C)-(D)

Rule 23(e)(2)(C) enumerates the four factors to be considered in assessing whether the relief provided for the class is adequate: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)." As discussed below, the proposed Settlement provides meaningful, immediate and

continuing benefits to the Settlement Class, while avoiding potentially years more of costs and delays, and the risks inherent in all class action litigation if the case were to go to trial.

### i.    The relief provided for the Class is adequate.

#### 1.    Costs, Risks, Delay of Trial and Appeal.

The Settlement has very significant value when considered against the substantial costs, risks, and delays of continued litigation. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). When Plaintiffs brought this action, MLS PIN was not contemplating amending their Rules and Regulations to eliminate the anticompetitive rule alleged in the Second Amended Complaint. This Settlement eliminates that alleged anticompetitive misconduct. The relief provided by the Settlement, thus, is concrete, guaranteed, and immediate. Should the Settlement obtain final approval, Class Members (and other Massachusetts residential real estate sellers) will no longer have to offer compensation to buyer-brokers on Pinergy. With regard to the financial component of the Settlement, Plaintiffs note that MLS PIN (unlike the Broker Defendants) does not profit from the challenged conduct—its subscriber fees are flat, not tied to commission rates—and is capitalized only to the extent needed to conduct ongoing operations. And, as discussed above, the Settlement Fund is the same as MLS PIN would have had to pay to join in the *Burnett* NAR settlement.

Without this Settlement, it could be several years before the substantive rule change embodied in the Settlement would be implemented or the financial benefits would be paid, even assuming Plaintiffs win at trial—a result which is far from guaranteed in a complex antitrust action. Moreover, unlike the Broker Defendants, MLS PIN is not a deep pocket. Thus, even if Plaintiffs won at trial, MLS PIN may not be able to pay much more than the settlement amount. Courts overwhelmingly recognize that the delay of resolution of the litigation by itself is a significant consideration in approving a settlement. As the Court explained in *Strougo ex rel. Brazilian Equity*

13

*Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003), "even if a [plaintiff] or class member was willing to assume all the risks of pursuing the actions through further litigation … the passage of time would introduce yet more risks … and would, in light of the time value of money, make future recoveries less valuable than this current recovery." *Id.* at 261. Inevitable litigation delays "not just at the trial stage but through post-trial motions and the appellate process, would cause [Settlement] Class Members to wait years for any recovery, further reducing its value." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 467 (2d Cir. 1974)).[6] This factor weighs in favor of final approval.

### 2.    Effectiveness of the Proposed Method of Distributing Relief.

Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief" be effective. While a distribution plan satisfying the Rule "'must be fair and adequate,' it 'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) ("*GSE Bonds*") (citation omitted).

Here, the injunctive relief is automatic, and so every Class Member (and seller of Massachusetts residential real estate) will automatically benefit without the need for "distribution." As to the monetary component of the Settlement, Class Counsel, who have extensive experience in class action settlements, prepared the Plan of Distribution working in consultation with Kroll.

---

[6] *See also In re Marsh & McLennan, Cos. Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546, at *5 (S.D.N.Y. Dec. 23, 2009) (noting the additional expense and uncertainty of "inevitable appeals" and the benefit of Settlement, which "provides certain and substantial recompense to Class members now"); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement); *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 Civ. 3048, 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987) ("[E]ven assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away.")

Kroll has extensive experience in distributing relief in connection with large and complex class action settlements. *See* ECF No. 381-4 at ¶ 2. Kroll "will be responsible for reviewing all claim forms and determining whether a claim is an approved claim." *See* ECF No. 381-4 (Exhibit B) at 5. Moreover, "Claims that cannot be confirmed by [Kroll] may be subject to challenge, nonpayment, or a reduced share of the available funds." *Id*. Class Members with approved claims will have several options for receiving repayment, including Mastercard, PayPal, Venmo, Direct Deposit, Zelle, and Paper Check by Mail. *See* Submit Claim at https://www.mlspinsettlement.com/.

