UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER NOSALEK, RANDY HIRSCHORN and TRACEY HIRSCHORN, individually and on behalf of all others similarly situated, | No. 1:20-cv-12244-PBS |
| Plaintiffs, | |
| vs. | |
| MLS PROPERTY INFORMATION NETWORK, INC., *et al*., | July 25, 2025 |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES,  REIMBURSEMENT OF LITIGATION EXPENSES AND CASE <u>CONTRIBUTION AWARDS</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

I.      HISTORY OF THE LITIGATION ................................................................. 2

II.     CLASS COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE ........................ 3

        A.      Relevant Background ........................................................................ 3

        B.      Class Counsel Are Entitled to Fees From the Common Fund .............................. 5

        C.      The Fee Request is Fair and Reasonable ..................................................... 6

                1.      The Size of The Fund Created And The Number Of People Who Benefit  6

                2.      The Skill, Experience, and Efficiency of the Attorneys Involved .............. 6

                3.      The Complexity of the Litigation ............................................... 7

                4.      The Duration of the Litigation and Time Devoted by Class Counsel......... 8

                5.      The Risks of Litigation ........................................................ 8

                6.      Awards in Similar Cases ....................................................... 9

                7.      Public Policy Considerations .................................................. 11

        D.      Class Counsel's Request for Reimbursement of Litigation Expenses is
                Reasonable .................................................................................... 12

III.    THE REQUESTED CASE CONTRIBUTION AWARDS ARE ALSO PROPER ........ 13

IV.     CONCLUSION............................................................................................ 15

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Bezdek v. Vibram USA Inc.,*
    79 F. Supp. 3d 324, 350 (D. Mass. 2015)…………………………………………......…..5, 13

*Boeing Co. v. Van Gemert,*
    444 U.S. 472, 487 (1980)…………………………………………………........................5

*Burnett v. Nat'l Ass'n of Realtors,*
    No. 4:19-CV-00332-SRB, 2024 WL 2842222 (W.D. Mo. May 9, 2024)…………passim

*Crane v. Sexy Hair Concepts, LLC,*
    Case No. 1:17-cv-10300-FDS (D. Mass. May 14, 2019)………………………………10

*Fleisher v. Phoenix Life Ins. Co.,*
    Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814,
    (S.D.N.Y. Sept. 9, 2015)...…………………………………………….…………...7, 8

*Ford v. Takeda Pharms. U.S.A., Inc.,*
    No. 1:21-cv-10090-WGY, 2023 WL 3679031 (D. Mass. Mar. 31, 2023).......................8

*Gordan v. Mass. Mut. Life Ins. Co.,*
    No. 13-cv-30184-MAP, 2016 WL 11272044 (D. Mass. Nov. 3, 2016)..…………………6

*Hill v. State St. Corp.,*
    No. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015)..…………………………9

*In re Asacol Antitrust Litig.,*
    No. 1:15-CV-12730-DJC, 2017 WL 11475275 (D. Mass. Dec. 7, 2017)………………10

*In re Cardizem CD Antitrust Litig.,*
    218 F.R.D. 508 (E.D. Mich. 2003)……………………………………………………11

*In re Credit Default Swaps Antitrust Litig.,*
    No. 13md2476 (DLC) 2016 WL  2731524 (S.D.N.Y. April 26, 2016)…………………13

*In re Fidelity/Micron Secs. Litig.,*
    167 F.3d 735 (1st Cir.1999)…………………………………...………………………5, 12

*In re Folding Carton Antitrust Litig.,*
    84 F.R.D. 245 (N.D. Ill. 1979)………………………………………………………...11

*In re Lupron Mktg. & Sales Practices Litig.,*
    No. MDL 1430, 01-CV-10861-RGS, 2005 WL 2006833
    (D. Mass. Aug. 17, 2005)………...…………………………………………………..5, 9

*In re Neurontin Mktg. & Sales Practices Litig.,*
    58 F. Supp. 3d 167 (D. Mass. 2014)……………………………………………………5

*In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.,*
    982 F.2d 603 (1st Cir. 1992……………………………………………………...12

*In re Packaged Ice Antitrust Litig.,*
　　No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)...……………….11

*In re Peanut Farmers Antitrust Litig.,*
　　No. 2:19-CV-00463, 2021 WL 9494033 (E.D. Va. Aug. 10, 2021)………………………7

