UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNIFER NOSALEK, RANDY HIRSCHORN and TRACEY HIRSCHORN, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>vs.<br><br>MLS PROPERTY INFORMATION NETWORK, INC., *et al.*,<br><br>                Defendants. | No. 1:20-cv-12244-PBS |

**PLAINTIFFS' RESPONSES TO OBJECTIONS TO THE
PROPOSED SETTLEMENT WITH DEFENDANT MLS
PROPERTY INFORMATION NETWORK, INC.
AND PROPOSED SCHEDULE**

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs[1] respectfully submit this supplemental memorandum in further support of Plaintiffs' proposed settlement (the "Proposed Settlement") with Defendant MLS Property Information Network, Inc. ("MLS PIN").

**I.    Class Member Objections and "Amicus Letters"**

First, Plaintiffs hereby respond to the two objections they have received to the Proposed Settlement, as well as the two "amicus letters" filed by non-class members. The assertions made in these submissions reflect the type of objections that Courts routinely address and reject and the final approval stage, and this Court should overrule the objections here and approve the Proposed Settlement.

---

[1] Plaintiffs are Jennifer Nosalek, Mona Hirschorn, as executor of the Estate of Randy Hirschorn, and Tracey Hirschorn. [ECF No. 384.]

1

As a preliminary matter, Plaintiffs note that out of the nearly half-million Class Members given notice of the Proposed Settlement, only *four* have excluded themselves from the settlement. *See* Declaration of Christie K Reed of Kroll Settlement Administration LLC ("Reed Decl."), submitted herewith as **Exhibit A,** at ¶ 27. Only *two* Class Member households have submitted objections (only one of which—the objection of William and Suan Funk [ECF No. 391]—was properly filed with the Court). Moreover even though the claims filing period does not expire until December 15, 2025—over two-and-a-half months from this filing—over 26,800 class members have already filed claims. *See* Reed Decl. at ¶ 29.

Class Members' broad acceptance of the Proposed Settlement should weigh heavily in the Court's consideration of the two objections. The Court must consider those objections in light of the interests of the hundreds of thousands of class members who have elected to be bound by the Proposed Settlement and have offered no objections (and the nearly 27,000 class members who have already sought settlement benefits). *See Cohen v. Brown Univ.*, 16 F.4th 935, 943 (1st Cir. 2021) (affirming settlement approval where "'[t]he number of objectors represents a very small fraction of the class members as a whole'").

For the reasons given below, the specific issues raised by the class member objectors and the non-class member "amicus briefs" do not justify denial of final approval and should be overruled.

### A. William J. Funk and Susan M. Funk

William J. Funk and Susan M. Funk filed an objection with the Court on July 21, 2025. *See* [ECF No. 391]. They argue 1) that the requested attorneys' fees and expenses are excessive and 2) that the method of allocation is unclear. *Id*. at 1. The Court should overrule both objections.

As to attorneys' fees and expenses, the Funks argue that the Court should apply a lodestar calculation rather than a percent of the fund calculation. *Id*. But as documented in Plaintiffs' Motion for Attorneys' Fees, lodestar analysis shows that Plaintiffs' counsel are accepting a ***negative*** multiplier for their fees in this action, meaning they are requesting less than they would receive from a normal hourly billing arrangement. [ECF No. 395] at 9-10. Because the lodestar calculation does not justify a lower fee award than counsel have requested, the Court should overrule this objection.

The Funks also request that counsel's expenses be "clearly documented and justified." [ECF No. 361] at 2. Counsel have done just that in the declarations filed alongside their request for reimbursement of expenses. *See* [ECF Nos. 396 & 397]; *see generally* [ECF No. 395] at 12-13. This objection should thus likewise be overruled.