The total Settlement Fund is $3.95 million, which is the same as the cost would have been for MLS PIN to "buy in" to the NAR settlement in *Burnett*. Klein Decl. ¶ 13. As set forth in the proposed notice and claims documents, *see* ECF No. 381-4 (Exhibits A, B, C, D, and E), the fund will be distributed "on a *pro rata* basis based on the sale price" of the sold property (as recorded in MLS PIN's records). A common method for allocating settlement funds in antitrust cases is on a *pro rata* basis. *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020) ("*Namenda*") ("courts uniformly approve as equitable" plans in antitrust cases that "allocate[] funds among class members on a pro rata basis."); *see also Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531 (E.D. Mich. 2003) (approving *pro rata* distribution of settlement fund as fair and reasonable). On an average basis, if all approximately 650,000 Class Members file approved claims, each would receive approximately $6 before deduction of costs and any awarded fees and expenses. Assuming a 50% claims rate, each would receive an average of $12 before deductions; at a 20% claims rate, the average recovery before deductions would be $30. This factor also weighs in favor of final approval.

### 3.     The Terms of the Proposed Award of Attorney's Fees.

The Court also considers "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, Plaintiffs are seeking an award of attorneys' fees of 33% of the Net Settlement Fund. The full parameters of Plaintiffs' fee request are detailed in Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Case Contribution Awards ("Attorneys' Fees Motion") filed concurrently herewith. As explained therein, the requested award falls within the common range of fee awards in this Circuit. *See In re Solodyn Antitrust Litig.*, No. 14-md-2503, 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (awarding one-third of the settlement fund to counsel); *In re Asacol Antitrust Litig.*, No. 15-cv-12730, 2017 WL 11475275, at *4 (D. Mass. Dec. 7, 2017) (awarding one-third of the settlement fund to counsel); *In re Prograf Antitrust Litig.*, No. 11-md-02242, 2015 WL 13908415, at *1 (D. Mass. May 20, 2015) (awarding one-third of the settlement fund to counsel); *Relafen*, 231 F.R.D. at 82 (awarding one-third of the settlement fund to counsel); *Crane v. Sexy Hair Concepts, LLC*, No. 17-cv-10300, ECF No. 102 at ¶ 11 (D. Mass. May 14, 2019) (awarding Class Counsel with "$750,000, which is equal to approximately 32.2% of the Gross Settlement Amount[.]")

Moreover, Class Counsel will not receive any funds until the Court has granted their fee request. The Parties have agreed that the Settlement is not conditioned on the Court's approval of a fees and expenses requests. *See* ECF No. 381-2 (Exhibit 2 of the Proposed Final Judgment and Order Granting Final Approval) at ¶ 18 ("Any order entered regarding the motion for attorneys' fees and expenses in this Action shall in no way disturb or affect this Final Judgment and Order and shall be considered separate from this Final Judgment and Order.") This factor also weighs in favor of final approval.

16

#### 4.    Agreements Identifiable Under Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) and 23(e)(3) require that any agreement "made in connection with the proposal" be identified. Plaintiffs and MLS PIN have entered into one such agreement, under which MLS PIN may terminate the Settlement Agreement within fourteen (14) calendar days before the Fairness Hearing (September 15, 2025) should a threshold number of Settlement Class Members opt out of the Settlement Class.[7] This factor is neutral and does not undermine final approval.

#### ii.    The Settlement Treats Settlement Class Members Equitably.

Rule 23(e)(2)(D) requires the Court to assess whether "the proposal treats class members equitably relative to each other." Here, the proposed plan of allocation treats all Settlement Class Members equitably by distributing damages on a *pro rata* basis using each Settlement Class Members' share of the total damages. Such a *pro rata* distribution is fair and equitable because it compensates Settlement Class Members based on their relative harm suffered.

Since the 2018 amendment of Rule 23(e) expressly required this consideration, courts have consistently found *pro rata* distribution is equitable to settlement classes. *See, e.g.*, *Namenda*, 462 F. Supp. 3d at 316 (in antitrust action, finding courts uniformly approve plans of allocation distributing funds on a *pro rata* basis as equitable under Rule 23(e)(2)(D)); *GSE Bonds*, 414 F. Supp. 3d at 698-99 ("[C]laimants will be treated equitably by receiving a *pro rata* share of the recovery based on the estimated price impact of defendants' conduct …."); *Perks v. Activehours, Inc.*, No. 19-cv-5543, 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021) (*pro rata* distribution is "inherently equitable" because it allocates settlement proceeds based on the amount of each

---

[7] The agreement is confidential and not filed herewith but is available for the Court's *in camera* review upon request.