*In re Prograf Antitrust Litig.,*
　　No. 1:11-MD-02242-RWZ, 2015 WL 13908415 (D. Mass. May 20, 2015)…………….10

*In re Prudential Ins. Co. of Am. SGLI/VGLI Cont. Litig.,*
　　No. 11-md-02208-MAP, 2014 WL 6968424 (D. Mass. Dec. 9, 2014)…………………14

*In re Puerto Rican Cabotage Antitrust Litig.,*
　　815 F. Supp. 2d 448 (D.P.R. 2011)……………………………………………………10

*In re Ranbaxy Generic Drug Application Antitrust Litig.,*
　　630 F. Supp. 3d 241 (D. Mass. 2022)　…………………………………………5, 10

*In re Relafen Antitrust Litig.,*
　　231 F.R.D. 52 (D. Mass. 2015)…………………………………………………10, 14

*In re Solodyn Antitrust Litig.,*
　　No. 14-md-2503, 2018 WL 7075881 (D. Mass. July 18, 2018)…………………………10

*In re Textron, Inc. ERISA Litig.,*
　　No. 09-383-ML, 2014 WL 2766777 (D.R.I. Feb. 10, 2014)……………………………14

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.,*
　　56 F.3d 295 (1st Cir. 1995)…………………………………………………………….5

*In re Trans Union Corp. Privacy Litig.,*
　　629 F.3d 741 (7th Cir. 2011)……………………………………………………………11

*In re Vitamins Antitrust Litig.,*
　　No. (MISC. 99-197 (TFH), 2001 WL 34312839 (D.D.C. July 16, 2001)………………12

*Lauture v. A.C. Moore Arts & Crafts, Inc.,*
　　No. 17-cv-10219-JGD, 2017 WL 6460244 (D. Mass. June 8, 2017)……………………14

*Medoff v. CVS Caremark Corp.,*
　　No. 09-cv-554-JNL, 2016 WL 632238(D.R.I. Feb. 17, 2016)..........................................9

*O'Connor v. Dairy,*
　　No. 2:14-00192-NT, 2018 WL 3041388 (D. Me. June 19, 2018)…………...……………8

*Scovil v. FedEx Ground Package Sys., Inc.,*
　　No. 1:10-CV-515-DBH, 2014 WL 1057079 (D. Me. Mar. 14, 2014)………………...…13

*Vendo v. Lektro-Vend Corp.,*
　　433 U.S. 623 (1977)………………………………………………………………...…11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
　　396 F.3d 96 (2d Cir. 2005)……………………………………………………………11

iii

*Yarrington v. Solvay Pharms., Inc.,*
    697 F. Supp. 2d 1057 (D. Min. 2010)……………………………………………………..9

## **Other Authorities**

*Theodore Eisenberg & Geoffrey Miller, Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. Emp. L. Studies  (2004).................................................................................. 9

## INTRODUCTION

Izard Kindall & Raabe, LLP and Hausfeld LLP (collectively "Class Counsel") respectfully submit this memorandum in support of Plaintiffs' application for an award of attorneys' fees, expenses, and class representative contribution awards on their $3.95 million settlement with Defendant MLS Property Information, Inc. ("MLS PIN"), which eliminated the alleged restraints that caused home sellers to pay artificially inflated commissions to buyer-brokers on Pinergy.

This litigation has been hard fought by Class Counsel for four and half years. Despite Defendants' attempts to have this case dismissed and the HomeServices Defendants' motion for summary judgment, Plaintiffs have persevered and achieved an outstanding result for the class. First, the Settlement requires MLS PIN to substantively change its Rules and Regulations by removing the anticompetitive misconduct alleged by Plaintiffs and bring MLS PIN's Rules and Regulations in line with the practice changes adopted by the National Association of Realtors ("NAR") and approved by Judge Bough in *Burnett v. National Association of Realtors*, Case No. 19-CV-00332-SRB (W.D. Mo.) ("*Burnett*"). Second, this Settlement creates a $3.95 million Settlement Fund for the benefit of Class Members. This Settlement amount is on top of the $458.5 million in monetary recovery from the Broker Defendants as part of the settlements in *Burnett*, which covers the *Nosalek* Class following several rounds of negotiations between Plaintiffs and *Burnett* Plaintiffs to ensure that the *Burnett* plaintiffs treated the *Nosalek* Class fairly.