As to the plan of allocation objection, the Funks request an explanation of "how recovery amounts are determined per household vs. per individual owner." ECF No. 361 at 2. As set forth in the Court-approved Notice, the fund will be distributed "on a *pro rata* basis based on the sale price" of the sold property (as recorded in MLS PIN's records). *See* [ECF No. 381-4] (Exs. A, B, C, D, E; *see generally* [ECF No. 393] at 15. Should substantiated joint owners file a claim for a given property sale, Plaintiffs and the claims administrator anticipate dividing the recovery evenly among such multiple claimants. In any event, Courts have widely held that a detailed plan of allocation is not required for final approval of a settlement. *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 336 (D. Mass. 2015), aff'd, 809 F.3d 78 (1st Cir. 2015) ("Although details would by definition have provided additional instruction regarding the proposed settlement, such detail was not required to be provided in the notice."); *Burnett v. Nat'l Ass'n of Realtors*, Case No. 4:19-cv-00332-SRB, [ECF No. 1622] at 35-36 (W.D. Mo. Nov. 27, 2024) (collecting cases for the

3

proposition that "courts repeatedly hold that parties do not need to include a detailed allocation formula in class notice or formulate one before final settlement approval"). The Funks may seek additional information about allocation during the claims administration process, and the Court will retain jurisdiction to address any disputes that may arise as to allocation of the Settlement Fund between class members. This objection should also be overruled.

### B. James Cummings

Class member James Cummings mailed to counsel (but appears not to have filed with the Court) an objection dated August 13, 2025. *See* **Exhibit B** hereto (Cummings Objection). Mr. Cummings objects that (1) the Settlement Fund is inadequate, (2) real estate commissions in the U.S. remain excessive, and (3) he has concerns about enforcement of the injunctive relief. *Id*. at 1-2. None of these objections provides sufficient grounds for rejecting the Proposed Settlement.

Regarding the size of the Settlement Fund, Mr. Cummings asserts that the Settlement Fund, after fees and expenses, "will yield de minimis compensation relative to class members' overcharges." *Id*. at 1. While Plaintiffs would obviously have preferred to have secured a higher recovery from MLS PIN, Plaintiffs note that Class Members will be receiving additional monetary compensation from the Broker Defendant settlements in Missouri should Judge Bough's approval of those settlements be sustained on the pending appeals. As noted in previous briefing, Plaintiffs believe that the Broker Defendants, rather than MLS PIN, were likely the principal bad actors (and have the deeper pockets), as opposed to MLS PIN, which was simply an online listing service with limited assets and ability to pay. *See* [ECF No. 393] at 13-14. Even a complete trial victory against MLS PIN likely would not result in substantially more money for class members, especially if it pushed MLS PIN into bankruptcy. And a loss at trial would result in no compensation at all. *See*

*Celexa*, 2014 WL 4446464, at *7 ("Moreover, plaintiffs risked recovering significantly less than what their own expert estimated in damages if they proceeded to trial.").

Moreover, any settlement represents a balancing of litigation risks and inherently reflects a compromise by both sides. Courts accordingly generally do not reject settlements merely because of the size of the fund. *See In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 97–98 (D. Mass. 2005) ("[W]hile it is possible to hypothesize about larger amounts that might have been recovered, as do Intervenors, Judge Becker counsels: '[t]he evaluating court must ... guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'") (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)); *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, No. MDL 09-2067-NMG, 2014 WL 4446464, at *7 (D. Mass. Sept. 8, 2014) ("A settlement need not reimburse 100% of the estimated damages to class members in order to be fair.").

As to Mr. Cummings' general policy argument about high broker commissions (which appears to include even the commissions that seller-brokers charge their own clients, which are not directly at issue in this case), this private antitrust case concerning restraints imposing mandatory buyer-broker compensation cannot establish a general rate regulation framework for real estate broker commissions. *See Verizon Comc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) ("antitrust courts" deemed "ill-suited" to serve "as central planners, identifying the proper price, quantity, and other terms of dealing"). This aspect of the objection thus presents issues not redressable in either a settlement with MLS PIN or a litigated judgment against it.