member's potential damages); *Cisneros v. EP Wrap-It Insulation, LLC*, No. 19-cv-500, 2021 WL 2953117, at *10 (D.N.M. July 14, 2021) (finding *pro rata* allocation provides equitable treatment). Even prior to the 2018 amendments, courts considered this factor and routinely found *pro rata* distribution of settlement funds in antitrust actions to be fair and reasonable. *See, e.g.*, *In re Vitamins Antitrust Litig.*, No. 99-cv-197, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) (*pro rata* distribution has "repeatedly been deemed fair and reasonable").[8]

## IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

This Court must also determine whether it "will likely be able to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). In accordance with the Settlement, Plaintiffs respectfully request that the Court certify the Settlement Class for Settlement purposes:

> Sellers who paid, and/or on whose behalf Seller-Brokers paid, Buyer-Broker Commissions during the Settlement Class Period in connection with the sale of Real Estate listed on Pinergy.

ECF No. 381-2 at 9.

Certification of a settlement class is appropriate where that class meets all of the requirements of Rule 23(a) as well as one of the requirements of Rule 23(b). *See Amchem*, 521 U.S. at 614. When certification of a settlement class is sought, "courts must take a liberal rather than restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009) (citation omitted). The Settlement Class meets all of the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3). Those requirements are addressed briefly here.

---

[8] *See also, e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) ("Courts 'generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.'"); *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (allocation plan based on the type and extent of their injuries is generally reasonable).

### A.  The Settlement Class Meets the Rule 23(a) Requirements

#### a.  Rule 23(a)(1) - Numerosity

The Settlement Class as defined easily meets Rule 23(a)'s numerosity requirement. Based on MLS PIN's data, the Settlement Class (based on the number of sales of residential real estate during the Settlement Class Period) will be approximately 650,000 to 700,000. Klein Decl. ¶ 14. Joinder is simply a logistical impossibility. *See, e.g.*, *Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1988) (800 to 900 member class made joinder impracticable). Indeed, "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009).

#### b.  Rule 23(a)(2) - Commonality

To meet the commonality requirement, the representative plaintiff is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Commonality is a "low hurdle." *S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 87 (D. Mass. 2007). As this Court has recognized, antitrust cases frequently involve common issues. *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 264 (D. Mass. 2008) ("Plaintiffs readily meet the commonality requirement, as Plaintiffs identify a number of issues related to whether a violation

19

of the antitrust laws occurred that are common to the proposed class [, including] … whether Tyco engaged in illegal agreements, contracts, combinations, and/or conspiracies").

Here, the Court should find that there is at least one main, common question in this Action: whether Defendants violated Section 1 of the Sherman Act by conspiring, through adoption of the challenged restraint, to artificially inflate the buyer-broker commissions paid by the Settlement Class Members. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."); *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013) ("Where an antitrust conspiracy has been alleged, courts have consistently held that the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.") (internal quotation marks omitted). Indeed, because proof of the alleged conspiracy focuses on the Defendants' standardized conduct as opposed to the conduct of individual class members, "[a]ntitrust liability alone constitutes a common question that 'will resolve an issue that is central to the validity' of each class member's claim 'in one stroke.'" *Id.* at 1180 (quoting *Wal-Mart*, 564 U.S. at 350)). Thus, the existence of a common question is sufficient to satisfy the commonality requirement.

### c.   Rule 23(a)(3) - Typicality

Typicality "determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Pharm. Indus. Average Wholesale Price Litig.*, 277 F.R.D. 52, 58 (D. Mass. 2011). To be typical within the meaning of Rule 23 simply requires "that the named plaintiffs' claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and are based on the same legal theory." *Walker*

*v. Osterman Propane, LLC,* 411 F. Supp. 3d 100, 111 (D. Mass. 2019). "Further, Rule 23(a)(3) tolerates even significant differences between the named plaintiff and the proposed class members as long as the named plaintiff's experience is 'reasonably coextensive' with the experiences of the rest of the class." *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 162 (D. Mass. 2019) ("*Ouadani*") (quoting *DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389, 405 (D. Mass. 2017)). In the antitrust context, typicality "will be established by plaintiffs and all class members alleging the same antitrust violation by the defendants." *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 168 (S.D. Ind. 2009) (internal quotation marks omitted).