Plaintiffs now request an award of attorneys' fees from the Settlement with MLS PIN of 33% of the net settlement fund ($1,315,350). The 33% fee award Plaintiffs requested here is within (and, on a lodestar basis, well below) the range routinely approved in multi-defendant antitrust class actions cases by courts in the First Circuit. As discussed below, Class Counsel's actual lodestar for this overall litigation is $5 million. Class Counsel anticipate receiving approximately $3.564 million in connection with the global settlements with the Broker Defendants in *Burnett*.

Accordingly, even if this Court awards the full $1,315,350 that Class Counsel seek as fees from the Settlement Fund here, Class Counsel will receive total fees of approximately $4.88 million—over $100,000 ***below*** Plaintiff's actual lodestar.

Plaintiffs also seek reimbursement of $200,000 in unreimbursed costs and expenses incurred by Class Counsel on behalf of the class through July 10, 2025. Class Counsel have incurred, and actually paid, expenses of $368,156.85. Accordingly, Class Counsel's expense request from the Settlement Fund is only 54% of their total expenses. As discussed below, Class Counsel anticipate receiving an expense allocation in *Burnett* to make up the shortfall between the expenses reimbursement awarded by this Court and Class Counsel's actual expenses. However, in no event will Class Counsel receive more in expense reimbursement than their actual incurred and paid expenses.

Finally, Class Counsel request that the Court approve compensation for the Class Representatives, Jennifer Nosalek, Tracey Hirschorn, and the Estate of Randy Hirschorn, in the amount of $5,000 each (for a total of $15,000). This amount falls squarely within the range of case contribution awards approved in class action cases by courts in the First Circuit (and, indeed, is below the awards in many such cases).

## I.    HISTORY OF THE LITIGATION

The Court is acquainted with the history of this complex case and the challenges Class Counsel faced. Rather than repeat that history here, Class Counsel respectfully refer the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement with Defendant MLS Property Information Network, Inc. filed contemporaneously herewith ("Final Approval Memo") for the general history of this litigation, which memorandum incorporated herein by reference.

## II.    CLASS COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE

### A.    Relevant Background

Class Counsel's total fees through July 10, 2025, is $5,003,739.50 for 7,877.45 hours of work.[1] Klein Decl. ¶¶ 17-19; Lebsock Decl. ¶¶ 4-5. Although MLS PIN's rules are the core issue in this case, Class Counsel seek an attorney's fee award of $1,315,350—or 26.6% of their lodestar—from the MLS PIN Settlement Fund (or, in other words, one-third of the Settlement Fund). As discussed below, Class Counsel hope to recover most of the remainder of their lodestar (with a slight negative multiplier) from the *Burnett* Broker Defendant settlements, but such recovery is not guaranteed with those settlements on appeal in the United States Court of Appeals for the Eighth Circuit.

All of the Broker Defendants in this action were also defendants in *Burnett.* The *Burnett* Plaintiffs reached a total of $458.5 million in settlements with the Broker Defendants. *See Burnett*, Dkt Nos. 1192-3 (Anywhere). 1192-4 at 7-8 (RE/MAX), 1371-1 at 8-9 (Keller Williams), 1518-1 at 8-9 (HomeServices). These settlements ostensibly were nationwide resolutions that included transactions in all MLSs across the country, expressly including transactions in MLS PIN's service area. Plaintiffs immediately began discussions with the *Burnett* plaintiffs to ensure that the members of the putative *Nosalek* class were fully protected by the *Burnett* settlement, a process that took several months and several rounds of negotiation.[2] Klein Decl. ¶ 10.

---

[1] Moreover, Class Counsel will continue to spend significant attorney time through the remainder of the final approval process (including responding to objections), to address any appeals that may be filed should this Court grant final approval to the MLS PIN Settlement, and to supervise administration and distribution of the Settlement Fund.

[2] At roughly the same time as the Broker Defendant settlements, the *Burnett* plaintiffs also reached a settlement with NAR. Although NAR is not a defendant in this case, Class Counsel reviewed that Settlement in detail and negotiated an increase in the MLS PIN Settlement Fund to $3.95 million, equal to what MLS PIN's "buy in" to the *Burnett* NAR settlement would have cost. Klein Decl. ¶ 13.