5

Finally, Mr. Cummings argues that the Proposed Settlement leaves open "[e]nforcement and policy concerns," but that provides no basis for rejecting the Proposed Settlement. In terms of enforcement of the actual injunctive relief, "Plaintiffs and the Court have authority to enforce the Settlement Agreement[.]" *See Burnett,* [ECF No. 1622] at 21-22. Regarding any further open policy issues, the Proposed Settlement expressly does not alter the rights of government enforcers to pursue any action to enforce existing law, and it, of course, cannot abrogate the power of the U.S. Congress and state legislatures to create new laws and regulations addressing broader policy problems as they deem appropriate. The U.S. Department of Justice has effectively acknowledged as much by withdrawing its objections to the Proposed Settlement. *See* [ECF No. 383] at 1-2. This objection should therefore be overruled as well.

### C. *"Amicus Letters"*

In addition to the objections discussed above, two "amicus letters" have been filed with the Court. [ECF Nos. 374 & 376]. These letters do not constitute valid objections from class members, and the Court may disregard them on that basis alone.[2] Nevertheless, in the interest of completeness, Plaintiffs address the "amicus letters."

**Dmitry Shkipin** of Geodome and HomeOpenly, two software companies, filed a letter on April 9, 2025, purporting to "clarify the intent behind the settlement between homesellers and MLS PIN, et al." [ECF No. 374] at 1. Mr. Shkipin had no role it the settlement negotiations, and

---

[2] *See Hill v. State St. Corp.*, 794 F.3d 227, 231 (1st Cir. 2015) (overruling objections where objectors "have no standing to complain about the fee award."); *Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193, 209 (D.N.H. 2021) (objections must "include documentation sufficient to establish the objecting person's standing as a settlement class member"); 4 Newberg and Rubenstein on Class Actions § 13:22 (6th ed. June 2024 Update) ("Rule 23 confers the right to object upon class members, the Rule itself does not confer standing upon nonclass members" and "Courts regularly find that nonclass members have no standing to object to a proposed settlement[.]").

is not positioned to comment on the parties' intent behind the Proposed Settlement. That being said, at least the first portion of Mr. Shkipin's letter appears to be an attempt to respond to the Court's question at the April 1, 2025, hearing about why MLS PIN "care[d] so much" about being able to list cooperative compensation on the listing service. *See* [ECF No. 374] at 1-2 (quoting news article that quoted the Court's April 1 comment). But as the Court is aware, subsequent to the April 1 hearing (and the April 9, 2025 filing of Mr. Shkipin's amicus letter), Plaintiffs successfully negotiated with MLS PIN to completely remove cooperative compensation from MLS PIN's listings, ultimately leading to the Department of Justice withdrawing its objection and this Court granting preliminary approval to the Proposed Settlement. *See* [ECF Nos. 381, 381-2, 383, 386]. Accordingly, Mr. Shkipin's concerns are moot. Moreover, much of Mr. Shkipin's letter appears to raise concerns about the *NAR* settlement, and about general market forces. As discussed above, a private lawsuit is not the correct forum for broad-policy market regulation. Finally, Mr. Shkipin does not specifically argue that the Proposed Settlement should be rejected or amended in any particular way, but merely asks for more "transparency." [ECF No. 374] at 10. Mr. Shkipin's letter therefore does not justify rejecting the Proposed Settlement.

**Bill Wendel** of Real Estate Cafe, an online platform, filed his letter on April 22, 2025. [ECF No. 376.] In that letter, he argues that the Court should ban shared compensation between seller brokers and buyer brokers altogether. *Id.* at 1-3. Plaintiffs may or may not agree with this policy position, but such relief is outside of the scope of a private settlement with MLS PIN, which can only address the restraints complained of in the underlying antitrust suit, and is better suited for broad regulatory action—which the Proposed Settlement specifically provides is not barred or preempted in any way. *See* [ECF 381-2] at ¶9(c). The concerns in Mr. Wendel's letter therefore do not provide a basis for rejecting the Proposed Settlement.

7

## II. Proposed Schedule for Supplemental Postcard Notice

As discussed in earlier filings, Plaintiffs have already, in addition to implementing a robust online, social media and press release campaign (Reed Decl. at ¶¶ 19-23), directed Kroll to send almost 500,000 postcard notices to Class Members whose names and current addresses were reasonably ascertainable (over 450,000 of which appear to have successfully been delivered). *See generally* [ECF No. 393] at 25-27; *see also* Reed Decl. at ¶¶ 11-17. Those mailed postcard notices cover home sales through August 1, 2025. Reed Decl. at ¶ 14.