Plaintiffs and Settlement Class Members listed their homes on MLS PIN's Pinergy, where the Defendants implemented the challenged restraints; thus, and consequently, Plaintiffs' alleged claim share the same essential characteristics as the rest of the class, and typicality is established. *See id.* (internal quotation marks omitted) ("If the named class members' claims are based on the same legal theory or arise from the same course of conduct, factual differences in date, size, manner, or conditions of purchase, the type of purchaser, or other concerns do not make named plaintiffs atypical.")

### d. **Rule 23(a)(4) - Adequacy**

Rule 23(a)(4) requires that the plaintiff will fairly and adequately protect the interests of the class. This requires a determination that, first, "the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Ouadani*, 405 F. Supp. 3d at 163 (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

Plaintiffs have no interests that are antagonistic to or in conflict with those of the Settlement Class. *See Amchem*, 521 U.S. at 626 (courts look at whether the representatives' interests are in any way antagonistic to or in conflict with those of the class members). To be disqualifying, any conflict must involve the subject matter of the suit and may not be merely minor or collateral. *Berman v. Narragansett Racing Ass'n, Inc.*, 414 F.2d 311, 317 (1st Cir. 1969). Where the injuries suffered by the named plaintiff are the same as those that the class is alleged to have suffered, the adequacy requirement is usually satisfied. *Duhaime*, 177 F.R.D. at 63. Plaintiffs have also retained qualified, experienced counsel to prosecute the litigation. *See* Part IV(B)(c) below (discussing appointing of Class Counsel under Rule 23(g)). Accordingly, the Court should find that the adequacy of representation requirement has been met.

### B.  The Settlement Class Meets the Rule 23(b) Requirements

#### a.  Predominance

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem*, 521 U.S. at 623). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* (quoting 2 W. Rubenstein, Newberg on Class Action § 4:49 (5th ed. 2012)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778 (3d ed. 2005)).

The court in *Burnett* found that common questions predominate as to the *Burnett* plaintiffs'

antitrust claims. *Burnett*, 2022 WL 1203100, at *18-19 (W.D. Mo. April 22, 2022) (finding that *Burnett* plaintiffs satisfied the Rule 23(b)(3) predominance requirement for the Subject MLS Class, Missouri Antitrust Law-Subject MLS Class, and MMPA Class); *see also  Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2023 WL 2683199, at *21 (N.D. Ill. Mar. 29, 2023) (finding "that [Moehrl plaintiffs] have met Rule 23(b)(3)'s predominance requirement."); *Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y. 1996) ("Since a single conspiracy is alleged, the relevant proof of this will not vary among class members, and clearly presents a common question fundamental to all class members."). Accordingly, the predominance requirement is satisfied.

### b.  Superiority

Rule 23(b)(3) identifies four factors to be considered in determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed R. Civ. P. 23(b)(3). Importantly, courts considering motions to certify settlement classes need not consider the fourth factor. *See Amchem*, 521 U.S. at 620. Here, certification of a settlement class "will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims." *Chhab v. Darden Rests., Inc.*, No. 11-cv-8345, 2016 WL 3004511, at *3 (S.D.N.Y. May 20, 2016). Accordingly, the superiority requirement is satisfied.

### c. Izard, Kindall & Raabe LLP and Hausfeld LLP Should be Appointed Settlement Class Counsel

Under Rule 23(g), a court that certifies a class must appoint class counsel, who is charged with fairly and adequately representing the interests of the class. *See* Fed. R. Civ. P. 23(g)(1). In determining class counsel, the Court must consider (1) the work undertaken by counsel in identifying or investigating the potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs' Counsel readily meet these requirements and should be appointed as counsel for the Settlement Class.

As discussed above in Part II.A., Class Counsel has invested significant resources in litigating the claims in the action. As set forth in the accompanying Fee Motion, Class Counsel has invested and incurred $5,003,739.50 in unreimbursed lodestar and $368,156.85 in unreimbursed expenses to date, with no guarantee of ever receiving payment. Klein Decl. ¶¶ 19, 23. Class Counsel defended three separate motions to dismiss by Broker Defendants, each on distinct issues, and motion for summary judgment by HomeServices, as well as a statement of interest and other filings by the DOJ. *See, e.g.*, ECF Nos. 37, 40, 42, 94 (order denying motion to dismiss), 203, 243 (opposition to summary judgment), No. 345 (response to statement of interest), No. 364 (supplemental response to supplemental statement of interest). Class Counsel has also served and responded to Requests for Production and Interrogatories, and conducted multiple meet and confers with Defendants, including MLS PIN, and with third parties regarding discovery in this matter, including Motions to Compel for Document Production from Anywhere Defendants and MAR. ECF Nos. 142 (order regarding Anywhere Defendants) and 273 (motion regarding MAR). As demonstrated by their firm resumes, Izard, Kindall & Raabe LLP and Hausfeld LLP are among