Following substantial negotiations, Plaintiffs reached an agreement with the *Burnett* Plaintiffs that Class Counsel would be involved in formulating the *Burnett* plan of allocation, and *Nosalek* Class members who had listed properties on MLS PIN involving the Broker Defendants would be treated on entirely equal footing in the *Burnett* plan of allocation as those who listed properties on MLSs listed as defendants in the *Burnett* action. Klein Decl. ¶ 11. Accordingly, Plaintiffs and Class Counsel ensured that *Nosalek* Class members would not be prejudiced by the *Burnett* Broker Defendants' settlements.

Class Counsel then sought a reasonable share of the fees awarded to *Burnett* counsel to reflect the work Plaintiffs and Class Counsel had done to protect the *Nosalek* class in the *Burnett* settlements as well as the work Class Counsel had already done to prosecute Plaintiffs' claims against the Broker Defendants in this Court prior to the *Burnett* settlement. Klein Decl. ¶ 20. Class Counsel and *Burnett* counsel ultimately agreed that *Burnett* counsel would allocate to Class Counsel $3,564,887.50 of *Burnett* counsel's fee award from the Broker Defendant settlements.[3] *Id.* However, Class Counsel have ***not*** received any payment of fees from *Burnett* to date. The *Burnett* settlements are currently on appeal before the Eighth Circuit. Should the Eighth Circuit reverse the District Court's grant of final approval to the *Burnett* settlements, *Burnett* counsel— and thus Class Counsel—will not receive the awarded fees. Klein Decl. ¶ 21.

Even assuming this Court awards the full $1,315,350 sought here in fees and Class Counsel also receives full payment from *Burnett*, the total fee award across both cases will be $4,880,237.50, which is over $100,000 ***less than*** Class Counsel's total lodestar of $5,003,739.50.

---

[3] The *Burnett* Court has awarded $152.8 million in fees to *Burnett* counsel in connection with the Broker Defendant settlements. *See Burnett* ECF Nos. 1392, 1487, 1525 and 1622.

Accordingly, even if Class Counsel are awarded the maximum overall recovery, their fees will still be subject to a small negative multiplier.

### B.    Class Counsel Are Entitled to Fees From the Common Fund

The Supreme Court and the First Circuit have recognized that when attorneys' efforts result in a common fund those efforts entitle the attorneys to reasonable attorneys' fees from that fund.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 487 (1980); *see also In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995). "Courts have wide discretion in awarding attorneys' fees." *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 245 (D. Mass. 2022) (citing *In re Thirteen Appeals*, 56 F.3d at 307).

"The district court may calculate attorneys' fees by either the percentage of the fund ("POF") method or the lodestar method." *Ranbaxy,* 630 F. Supp. 3d at 245 (citing *In re Thirteen Appeals*, 56 F.3d at 307). "Regardless of the calculation method employed, the touchstone of the analysis is reasonableness." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 350 (D. Mass. 2015) (*citing In re Fidelity/Micron Secs. Litig.*, 167 F.3d 735, 738 (1st Cir.1999)). Although the First Circuit has not established specific factors to assess the reasonableness of a common fund fee request, courts in this Circuit have considered factors including:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.

*In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *In re Lupron Mktg. & Sales Practices Litig.*, No. MDL 1430, 01-CV-10861-RGS, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005)). As set forth below, Plaintiff's requested attorneys' fees

are reasonable and appropriate in light of these factors.

### C.    The Fee Request is Fair and Reasonable

#### 1.    The Size of The Fund Created And The Number Of People Who Benefit

As discussed above (at n.2), the $3.95 million Settlement Fund is consistent with MLS PIN's financial position and the same as MLS PIN would have paid to join the *Burnett* NAR settlement (which was approved by Judge Bough). Klein Decl. ¶ 13. Accordingly, although this Court is not bound by that decision, the *Burnett* Court has essentially concluded the size of the fund is reasonable and appropriate. More than 650,000 transactions are eligible to receive payments. Klein Decl. ¶ 14.

In addition, and as this Court observed at the preliminary approval hearing, the Settlement secures significant non-monetary practice changes for MLS PIN to address the anticompetitive conduct alleged in the Complaint and to bring MLS PIN in line with the practice changes embodied in the *Burnett* NAR settlement, to the substantial benefit of Class Members who engage in future home sales in Pinergy.