The Class Period extends through the date on which this Court grants final approval to the Proposed Settlement (assuming this Court does so). [ECF No. 381-2] at ¶ 2(jj) (Fourth Amended Settlement Agreement); *see also* [ECF No. 393] at 27. Accordingly, and as also discussed in earlier filings, Plaintiffs intend to direct Kroll to mail a supplemental postcard notice after entry of the Final Judgment and Order of Dismissal to Class Members who joined the Settlement Class as a result of a home sale that closed on or after August 2, 2025 and prior to entry of final approval, and for whom seller name and mailing address information can be determined. *See* [ECF No. 393] at 27-28; *see also* Reed Decl. at ¶ 18. These supplemental notices advise Class Members of their right to opt-out (within 30 days of mailing of the notice)[3] or to file a claim (by the December 15,

---

[3] Because this mailing will not be sent until after final approval, the supplemental postcard notice does not include information concerning the filing of objections, which by definition will be moot at that point. However, all Class Members, including those who sold their homes after August 2, 2025, were notified of their ability to object by September 2, 2025, through the extensive social media campaign undertaken as part of the notice plan, and through press release notices and the settlement website.

8

2025, deadline applicable to all class members).[4] A copy of the proposed postcard notice is attached to the Reed Declaration as Exhibit K, and a copy of the proposed long-form notice that will be posted for those class members on the settlement website is attached to the Reed Declaration as Exhibit L. Plaintiffs respectfully request that this Court authorize the sending of the supplemental postcard notice no later than 30 days after this Court enters any final approval order.

**III.    CONCLUSION**

For the reasons set forth above and otherwise in the record, Plaintiffs respectfully request that this Court (i) overrule the both the objections and the concerns expressed in the amicus letters, (ii) grant final approval to the Proposed Settlement, and (iii) authorize the sending of supplemental notice to Class Members who engaged in a covered residential real estate transaction on or after August 2, 2025, as set forth above. A [Proposed] Final Judgment and Order Granting Final Approval of Settlement is submitted herewith as **Exhibit C**, a Word version of which is available upon request by the Court.

Dated: September 22, 2025                                      Respectfully Submitted,

*/s/ Seth R. Klein*
Robert A. Izard (*pro hac vice*)
Craig A. Raabe (*pro hac vice*)
Seth R. Klein (*pro hac vice*)
Christopher M. Barrett (*pro hac vice*)
**IZARD, KINDALL & RAABE, LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
(860) 493-6290 fax

---

[4] This claim filing deadline assumes that the Court issues its final approval order, if any, by October 15, 2025. Should a final approval order not issue until after that date, the parties request that this Court extend the claim-filing deadline for Class Members who engaged in a covered sale on or after August 2, 2025, until 60 days after the Court issues said order, to allow time for the mailing of the postcard notice and for Class Members to file their claims.

rizard@ikrlaw.com
craabe@ikrlaw.com
sklein@ikrlaw.com
cbarrett@ikrlaw.com

Christopher L. Lebsock (*pro hac vice*)
**HAUSFELD LLP**
580 California Street
12th Floor
San Francisco, CA 94104
(415) 633-1908
clebsock@hausfeld.com

James Gotz (MA Bar #567157)
**HAUSFELD LLP**
One Marina Park Drive
Suite 1410
Boston, MA 02210
(617) 207-0600
jgotz@hausfeld.com

Daniel P. Weick (*pro hac vice*)
**HAUSFELD LLP**
33 Whitehall Street
14th Floor
New York, NY 10004
(646) 357-1100
dweick@hausfeld.com

Jose Roman Lavergne (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street NW
Suite 600
Washington, D.C., 20036
jlavergne@hausfeld.com

## CERTIFICATE OF SERVICE

    I, Seth R. Klein, hereby certify that a true copy of the foregoing document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing on September 22, 2025.

                                            */s/ Seth R. Klein*
                                            Seth R. Klein