24

the leading firms in the country in antitrust class actions, and together and separately have been appointed to represent plaintiffs in antitrust class action in a multitude of cases. *See* Klein Decl. Ex. A (IKR firm resume); Lebsock Decl., Ex. A (Hausfeld firm resume).

## C.  The Notice Plan Adequately Apprised Settlement Class Members of Their Rights

In accordance with the Court's Preliminary Approval Order (ECF No. 386), the Court "direct[ed] notice in a reasonable manner to all class members who would be bound by the proposal." *NAD*, 2020 WL 1495903, at *4 (quoting Fed. R. Civ. P. 23(e)(1)(B)). The notice properly "describe[d] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Id.* (internal quotations and citations omitted). However, neither individual nor actual notice to each class member is required; rather, "class counsel [need only] act[] reasonably in selecting means likely to inform the persons affected." *Jermyn v. Best Buy Stores, L.P.*, No. 08-cv-00214, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)); *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008) ("It is clear that for due process to be satisfied, not every class member need receive actual notice[.]"). In evaluating the reasonableness of a proposed notice program, the "'district court has virtually complete discretion.'" *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 345 (E.D.N.Y. 2010) (quoting *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986)).

Here, the notice plan was approved by the Court at preliminary approval and implemented by Class Counsel and Kroll as approved. *See* ECF No. 381-4 (Reed Decl.) at 8-30, 36. First, Plaintiffs directed Kroll to send mailed postcard notice (*see* ECF No. 381-4 at Exhibit A) to all

Class Members whose current addresses are reasonably ascertainable.[9] That postcard notice explains  the litigation and the proposed settlement to Class Members and informs each Class Member that they will receive a *pro rata* share of the Settlement Fund (after deduction of fees, expenses, and case contribution awards). The postcard notice further explains how and when to object to the Settlement and provides directions to the Settlement Website (www.mlspinsettlement.com), which went live on July 9, 2025. The website, in turn, provides more detailed information, including relevant pleadings and court filings and the downloadable Long-Form Notice (ECF No. 381-4 at Exhibit B) approved by the Court. Accordingly, the postcard notice "describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *NAD*, 2020 WL 1495903, at *4 (internal quotations and citations omitted).

Second, because the Parties and Kroll have not been able to identify current addresses for all Settlement Class Members, Plaintiffs directed Kroll to engage in a social media and online search term notice campaign. ECF No. 381-4 at ¶¶ 24-28 and Exhibit C. As courts in this district have recognized, notice need not be perfect, but only "the best means 'practicable under the circumstances,'" and "publication of banner advertisements on various informational and social media websites" is a reasonable supplement to the extent direct notice is not feasible. *Bezdek v. Vibram USA*, 79 F. Supp. 3d 324, 334, 336 (D. Mass. 2015) ("*Bezdek*"). Here, in addition to mail notice, Kroll is running an industry-standard social media campaign targeted specifically at adults

---

[9] By definition, Settlement Class Members have moved from these now-sold residences, so Kroll has and will run each of those sellers through the National Change of Address (NCOA) database, which goes back four years, to obtain updated mailing address information. *See* ECF No. 381-4 at ¶¶ 10-11. Kroll has and will continue to attempt supplemental address research through additional resources where necessary and appropriate.

25 years of age and older in Massachusetts, Connecticut, Florida, Maine, New Hampshire, New York, Rhode Island, and Vermont. ECF No. 381-4 at ¶¶ 20-28. This campaign was designed to supplement and extend the reach of the postcard program and provide notice to as many additional Class Members as possible. *Id.*

Third, Kroll sent a press release to media outlets on July 10, 2025. *See* ECF No. 381-4 at ¶¶ 29-30 and Exhibit D. A press release can be an effective means of notice to Class Members, particularly where, as here, there is already an "unusual amount of coverage" or interest in the case in the press and among the general public. *See Bezdek*, 79 F. Supp. 3d at 336.