#### 2.    The Skill, Experience, and Efficiency of the Attorneys Involved

Class Counsel are all highly skilled attorneys in complex litigation with substantial experience in antitrust class action cases. *See* Klein Decl. at Ex. A; Lebsock Decl., Ex. A (Firm resumes). Class Counsel provided extensive class action litigation and settlement experience for the benefit of their clients and the Settlement Class members. In pursuing this litigation vigorously for four-and-a-half years to date, Class Counsel have protected and advanced the interests of the Class, while handling complex issues. The Court is well-positioned to judge the quality of Class Counsel's work, but the result achieved is the clearest reflection of counsel's skill and expertise. *See Gordan v. Mass. Mut. Life Ins. Co.*, No. 13-cv-30184-MAP, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016).

6

"The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work." *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814, at *22 (S.D.N.Y. Sept. 9, 2015). Courts recognize that the caliber of the opposition faced by plaintiffs' counsel aids assessment of the quality of the plaintiffs' counsel's performance. *Burnett v. Nat'l Ass'n of Realtors,* No. 4:19-CV-00332-SRB, 2024 WL 2842222, at *16 (W.D. Mo. May 9, 2024) ("Courts often judge class counsel's skill against the 'quality and vigor of opposing counsel.'") MLS PIN was represented by skilled and highly regarded counsel from Troutman Pepper Locke LLP and Brennan Scungio & Kresge LLP—prestigious firms with well-deserved reputations for vigorous advocacy in the defense of complex civil cases, and the same is true of the other defendants in this Action. This factor weighs heavily in favor of approving Class Counsel's fee request.

### 3.    The Complexity of the Litigation

The complexity of the antitrust claims support the award requested. *See Burnett*, ECF No. 1487 at ¶ 72 ("Because antitrust claims are especially complex, expensive, and difficult to prosecute, courts have recognized that antitrust settlements should result in attorneys' fees equal to one-third of the fund."); *In re Peanut Farmers Antitrust Litig.*, No. 2:19-CV-00463, 2021 WL 9494033, at *6 (E.D. Va. Aug. 10, 2021) ("[A]n award of one-third is also common in antitrust class actions.") (citing cases). As discussed, this case necessitated an in-depth knowledge of antitrust law and the real estate market. Prior to bringing this Action, Class Counsel devoted significant time and resources to researching and understanding the relevant real estate market. If the litigation continued, Plaintiffs would prosecute joint and several liability claims against MLS PIN regarding the permissibility and legality of listings of offers of cooperative compensation, including MLS PIN's First Amendment argument on business "free speech" rights. These and other complex issues would have required extensive expert testimony without guarantee that this

Court would accept Plaintiffs' expert's opinions over MLS PIN's.

Accordingly, this factor strongly supports the reasonableness of the fee request.

### 4.    The Duration of the Litigation and Time Devoted by Class Counsel

Class Counsel have devoted a substantial amount of time to this Action over four-and-a-half years. Since the Action was first filed in December 2020 and as of July 10, 2025, Izard, Kindall & Raabe and Hausfeld LLP have collectively spent over 7,887 hours litigating this Action, accumulating a lodestar of $5 million that has yet to be paid. *See* Klein Decl. ¶¶ 17-19. Lebsock Decl. ¶¶ 4-5. Class Counsel were required to, and did, spend significant time researching the legal theory and working on drafting the initial complaint; successfully responding to Defendants' motion to dismiss; engaging in fact and expert discovery; reviewing relevant documents; conducting settlement negotiations; drafting the present motion; and ongoing work addressing any objectors and/or any appeal and overseeing administration of the Settlement Fund.

### 5.    The Risks of Litigation

"No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Fleisher*, 2015 WL 10847814, at *21. Class Counsel undertook this action on an entirely contingent fee basis, assuming a substantial risk that they would have to devote a significant amount of time and incur substantial expenses in prosecuting this action without any assurance of being compensated for their efforts. *See Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-cv-10090-WGY, 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023) ("Class Counsel's assumption of the risk of nonpayment supports the reasonableness of the requested fee."); *O'Connor v. Dairy*, No. 2:14-00192-NT, 2018 WL 3041388, at *4 (D. Me. June 19, 2018) (finding proposed fee based upon lodestar method reasonable given "Plaintiffs' counsel performed this work on a contingent fee basis, assuming the risk that there would be no recovery

and therefore no compensation."); *Hill v. State St. Corp.*, No. 09-12146-GAO, 2015 WL 127728, at *18 (D. Mass. Jan. 8, 2015) (collecting cases, noting reasonableness of fee request in particular given contingent basis of compensation).