Accordingly, Plaintiffs believe that the notice provided to the Class is the best practicable under the circumstances. In that regard, the Settlement Class Period here extends through the date of Final Approval. ECF No. 381-2 at ¶2(jj); *see Crane v. Sexy Hair Concepts, LLC*, No. 17-10300, 2019 WL 2137136, at *1 (D. Mass. May 14, 2019) ("*Crane*") (granting final certification to a settlement class extending through the "Effective Date," which is typically beyond final approval and the date upon which all appeals are exhausted). For Settlement Class Members whose claims arose between December 17, 2016 (*i.e.,* the start of the Settlement Class Period) through June 5, 2025, Kroll sent 487,215 copies of the Class Notice by First-Class Mail on July 10, 2025. Klein Decl. ¶ 14. Plaintiffs believe that the social media and press release notices are sufficient to satisfy the due process rights of class members whose claims arise between June 6 and the date of final judgment. Nonetheless, Plaintiffs intend to send an ***additional*** mail notice by August 15 to Class Members whose claims arise between June 6 and July 31, 2025 in order to maximize the number of Class Members who received direct mail notice. *Id*.

The Parties recognize that Class Members whose transactions arise following the September 2, 2025, deadline for objections will not have the opportunity to object, which this

Court has noted can have due process implications. *See Wellness Med. Ctr. LLC v. Liberty Mut. Ins. Co.*, 703 F. Supp. 3d 289, 294 (D. Mass. 2023). Courts in this District have certified classes that extend beyond the objection deadline, *see Crane*, 2019 WL 2137136, at *1, and MLS PIN has stated that it cannot, as a practical matter, conform with the requirements of the Settlement Agreement until final approval. MLS PIN anticipates needing to redeploy its resources and disturb daily operations for this three-month project (e.g., updating MLS PIN's Rules and Regulations and computer systems) as contemplated in the Settlement. ECF No. 381-2, ¶ 9(b) ("MLS PIN agrees to and will modify the Rules and Regulations within 90 days of the Effective Date to implement the foregoing changes."). Class Members whose claims arose following the August 15 mailing and whose current addresses are reasonably ascertainable will be sent direct postcard mail notice following final approval apprising them of the rights within 30 days to either participate in or opt-out of the settlement as they may choose.[10]

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs' Motion.

Dated: July 25, 2025                    Respectfully Submitted,

                                        */s/ Seth R. Klein*
                                        Robert A. Izard (*pro hac vice*)
                                        Craig A. Raabe (*pro hac vice*)
                                        Seth R. Klein (*pro hac vice*)
                                        Christopher M. Barrett (*pro hac vice*)
                                        **IZARD, KINDALL & RAABE, LLP**
                                        29 South Main Street, Suite 305
                                        West Hartford, CT 06107
                                        (860) 493-6292
                                        (860) 493-6290 fax
                                        rizard@ikrlaw.com

---

[10] A [Proposed] Final Judgment and Order was filed as an exhibit to the Declaration of Seth Klein in Support of Plaintiffs' motion for preliminary approval of the Settlement. ECF No. 381-2 (Exhibit 2).  Plaintiffs would be pleased to submit a Word version of the [Proposed] Final Judgment and Order to chambers should the Court so request.

craabe@ikrlaw.com
sklein@ikrlaw.com
cbarrett@ikrlaw.com

Christopher L. Lebsock (*pro hac vice*)
**HAUSFELD LLP**
580 California Street
12th Floor
San Francisco, CA 94104
(415) 633-1908
clebsock@hausfeld.com

James Gotz (MA Bar #567157)
**HAUSFELD LLP**
One Marina Park Drive
Suite 1410
Boston, MA 02210
(617) 207-0600
jgotz@hausfeld.com

Daniel P. Weick (*pro hac vice*)
**HAUSFELD LLP**
33 Whitehall Street
14th Floor
New York, NY 10004
(646) 357-1100
dweick@hausfeld.com

Jose Roman Lavergne (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street NW
Suite 600
Washington, D.C., 20036
(202) 540-7200
jlavergne@hausfeld.com

*Attorneys for Plaintiffs*

29

## <u>CERTIFICATE OF SERVICE</u>

I, Seth R. Klein, hereby certify that a true copy of the foregoing document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing on July 25, 2025.

*/s/ Seth R. Klein*

Seth R. Klein