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Min. 2010) (citation omitted); Theodore Eisenberg & Geoffrey Miller, Attorney Fees in Class Action Settlements: An Empirical Study, 1 J. Emp. L. Studies 27, 27, 38 (2004) ("Fees are also correlated with risk: the presence of high risk is associated with a higher fee, while low-risk cases generate lower fees . . . . [This] is widely accepted in the literature.")). There was no guarantee that any fees would be received, especially because this case involves a complex antitrust legal theory. Class Counsel were aware that they would likely have to overcome significant hurdles, and would have to expend thousands of hours and hundreds of thousands of dollars in prosecuting this case before having even a possibility of recovering fees and expenses. Class Counsel alone bore this risk. Further, Class Counsel opposed skilled and knowledgeable defense attorneys. "[P]laintiffs in this action faced the not insignificant risk of not recovering any damages as all. Where, as here, lead counsel undertook this action on a contingency basis and faced a significant risk of non-payment, this factor weighs more heavily in favor of rewarding litigation counsel." *Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 WL 632238, at *9 (D.R.I. Feb. 17, 2016), quoting *In re Lupron*, 2005 WL 2006833, at *4 ("the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate award.").

Accordingly, the risks of non-payment in this case weigh heavily in favor of approving the fee request.

### 6.    Awards in Similar Cases

As discussed above, even if this Court awards the full fees requested from the MLS PIN

Settlement Fund **and** Class Counsel also receives the full amount negotiated in the context of the *Burnett* Broker Defendant settlements, the total awarded fees will still be slightly **less than** Class Counsel's actual lodestar, resulting in **no** risk multiplier whatsoever (and, indeed, a slight 0.98 negative multiplier). Such a nonexistent multiplier for a complex antitrust matter is more than reasonable. *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 465 (D.P.R. 2011) ("low multiplier" of 1.08 "is certainly within the reasonable range"). Courts in this Circuit routinely award multipliers of 2 or more in complex antitrust cases. *See In re Prograf Antitrust Litig.*, No. 1:11-MD-02242-RWZ, 2015 WL 13908415, at *5 (D. Mass. 2015) (lodestar multiplier of 2.35); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (lodestar multiplier of 2.02); *see generally Ranbaxy*, 630 F. Supp. 3d at 246 ("the mean multiplier in common fund cases in the First Circuit was 2.4 and the mean multiplier in national antitrust cases was 1.61").

Moreover, to the extent this Court applies the percentage-of-fund methodology, courts in this Circuit regularly award one-third of the Settlement Fund in attorneys' fees. *See In re Solodyn Antitrust Litig.*, No. 1:14-md-2503 (DJC), 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (awarding one-third of the settlement fund to counsel); *In re Asacol Antitrust Litig.*, No. 1:15-CV-12730-(DJC), 2017 WL 11475275, at *4 (D. Mass. Dec. 7, 2017) (awarding one-third of the settlement fund to counsel); *In re Prograf*, 2015 WL 13908415, at *4 (awarding one-third of the settlement fund to counsel); *In re Relafen*, 231 F.R.D. at 82 (awarding one-third of the settlement fund to counsel); *Crane v. Sexy Hair Concepts, LLC*, Case No. 1:17-cv-10300-FDS, ECF No. 102 at ¶ 11 (D. Mass. May 14, 2019) (awarding Class Counsel with "$750,000, which is equal to approximately 32.2% of the Gross Settlement Amount"). The reason for this is clear: antitrust litigation is inherently expensive and complex. "This antitrust litigation, like all litigation of its species, promises to be extremely complex and time intensive and there is no question that if

settlement fails, the Defendants will mount a strong defense." *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011). Class Counsel are exposed to a heightened risk of recovering nothing in a complex antitrust case, and "within the set of colorable legal claims, a higher risk of loss does argue for a higher fee." *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011).

### 7.    Public Policy Considerations

Finally, public policy considerations weigh heavily in favor of the requested fee. Public policy considerations strongly favor incentivizing skilled private attorneys to undertake class action litigation both to vindicate the rights of class members and the law enforcement function of private action litigation. There is a "need in making fee awards to encourage attorneys to bring class actions to vindicate public policy (e.g., the antitrust laws) as well as the specific rights of private individuals." *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 260 (N.D. Ill. 1979); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534 (E.D. Mich. 2003). Society benefits when those who have violated laws fostering fair competition and honest pricing are required to provide relief to affected consumers in civil proceedings. *Vendo v. Lektro-Vend Corp.*, 433 U.S. 623, 635 (1977) ("Section 16 undoubtedly embodies congressional policy favoring private enforcement of the antitrust laws, and undoubtedly there exists a strong national interest in antitrust enforcement."); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (concluding that it is "especially important to provide appropriate incentives to attorneys pursuing antitrust actions because public policy relies on private sector enforcement of the antitrust laws").

Those interests are particularly salient in this case, which has required continued investments of substantial amounts of attorney time and expenses by Class Counsel. To incentivize the very best private attorneys to take on complex, lengthy, difficult, and expensive class actions, the fee awarded must be sufficient to justify the opportunity cost of foregoing hourly and fixed-

fee cases where counsel are assured of compensation regardless of outcome.

>    **D.    Class Counsel's Request for Reimbursement of Litigation Expenses is Reasonable**

Class Counsel also request reimbursement in the amount of $200,000 for out-of-pocket expenses reasonably and necessarily incurred in connection with the prosecution of this case through July 10, 2025. Class Counsel have incurred and actually paid $368,156.85 in litigation expenses. Klein Decl. ¶¶ 22-23; Lebsock Decl. ¶ 6.

It is well-settled that "lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax." *In re Fidelity/Micron Secs. Litig,* 167 F.3d at 737; *In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.,* 982 F.2d 603, 606 (1st Cir. 1992); *In re Vitamins Antitrust Litig.,* No. (MISC. 99-197 (TFH), 2001 WL 34312839, at *13 (D.D.C. July 16, 2001) (holding that "an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of ... reasonable litigation expenses from that fund") (citations omitted). "[B]ecause each common fund case presents its own unique set of circumstances, trial courts must assess each request for fees and expenses on its own terms." *In re Fidelity/Micron Secs. Litig.,* 167 F.3d at 737.

The vast bulk of Class Counsel's expenses—over $335,000—went towards expert analysis necessary for the resolution of Plaintiffs' claims against MLS PIN and the Broker Defendants. Klein Decl. ¶ 24; Lebsock Decl. ¶ 6. Because MLS PIN is distinct from the NAR, and as such implicated different—and highly localized—issues, Plaintiffs worked closely with their experts in anticipation of moving for class certification, including Dr. Panle Barwick, a nationally recognized expert on cooperative compensation generally and in Massachusetts specifically; and a data

analysis team at a top tier analytics firm providing support for Dr. Barwick. Klein Decl. ¶ 24. These experts spent hundreds of hours reviewing and analyzing hundreds of thousands of Massachusetts transaction records, which were obtained from and cross referenced across multiple sources (including Defendants' own data).

*Burnett* counsel have agreed to reimburse Class Counsel for up to $337,457.40 in expenses that are not otherwise reimbursed by this Court. Klein Decl. ¶ 25. As with the attorneys' fees discussed above, no expenses have been reimbursed by *Burnett* counsel pending the outcome of the Eighth Circuit appeal. Because the bulk of the expenses in this case were for expert review and analysis, which were equally relevant to prosecution of Plaintiffs' claims against both MLS PIN and against the Broker Defendants, Plaintiffs believe that it would be appropriate to "split" the expenses between the MLS PIN and *Burnett* Broker Defendant settlement funds. Accordingly, Plaintiffs respectfully submit that the $200,000 request here is fair and reasonable. *See In re Credit Default Swaps Antitrust Litig.*, No. 13md2476 (DLC), 2016 WL 2731524, at *18 (S.D.N.Y. April 26, 2016) (approving $10 million in expenses "[m]ost of" which "were incurred in connection with retention of experts" where the case settled just prior to the due date for class certification motions).

## III.    THE REQUESTED CASE CONTRIBUTION AWARDS ARE ALSO PROPER

Plaintiffs respectfully seek case contribution awards of $5,000 each for their extensive involvement in this litigation. The rationale for awarding case contribution payments is to compensate the named plaintiffs for the expense they incur and "to encourage or induce an individual to participate" in a class action lawsuit. *See Bezdek,* 79 F. Supp. 3d at 352 ("Incentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall") (citations omitted), *aff'd*, 809 F.3d 78 (1st Cir. 2015); *Scovil v. FedEx Ground*

*Package Sys., Inc.*, No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014) ("Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit").

Here, all three Plaintiffs regularly consulted with Class Counsel concerning the progress of the litigation and the Settlement, and also provided responses to Defendants' extensive written interrogatories and document requests**.** Klein Decl. ¶ 15**.** In addition, Plaintiff Randy Hirschorn was deposed by Defendants prior to his passing. Klein Decl. ¶ 15. Moreover, this case has received substantial public and media attention, both in Massachusetts and nationally, especially over the last eighteen months. Plaintiffs willingly subjected themselves to public scrutiny for their willingness to "step up" in this litigation. This case literally could not have proceeded without them.

Comparisons to much higher case contribution awards in other similar class action settlements demonstrate that the per-Plaintiff amount sought is reasonable and fair. *See Lauture v. A.C. Moore Arts & Crafts, Inc.,* No. 17-cv-10219-JGD, 2017 WL 6460244, at *3 (D. Mass. June 8, 2017) (awarding $15,000 to plaintiffs who provided assistance throughout the lawsuit); *see also In re Prudential Ins. Co. of Am. SGLI/VGLI Cont. Litig.,* No. 11-md-02208-MAP, 2014 WL 6968424, at *7 (D. Mass. Dec. 9, 2014) (awarding $10,000 to each of the ten class representatives); *Scovil*, 2014 WL 1057079, at *7 (awarding $20,000, $15,000 and $10,000 to the named plaintiffs for a grand total of $130,000); *In re Textron, Inc. ERISA Litig.,* No. 09-383-ML, 2014 WL 2766777, at *4 (D.R.I. Feb. 10, 2014) (awarding case contribution awards of $10,000 each named Plaintiff); *In re Relafen*, 231 F.R.D. at 82 (awarding $14,000, $9,000 and $8,000 to the named plaintiffs).

## IV.    CONCLUSION

Class Counsel thoroughly and efficiently prosecuted this case for the benefit of the Class Members and will continue to represent their interests even after the Settlement is approved to ensure that the terms and conditions of the Settlement, if approved, are fully and completely satisfied. The attorneys' fees and expenses incurred were reasonable and necessary to effectuate the litigation and Settlement. The substantial contributions of the Plaintiffs in pursuing this action were critical to the Settlement and the benefits it confers on the Class Members and justify the reasonable incentive award.

For all of the foregoing reasons, Class Counsel respectfully requests that this Court:

(i)      approve Class Counsel's application for an award of Attorneys' Fees in the amount of $1,315,350;

(ii)     approve Class Counsel's application for an award of expenses in the amount of $200,000; and

(iii)    approve the payment of a case contribution awards of $5,000 to each of the three Plaintiffs.

For the Court's convenience, a proposed order is submitted as Exhibit A to Plaintiff's Motion.

Dated: July 25, 2025                          Respectfully submitted,

                                              BY:    */s/ Seth R. Klein*
                                                     Robert A. Izard (pro hac vice)
                                                     Craig A. Raabe (pro hac vice)
                                                     Seth R. Klein (pro hac vice)
                                                     Christopher M. Barrett (pro hac vice)
                                                     IZARD, KINDALL & RAABE, LLP
                                                     29 South Main Street, Suite 305
                                                     West Hartford, CT 06107
                                                     (860) 493-6292
                                                     (860) 493-6290 fax
                                                     rizard@ikrlaw.com
                                                     craabe@ikrlaw.com

15

sklein@ikrlaw.com
cbarrett@ikrlaw.com

Christopher L. Lebsock (pro hac vice)
HAUSFELD LLP
580 California Street
12th Floor
San Francisco, CA 94104
(415) 633-1908
clebsock@hausfeld.com

James Gotz (MA Bar #567157)
HAUSFELD LLP
One Marina Park Drive
Suite 1410
Boston, MA 02210
(617) 207-0600
jgotz@hausfeld.com

Daniel P. Weick (pro hac vice)
HAUSFELD LLP
33 Whitehall Street
14th Floor
New York, NY 10004
(646) 357-1100
dweick@hausfeld.com

Jose Roman Lavergne (pro hac vice)
HAUSFELD LLP
1200 17th Street NW
Suite 600
Washington, D.C., 20036
(202) 540-7200
jlavergne@hausfeld.com

**_Attorneys for Plaintiffs_**

16

## <u>CERTIFICATE OF SERVICE</u>

      I, Seth R. Klein, hereby certify that on this 25th day of July, 2025, the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access these documents though the court's CM/ECF system.

                           */s/ Seth R. Klein*
                           Seth R. Klein